IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC,<br><br>*Plaintiff,*<br><br>vs.<br><br>RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL: MICHAEL M. TIKOIAN, in his capacity as Chairman of the Rhode Island Coastal Resources Management Council, PAUL E. LEMONT, in his capacity as Vice Chairman of the Rhode Island Coastal Resources Management Council, THOMAS RICCI, DAVID ABEDON, DONALD GOMEZ, K. JOSEPH SHEKARCHI, NEILL GRAY, W. MICHAEL SULLIVAN, RAYMOND C. COIA, GERALD P. ZARRELLA, and BRUCE DAWSON, in their capacities as Members of the Rhode Island Coastal Resources Management Council,<br><br>*Defendants.* | Case No. 07-246-S |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Weaver's Cove Energy, LLC ("Weaver's Cove"), seeks a declaratory judgment and injunctive relief with respect to the ongoing efforts of Defendants to deny Weaver's Cove its legal rights under federal law, the Coastal Zone Management Act, 16 U.S.C. §§ 1451 et seq., ("CZMA"), to a timely review of, and decision on, its application for a determination (the "Consistency Determination") that its proposed liquefied natural gas ("LNG") marine import and storage terminal is consistent with the State of Rhode Island's coastal management program. Weaver's Cove filed its application, along with all required information, in the Summer of 2004. The CZMA mandates that Defendant Rhode Island Coastal Resources Management Council (the

"CRMC"), must rule on Weaver's Cove's application for Consistency Determination within six months of its receipt. The CRMC has ignored this legal requirement and has furthermore demanded that Weaver's Cove submit additional information to support its Consistency Determination that is not required by law.

Weaver's Cove also seeks declaratory and injunctive relief, with respect to the assertion and the threatened application by the CRMC of a state law requirement, as set forth in R.I. Gen. Laws §§ 46-23-1, *et seq.* and the regulations adopted thereunder, to obtain a state permit, called a Category B Assent, for the Weaver's Cove project. Application and enforcement by the CRMC of this state regulatory program, including so-called Category B requirements, are preempted by the federal Natural Gas Act, as amended by the Energy Policy Act of 2005, 15 U.S.C. §§ 717, *et seq.* (the "NGA"), and the federal regulations promulgated thereunder. Such enforcement also constitutes an undue burden on interstate and international commerce in violation of the Commerce Clause of the U.S. Constitution.

By this action, Weaver's Cove seeks to vindicate its legal rights under the United States Constitution and federal law, including the NGA and the CZMA, and alleges the following:

1. Weaver's Cove is in the process of securing authorization for the construction and operation of a major energy infrastructure project in New England— a project that was approved by the Federal Energy Regulatory Commission ("FERC") in 2005 as being in the public interest.

2. Although the siting and operation of such an energy project is committed by the NGA to the FERC, in this case a state agency, Defendant CRMC, has attempted to exercise a *de facto* veto over the FERC's authorization of the project, by simply refusing to act, within the statutory six-month period, on a subsidiary permitting issue described in detail in this Complaint.

3. In addition, Defendant CRMC threatens to apply and enforce a state regulatory permit requirement, a Category B Assent, that is preempted by federal law and would constitute a violation of the Supremacy Clause and the Commerce Clause of the United States Constitution.

4. Furthermore, the CRMC's obstruction prevents the U.S. Army Corps of Engineers ("USACE") from issuing permits required under federal law for dredging related to the project.

5. By this lawsuit, Weaver's Cove seeks a declaration of its rights and of the legal relations of the parties under the United States Constitution, the NGA, and the CZMA and the regulations promulgated thereunder, in the context of Plaintiff's ongoing effort before the FERC to obtain unconditional authorization for and approvals of its proposed LNG marine receiving terminal and storage facility.

6. Because the CZMA expressly provides that a state agency acting under the CZMA must affirmatively concur with or object to an application within six months of its receipt—with inaction constituting conclusively-presumed concurrence—and because that window for action lapsed long ago, Weaver's Cove respectfully requests that this Court declare that Defendants lack authority under federal law to object to this project under the CZMA, declare that Rhode Island's concurrence with this project under the CZMA is conclusively presumed as a matter of law, and enjoin Defendants and the agents thereof from acting in a manner inconsistent with the declaration.

7. Moreover, because application and enforcement of state law Category B Assent permit requirements are "preempted" by the NGA and would violate Commerce Clause of the U.S. Constitution, Weaver's Cove respectfully requests that this Court declare that Defendants are prohibited under federal law and the United States Constitution from applying and enforcing

Category B Assent permit requirements to this project, and that this Court enjoin Defendants from applying or enforcing the Category B Assent permit requirements against Weaver's Cove.

8. Until this Court grants the relief requested, the CRMC will continue to obstruct Federal approval of Weaver's Cove's proposed energy infrastructure project; not by formally objecting to the project, pursuant to the procedure established under the CZMA, but by refusing to take any action at all—leaving Weaver's Cove in a regulatory "no man's land," and by seeking to enforce a state regulatory program preempted by federal law.

**PARTIES**

9. Plaintiff Weaver's Cove is a limited liability company organized and incorporated under the laws of the State of Delaware, with its principal place of business located in Fall River, Massachusetts.

10. Defendant Rhode Island Coastal Resources Management Council is a state agency created by Act of the Rhode Island General Assembly and is the Rhode Island agency tasked with administering the CZMA for Rhode Island.

11. Defendant Michael M. Tikoian is Chair of the CRMC.

12. Defendant Paul E. Lemont is Vice Chair of the CRMC.

13. Defendant Thomas Ricci is a Member of the CRMC.

14. Defendant David Abedon is a Member of the CRMC.

15. Defendant Donald Gomez is a Member of the CRMC.

16. Defendant K. Joseph Shekarchi is a Member of the CRMC.

17. Defendant Neill Gray is a Member of the CRMC.

18. Defendant W. Michael Sullivan is a Member of the CRMC.

19. Defendant Raymond C. Coia is a Member of the CRMC.

20. Defendant Gerald P. Zarrella is a Member of the CRMC.

21. Defendant Bruce Dawson is a Member of the CRMC.

22. The CRMC is located in Wakefield, Rhode Island.

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Weaver's Cove's claims arise under the laws of the United States.

24. This Court is empowered to provide declaratory relief in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

25. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the actions, inaction, and omissions giving rise to the claim occurred in this district.

**FACTS**

**Weaver's Cove's Proposed LNG Terminal**

26. In response to the well-recognized, growing shortage of natural gas supplies and infrastructure to meet the needs of natural gas consumers and electric power generators in New England, Weaver's Cove proposes to construct and operate an LNG marine import and storage terminal in Fall River, Massachusetts.

27. Weaver's Cove's proposed project has been found to be in the public interest as it will provide much needed natural gas supplies to the New England region, and has been approved by the FERC under Section 3 of the NGA. *See* Order Granting Authority Under Section 3 Of The Natural Gas Act And Issuing Certificate, *Weaver's Cove Energy, LLC et al.*, 112 F.E.R.C. ¶ 61,070 (2005) ("*Initial Order*") (attached as Exhibit A); Order On Rehearing,

*Weaver's Cove Energy, LLC et al.*, 114 F.E.R.C. ¶ 61,058 (Jan. 23, 2006) ("*Order on Rehearing*") (attached as Exhibit B).[1]

28. To bring LNG to Weaver's Cove's marine import terminal, specially-designed oceangoing LNG tankers will transit Narragansett Bay, in Rhode Island, and Mount Hope Bay—the Rhode Island and Massachusetts border runs through Mount Hope Bay—and finally up the Taunton River about two miles to the terminal site.

29. To facilitate the safe passage of LNG tanker traffic to and from the import terminal, Weaver's Cove proposes to perform a modest amount (*i.e.*, approximately 230,000 cubic yards) of maintenance and improvement dredging a 2.4 mile long reach of an existing six mile Federal Navigational Channel in Rhode Island waters, and to perform additional dredging in Massachusetts waters.

**Statutory and Regulatory Background**

***The Natural Gas Act***

30. The import and export of natural gas is regulated under Section 3 of the NGA. 15 U.S.C. § 717b(a). That section provides that "no person shall export . . . or import any natural gas from a foreign country without first having secured an order of the Commission authorizing it to do so. . . . The Commission may by its order grant such application, in whole or in part,

---

1 Various parties have petitioned for review of the FERC orders in the First Circuit. *City of Fall River v. FERC*, No. 06-1203 (1st Cir. filed Jan. 26, 2006); *Conservation Law Found v. FERC*, No. 06-1204 (1st Cir. filed Jan. 26, 2006); *Miozza v. FERC*, No. 06-1220 (1st Cir. filed Jan. 30, 2006). While petitioners have identified various grounds on which they challenge the FERC decisions, the issues involved in this Complaint cannot be resolved in the appeals before the First Circuit. This Complaint challenges not the validity of the *FERC's* decisions (including the conditions attached to the FERC's certification of the project), but those actions of *another* government body that unlawfully impair Weaver's Cove's ability to *satisfy* those conditions.

with such modification and upon such terms and conditions as the Commission may find necessary or appropriate . . . ." *Ibid.*

31. LNG is "natural gas" for the purpose of the Section 2(5) of the NGA. *Distrigas Corp.*, 47 F.P.C. 752, 755-56 (1972).

32. Section 3(b)(e)(1) of the NGA, 15 U.S.C. § 717b(e)(1), declares that the FERC "shall have the *exclusive authority* to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." (emphasis added). By virtue of the NGA, Congress has conferred upon FERC exclusive jurisdiction over the transportation and/or sale of natural gas for resale in interstate and foreign commerce. The NGA and the regulations promulgated thereunder form a comprehensive and exclusive national regulatory scheme for natural gas transported and/or sold for resale in interstate and foreign commerce, and for the facilities associated with such transactions.

***The Coastal Zone Management Act and Regulations Promulgated Thereunder***

33. The CZMA, 16 U.S.C. §§ 1451 *et seq.*, was enacted to promote the protection of the Nation's coastal resources, through cooperation and coordination between the federal and state governments, *id.* § 1452.

34. "Federal consistency," as required under the CZMA, provides that certain activities affecting coastal resources must be consistent—to the extent warranted in light of overarching federal concerns—with the enforceable policies of a state's federal-government-approved Coastal Resources Management Plan ("CRMP").

35. More specifically, under the CZMA, if a coastal state wishes to conduct a federal "consistency review" of any projects subject to federal authorization, then that state must submit for approval by the Secretary of Commerce "a [CRMP] for its coastal zone in accordance with rules and regulations promulgated" under the CZMA. *Id.* § 1455(d). Technically, the National

Oceanic and Atmospheric Administration ("NOAA"), an agency within the Department of Commerce, approves the state's CRMP. *See* 15 C.F.R. § 923.60.

36. Under the CZMA, a federal agency such as FERC cannot approve certain types of projects "until the state [in which the project is situated] or its designated agency has concurred with the applicant's certification [of consistency with the state's CRMP]." 16 U.S.C. § 1456(c)(3)(A).

37. That "consistency certification," required pursuant to 16 U.S.C. § 1456(c)(3)(A), represents the project proponent's certification that its proposed project "complies with the enforceable policies of the state's NOAA-approved [CRMP] and that such activity will be conducted in a manner consistent with the [CRMP]." 16 U.S.C. § 1455(d).

38. Under the CZMA, a state has six months after receipt of an applicant's consistency certification to render that state's federal consistency determination; failure to render its judgment results in the state's concurrence being "*conclusively presumed*." 16 U.S.C. § 1456(c)(3)(A) (emphasis added).

39. The six-month window for reviewing a consistency certification commences once the state agency "receives a copy of the consistency certification, and the information and data required pursuant to [15 C.F.R.] § 930.58." 15 C.F.R. § 930.62.

40. 15 C.F.R. § 930.58 specifies the "necessary data and information" that, upon submission, commences the six-month state review period.

**Weaver's Cove's NGA Application and Subsequent Consistency Certification**

41. On July 15, 2005, the FERC approved Weaver's Cove's proposed LNG terminal project, conditioned, *inter alia*, upon Weaver's Cove receiving the Rhode Island CRMC's concurrence with its consistency certification pursuant to the CZMA. *See Initial Order* at ¶ 111,

Appx. B ¶ 24 ("Condition 24"). On January 23, 2006, the FERC reaffirmed its approval of the proposed project. *Order on Rehearing* at ¶¶ 122-28.

42. By operation of law, Weaver's Cove's approval is also conditioned on CRMC concurrence in a second way: the USACE cannot permit planned river dredging activities without the CRMC's concurrence under the CZMA that such dredging activities are consistent with the Rhode Island CRMP. 16 U.S.C. § 1456(c)(3)(A).

43. On July 19, 2004, in anticipation of being required to obtain the required consistency certification concurrence from the Rhode Island CRMC, Weaver's Cove filed with the CRMC a certification of the consistency of the dredging to be performed in the Federal Navigation Channel in Rhode Island associated with the project with the enforceable policies of the CRMP (hereinafter, the "Consistency Certification"). *See* Exhibit C.

44. By telephone, in late July 2004, the CRMC advised a representative of Weaver's Cove that it believed that the Consistency Certification was incomplete for two reasons: (1) there was no information as to where the dredged materials would be deposited; and (2) the design drawings for the dredging plan were not stamped by a Rhode Island professional engineer.

45. In response to the first point, on August 2, 2004, Weaver's Cove advised the CRMC by letter that the CRMC's apparent requirement that Weaver's Cove file information as to the disposal of the dredge material was inapplicable to Weaver's Cove's project, because Weaver's Cove did not propose to dispose of any dredge materials in Rhode Island. *See* Exhibit D. The CRMC has never responded.

46. In response to the second point, without conceding that the stamp of a Rhode Island engineer is information required under Rhode Island's CRMP, Weaver's Cove

resubmitted the design drawings with the stamp of a Rhode Island engineer on August 12, 2004. *See* Exhibit E.

47. On August 26, 2004, a CRMC official sent a letter to Weaver's Cove taking the position that the Weaver's Cove Consistency Certification was incomplete because it lacked a "Section 401 Water Quality Certificate," *i.e.*, a certificate issued pursuant to Section 401 of the Clean Water Act, 33 U.S.C. § 1341(a). *See* Exhibit F. A review of that letter reveals that it made no mention of any need for any dredge disposal-site information. In short, the CRMC did not respond to, and to date has not responded to, Weaver's Cove's August 2, 2004 letter.

48. The Section 401 Water Quality Certificate demanded by the CRMC is not listed in the CRMC's NOAA-approved CRMP as "necessary data and information" required for a consistency certification to be complete and for the six-month clock to commence for review purposes. 15 C.F.R. § 930.62.

49. Accordingly, the six-month statutory review period under the CZMA commenced on either July 14, 2004, when Weaver's Cove submitted the Consistency Certification, or at the very latest on August 12, 2004, when Weaver's Cove resubmitted the design drawings with the stamp of a Rhode Island engineer.

50. As of the date of this pleading, nearly three years after Weaver's Cove submitted its Consistency Certification, the CRMC has not yet approved or objected to the Consistency Certification.

51. In sum, the CRMC failed to object to the Consistency Certification within the statutory six months of receipt of the Consistency Certification, including all of its necessary data and information.

**Weaver's Cove Has Pursued Regulatory Resolution of the CRMC's Steadfast Refusal to Act**

52. Weaver's Cove has challenged, through various regulatory agency actions, CRMC's failure to act on the Consistency Certificiation within the statutory six-month period.[2]

53. *First*, in light of the CRMC's failure to act within the statutory six-month period, Weaver's Cove requested on August 15, 2005, as part of a request for rehearing of the ***Initial Order***, that the FERC remove the requirement that it provide documentation of the CRMC's concurrence with the Weaver's Cove Consistency Certification.

54. On September 9, 2005, the CRMC filed before the FERC a pleading claiming that the CRMC did not have to act on the Consistency Certification within six months of receipt of Weaver's Cove's Consistency Certification, which contained all necessary data and information.

55. The FERC, in issuing its *Order on Rehearing*, declined to resolve the issue, deferring to others. 114 F.E.R.C. ¶ 61,058 at ¶¶ 122-28. The Commission stated that it "is not in a position to interpret regulations of other agencies or otherwise to resolve the issues raised by the parties. This issue is a matter for the Rhode Island [CRMC], the NOAA, and the Department of Commerce, not this Commission." *Id.* ¶ 128.

56. *Second*, on October 11, 2005, Weaver's Cove filed a notice of appeal to the Secretary of Commerce, pursuant to 15 C.F.R. § 930.125. Weaver's Cove argued that the CRMC's filing before the FERC—which referred to Weaver's Cove's complaints regarding the CRMC's foot-dragging as the "types of objections" that should be put "before the Secretary of

[2] To be clear, however, this Complaint pertains not to those federal agency actions but, rather, to the CRMC's inaction pursuant to its limited authority under the CZMA. Weaver's Cove does not challenge in this Complaint the validity of the FERC's condition as it stood at the time that the FERC issued its orders. It seeks here only a declaration that, by the plain words of the CZMA, the CRMC's concurrence is conclusively presumed, and an injunction preventing Defendants from taking any action inconsistent with federal law on that point.

Commerce pursuant to the CZMA appeal provisions"—constituted an "objection" to the Consistency Certification under Part 930 of the NOAA Regulations, and that the Secretary should overrule that objection.

57. On November 10, 2005, the Department of Commerce, through NOAA Administrator and Under Secretary of Commerce for Oceans and Atmosphere Conrad C. Lautenbacher, issued its opinion that the CRMC's filing did not constitute an "objection" to the Consistency Certification for the purposes of Part 930 of the NOAA Regulations. The position of Commerce and NOAA was that "[a]bsent an objection by Rhode Island, there is no basis for appeal to the Secretary of Commerce."

58. *Third*, on December 16, 2005, Weaver's Cove submitted a letter to Mr. Eldon Hout, Director of the Office of Ocean and Coastal Resource Management, within the National Ocean Service of the NOAA, requesting that the NOAA interpret its regulations and formally conclude that, under the NOAA Regulations and the NOAA-approved Rhode Island CRMP, CRMC's requirement that Weaver's Cove provide dredge material disposal information and a Section 401 Water Quality Certificate is not correct as neither constitutes "necessary data and information."

59. The CRMC responded on February 17, 2006, filing a responsive memorandum of law, arguing that the CRMC retained authority to object to Weaver's Cove's Consistency Certification

60. To date, the NOAA has not responded to that request for an interpretation, and it has evidenced no intent to respond at all or to otherwise enforce the CZMA, the regulations thereunder or the Rhode Island CRMP.

61. *Fourth*, on June 22, 2006, Weaver's Cove requested that the Secretary of Commerce, on his own initiative, find the project to be consistent with the objectives of the

CZMA or otherwise necessary in the interest of national security, pursuant to 16 U.S.C. § 1456(c)(3)(A).

62. On July 24, 2006, NOAA Administrator Lautenbacher issued a letter stating that "absent an objection by Rhode Island, there is no basis for an appeal to the Secretary." Weaver's Cove's request was dismissed.

63. In the face of the CRMC's refusal even to *process* Weaver's Cove's Consistency Certification, now nearly three years after the date on which it was submitted, Weaver's Cove still has not been able to obtain relief in any forum.

**The CRMC Persists In Threatening To "Enforce" Its CRMP In Violation Of The Clear Terms Of Federal Law**

64. On at least five separate occasions, the CRMC has publicly announced in regulatory proceedings that it intends to rely on its now-expired authority under the CZMA as grounds to block the project:

65. As noted above, *see* ¶ 54, on September 9, 2005, the CRMC submitted a "Memorandum of Law" to the FERC, stating that "applicant review would not commence until [the demanded] information was provided."

66. On December 12, 2005, the CRMC submitted to the USACE a letter indicating that CRMC would commence its consistency review "[w]hen CRMC receives all the [demanded] data and information …".

67. On February 7, 2006, the CRMC submitted to the USACE another letter, stating that "[w]e will be unable to find [the project] consistent" with the CRMP until Weaver's Cove submits the demanded information.

68. As noted above, *see* ¶ 59, on February 17, 2006, the CRMC filed a memorandum of law at NOAA, arguing that the CRMC retained authority to object to Weaver's Cove's Consistency Certification.

69. On November 2, 2006, the CRMC sent to Weaver's Cove a letter (later lodged before the FERC) that the CRMC would not commence its review until receiving the information requested. *See* Exhibit G.

70. In sum, as the CRMC repeatedly has stated, it will not act on Weaver's Cove's Consistency Certification unless Weaver's Cove provides information which it claims is required before it must commence its review of the application. However, such information is not required by law; thus, the CRMC has failed to act within the CZMA's prescribed six-month period, and its concurrence with Weaver's Cove's Consistency Certification is conclusively presumed as a matter of law.

71. CRMC continues to threaten to "enforce" its CRMP against Weaver's Cove despite the expiration of the six-month period in which the CRMC was empowered to act. Such threatened "enforcement" of the CRMP directly contradicts the plain terms of controlling federal law.

72. Weaver's Cove suffers actual injury in fact, resulting from the CRMC's actions, threatened actions, and continued inaction, as described above. Weaver's Cove is precluded from satisfying the *Initial Order*'s Condition 24, *see* ¶ 41, *supra*, and Weaver's Cove is precluded by law from securing the USACE permits required for dredging, *see* ¶ 42, *supra*.

**The Category B Assent Permit Program and CRMC's Threatened Enforcement.**

73. Pursuant to Rhode Island law, certain activities within the state's coastal zone require an approval from the CRMC, pursuant to the state's "public trust" authority. R.I. GEN. LAWS § 46-23-1(f).

74. That requirement — known as the requirement of "Category B Assent," 04-000-010 R.I. CODE R § 300.1 *et seq.* — requires persons undertaking certain activities (including dredging in Rhode Island waters) to submit information that overlaps the application requirements under the NGA and the FERC regulations. Areas of overlap include, but are not limited to, need, compliance with local zoning, building, and fire code requirements, safety, and environmental impacts.

75. Defendants assert that Weaver's Cove must obtain a Category B Assent pursuant to the CRMP for the Weaver's Cove project:

> Weaver's Cove does need a Category B Assent because the Federal Government has done nothing to alter the basic fact that Rhode Island owns the site and Weaver's Cove does not. Weaver's Cove must apply under purely state law, to the CRMC, for a license to use state land separate and apart from any Federal determination requirements.

*See* Answer ¶ 138.

76. By asserting jurisdiction over the Weaver's Cove Project and requiring Weaver's Cove to seek and obtain a Category B Assent for the Project pursuant to Rhode Island Law, Defendants have intentionally interfered with and, unless enjoined, will continue to interfere with Weaver's Cove's efforts to permit and construct the Project, thereby causing Weaver's Cove and the public to suffer irreparable injury, damage and loss for which Weaver's Cove and the public have no adequate remedy at law.

77. Defendants' threatened enforcement of its Category B Assert requirements contradicts the NGA and is therefore preempted under the U.S. Constitution.

78. Furthermore, Defendants' enforcement of its Category B Assert requirements impose an lawful burden on interstate and international commerce, in violation of the Commerce Clause of the U.S. Constitution.

79. Defendants' threatened application and assertion of jurisdiction over the Project under Rhode Island's laws regarding Category B Assent has created an actual controversy between Plaintiff and Defendants. The Defendants have intentionally acted in violation of the laws and constitution of the United States by asserting jurisdiction over the Project with respect to the requirement that the Plaintiff apply for and obtain a Category B Assent, and will continue to do so unless such asserted jurisdiction is declared to be unlawful, null, void and unenforceable.

**COUNT I**
**(Declaratory Judgment Act — CZMA)**

80. Plaintiff realleges and reincorporates by reference the allegations in the paragraphs above.

81. Weaver's Cove requests the Court to so declare the Rhode Island CRMC's purported grounds for exempting itself from the six-month review period are unjustified as a matter of law under the CZMA, the NOAA Regulations, and Rhode Island's NOAA-approved CRMP.

***Lack Of A Section 401 Water Quality Certificate Does Not Toll The Review Period***

82. A Section 401 Water Quality Certificate is not identified as "necessary data and information" under the Rhode Island CRMP. In fact, it is specifically excluded as a requirement: the portion of the CRMP requiring such a certificate explicitly stated, at the time of Weaver's Cove's Consistency Certification, that such a certificate was required "[*e*]*xcept for* federal consistency reviews". CRMP § 300.9C.2 (emphasis added). The Weaver's Cove project involves a federal consistency review as contemplated by the CZMA. Accordingly, CRMC's claim that the absence of the Section 401 Water Quality Certificate constitutes a lack of

"necessary data and information" is directly contradicted by the express terms of Rhode Island's CRMP.

83. Even if, assuming *arguendo*, the absence of a Section 401 Water Quality Certificate could justify agency delay, such absence cannot justify delay in this case. The NOAA's Regulations require that the Rhode Island CRMC notify Weaver's Cove of any alleged deficiencies in the Consistency Certification submission ***in writing*** within thirty days of the CRMC's receipt of the Consistency Certification and supporting documentation. 15 C.F.R. §§ 930.60(a)(1), 930.63(c). *See* Exhibit H.

84. As noted in Paragraphs 43-47 above, the CRMC failed to provide Weaver's Cove timely *written* notice of the alleged lack of a Section 401 Water Quality Certificate. For that reason, even assuming *arguendo* that the CZMA and CRMP require Weaver's Cove to submit the Water Quality Certificate, the absence of the CZMA-required notice means that such a requirement would no longer be enforceable, and thus can not lawfully constitute "necessary data and information" sufficient to toll commencement of the statutory six-month review period.

***Lack Of Dredge Material Disposal Information Does Not Toll The Review Period***

85. As noted above, ¶ 80, the CRMC must notify Weaver's Cove of any alleged deficiencies in the Consistency Certification submission [*in writing*] within 30 days of the CRMC's receipt of the Consistency Certification and supporting documentation. 15 C.F.R. §§ 930.60(a)(1), 930.63(c).

86. As noted above, ¶ 44, the CRMC only *orally* requested information regarding dredge mateial disposal in July 2004.

87. The CRMC thus failed to provide written notice of the deficiency of the allegedly "necessary" dredging disposal information within thirty days of receipt of Weaver's Cove's

Consistency Certification. For that reason, the absence of that information, assuming ***arguendo*** that it was required under the CZMA and under the CRMP, cannot constitute a lack of necessary data and information sufficient to toll commencement of the statutory six-month review period.

88. Nevertheless, as noted above, ¶ 45, Weaver's Cove responded to the July 2004 oral request with an August 2, 2004 letter explaining the action it planned to take. Weaver's Cove explained that Weaver's Cove did not propose to dispose of dredge material in Rhode Island, and that, therefore, such dredging disposal information was not relevant.

89. On August 24, 2004, the CRMC sent Weaver's Cove a letter taking the position that its Consistency Certification was incomplete. The CRMC's letter was silent as to the need for dredging disposal information. Rather, as noted above, ¶ 47, the letter referenced ***only*** the lack of a Section 401 Water Quality Certificate as the absent "necessary data and information."

90. Given the lack of the required timely written notice by the CRMC, the CRMC cannot now lawfully rely on the absence of dredging disposal information as a basis for self-serving tolling of the commencement of the statutory six-month review window. 15 C.F.R. §§ 930.60(a)(1), 930.63(c).

91. Because the statutory six-month review period that commenced in 2004 has since lapsed, the CZMA, the regulations promulgated pursuant to the CZMA, and the NOAA-approved CRMP deem the Rhode Island CRMC's concurrence with the Consistency Certification to be conclusively presumed, pursuant to 16 U.S.C. § 1456(c)(3)(A). Weaver's Cove requests that this Court declare it as such.

92. Such relief is necessary to allow Weaver's Cove to comply with the conditions set forth in the FERC's approval of the project, and to enable the USACE to permit Weaver's Cove to undertake the dredging associated with the project.

93. Relief under the Declaratory Judgment Act is warranted in this case, because such relief would promote the Act's "laudable policy of providing speedy adjudication of legal disputes to remove uncertainty and insecurity from legal relationships." *Wilderness Soc'y v Morton*, 479 F.2d 842, 887 (D.C. Cir. 1973).

94. Relief under the Declaratory Judgment Act is warranted in this case, because such relief would eliminate "the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating a suit at his leisure—or never." WRIGHT, MILLER & KANE, 10B FED. PRAC. AND PROC. § 2751 (3d ed. 1998). Absent such relief, nothing can compel the CRMC to act. Instead, it may continue to withhold action on the Consistency Certification *ad infinitum*, and thus thwart the approval of this project by the FERC, the federal agency granted the "*exclusive authority* to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal," 15 U.S.C. § 717b(e)(1) (emphasis added), which has already found the project to serve the public interest.

95. Declaratory relief is proper in this case because "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

**COUNT II**
**(Injunction)**

96. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above.

97. As demonstrated by, *inter alia*, the CRMC's February 17, 2006 letter to NOAA, the CRMC continues to threaten to object to Weaver's Cove's Consistency Certification notwithstanding the lack of legal authority to do so.

98. As such, the CRMC threatens to take action violative of Federal law – ***i.e.***, the CZMA and the regulations thereunder.

99. Defendants' ongoing acts in violation of the CZMA have inflicted and continue to inflict irreparable harm on Weaver's Cove.

100. Weaver's Cove has no adequate remedy at law.

101. Therefore, Weaver's Cove respectfully requests that this Court enjoin the CRMC from "objecting" to Weaver's Cove's Consistency Certification. *Ex parte Young*, 209 U.S. 123, 144-45 (1908).

**COUNT III**
**(Declaratory Judgment Act — Supremacy Clause)**

102. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above.

103. Defendants' threatened application and assertion of subject matter jurisdiction over the Project under Rhode Island law with respect to the requirement that Plaintiff apply for and obtain a Category B Assent is in direct conflict with and is preempted by the NGA and the FERC regulations.

104. Defendants' threatened application and assertion of subject matter jurisdiction over the Project under the CRMP with respect to the requirement that Plaintiff apply for and obtain a Category B Assent acts as an obstacle to the realization of Congressional objectives as set forth in the NGA and the FERC regulations.

105. Defendants' threatened application and assertion of subject matter jurisdiction over the Project under Rhode Island law with respect to the requirement that Plaintiff apply for and obtain a Category B Assent purports to regulate in an area where Congress, pursuant to the

NGA and the FERC regulations, has occupied the field to the exclusion of state regulation and, as such, is preempted.

106. Defendants' threatened application and assertion of subject matter jurisdiction over the Project under the CRMP with respect to the requirement that Plaintiff apply for and obtain a Category B Assent purports to regulate matters that are within the scope of the comprehensive regulatory scheme established by Congress under the NGA. Thus, such assertion and threatened application would purport to give Defendants the right to regulate matters that are comprehensively and exclusively regulated by FERC and DOT, in violation of the Supremacy Clause of the United States Constitution.

**COUNT IV**
**(Commerce Clause)**

107. Plaintiff repeats the allegations set forth in paragraph 1 through 106 above.

108. Defendants' assertion and threatened application of subject matter jurisdiction over the Project under the CRMP with respect to the requirement that Plaintiff apply for and obtain a Category B Assent constitutes an unlawful burden on interstate and international commerce, in contravention of the Commerce Clause of the United State Constitution.

109. Defendants' requirements would prohibit and thus substantially (i) interfere with the interstate and foreign transportation of natural gas in interstate commerce, and (ii) increase the cost and expense thereof. Therefore, the aforesaid actions by Defendants unduly burden interstate commerce in violation of the Commerce Clause of the United States Constitution.

**COUNT V**
**(Injunction)**

110. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above.

111. As demonstrated by, *inter alia*, Defendants threaten enforcement of the Category B Assent requirements, which are preempted by the NGA and the FERC regulations, and the enforcement of which would violate the Commerce Clause of the U.S. Constitution.

112. As such, the CRMC threatens to take action violative of Federal law — *i.e.*, the Supremacy Clause and the Commerce Clause of the U.S. Constitution.

113. Defendants' ongoing acts in violation of the U.S. Constitution have inflicted and continue to inflict irreparable harm on Weaver's Cove.

114. Weaver's Cove has no adequate remedy at law.

115. Therefore, Weaver's Cove respectfully requests that this Court enjoin Defendants from enforcing the Category B Assent requirements against it. *Ex parte Young*, 209 U.S. 123, 144-45 (1908).

**PRAYER FOR RELIEF**

Wherefore Plaintiff prays the following relief:

(A) An order and judgment declaring that:

(1) the CRMC's concurrence with Weaver's Cove's Consistency Certification is conclusively presumed, by operation of the plain terms of the CZMA, and that as such CRMC lacks authority under federal law to object to the Consistency Certification;

(2) Defendants' threatened application and assertion of jurisdiction over the Project under Rhode Island law, with respect to the requirement that Plaintiff apply for and obtain a Category B Assent, is illegal, null and void, and unenforceable because they constitute actions preempted by the NGA and FERC regulations, unduly interfere and conflict with a comprehensive federal regulatory scheme, and/or burden interstate and foreign commerce;

(3) Defendants are without jurisdiction to, and are preempted by federal law from, ordering Plaintiff, pursuant to Rhode Island law, to apply for or obtain a Category B Assent or any other state permit or approval for the Project; and

(4) Defendants' jurisdiction over the Project is limited to a review, pursuant to the requirement of the CZMA and applicable regulations, of the federal consistency certification previously submitted by the Plaintiff to the FERC and CRMC for the Project.

(B) An injunction prohibiting the CRMC from:

(1) attempting to enforce the CRMP in a manner inconsistent with its conclusively-presumed concurrence with Weaver's Cove's Consistency Certification; and

(2) seeking to enforce, whether directly or indirectly, all or any portion of the State Coastal Resources Management Program, that would purport to require Plaintiff to apply for or obtain a Category B Assent or any other permit or approval for the Project.

(C) Costs and attorney's fees pursuant to any applicable statute or authority;

And

(D) Any other relief that this Court deems to be just and appropriate.

Respectfully submitted,

/s/ Gregory L. Benik
Gregory L. Benik (R.I. Bar No. 1515)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903-1345
Phone: (401) 454-1025
Fax: (401) 454-1030
GBenik@nixonpeabody.com
*Attorneys for Weaver's Cove Energy, LLC*

Dated: September 10, 2007

Of Counsel:

Bruce F. Kiely
G. Mark Cook
Adam J. White
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Phone: (202) 639-7700
Fax: (202) 639-7890

LIST OF EXHIBITS

Exhibit

A. Order Granting Authority Under Section 3 Of The Natural Gas Act And Issuing Certificate, ***Weaver's Cove Energy, LLC et al.***, 112 F.E.R.C. ¶ 61,070 (2005)

B. Order On Rehearing, ***Weaver's Cove Energy, LLC et al.***, 114 F.E.R.C. ¶ 61,058 (Jan. 23, 2006)

C. July 16, 2004 – Weaver's Cove Energy, LLC Letter submitting RI CRMP Consistency Certification Application

D. August 2, 2004 – Weaver's Cove Letter to CRMC

E. August 12, 2004 – Weaver's Cove Letter resubmitting the design drawings with the stamp of a Rhode Island engineer

F. August 26, 2004 – CRMC Letter to Weaver's Cove taking the position that the Weaver's Cove Consistency Certification was incomplete

G. November 2, 2006 – CRMC Letter to Weaver's Cove

H. 15 C.F.R. §§ 930.60(a)(1), 930.63(c)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1(a) of the Federal Rules of Civil Procedure, Weaver's Cove Energy, LLC, hereby provides this Disclosure Statement in connection with its Complaint in the above-captioned case:

Weaver's Cove Energy, LLC is a Delaware limited liability company wholly owned by Hess LNG LLC, a Delaware limited liability company. No publicly held company has a 10 percent or greater ownership interest in Weaver's Cove Energy, LLC or Hess LNG LLC.

Respectfully submitted,

/s/ Gregory L. Benik
Gregory L. Benik
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903-1345
Phone: (401) 454-1025
Fax: (401) 454-1030

*Attorneys for Weaver's Cove Energy, LLC*

Dated: September 10, 2007

Of Counsel:

Bruce F. Kiely
G. Mark Cook
Adam J. White
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Phone: (202) 639-7700
Fax: (202) 639-7890

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2007, the foregoing was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system and by regular mail to:

Brian A. Goldman, Esq.
Goldman Law Offices
681 Smith Street
Providence, RI 02908

Michael Rubin, Assistant Attorney General
Rhode Island Dept. of Attorney General
150 South Main Street
Providence, RI 02903

/s/ Gregory L. Benik