City of FallRiver, MA v. F.E.R.C.
C.A.1,2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,First Circuit.
CITY OF FALL RIVER, MASSACHUSETTS; The Attorney General of the Commonwealth of Massachusetts; The Attorney General for the State of RhodeIsland; and Massachusetts Energy Facilities Siting Board, Petitioners,
v.
FEDERALENERGYREGULATORY COMMISSION, Respondent.
Conservation Law Foundation, Petitioner,
v.
Federal Energy Regulatory Commission, Respondent.
Michael L. Miozza, Petitioner,
v.
Federal Energy Regulatory Commission, Respondent.
**Nos. 06-1203, 06-2146, 06-1204, 06-2147, 06-1220.**

Heard June 8, 2007.
Decided Oct. 26, 2007.

**Background:** Petitioners sought review of order of Federal Energy Regulatory Commission (FERC), 2005 WL 1655878, granting conditional approval for utility to site, construct, and operate proposed liquefied natural gas (LNG) terminal and pipeline, under Natural Gas Act (NGA), order denying rehearing, 2006 WL 166441, orders denying motions to reopen record in proceeding, 2006 WL 993329, and order denying rehearing of motion to reopen record, 2006 WL 2007552.

**Holdings:** The Court of Appeals, Torruella, Circuit Judge, held that:

(1) challenge to FERC order was not fit for review under ripeness doctrine;

(2) balance of hardship to parties favored denial of review; and

(3) changed circumstances did not require FERC to reopen record.

Affirmed.

**[1] Federal Courts 170B 12.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk12 Case or Controversy Requirement
170Bk12.1 k. In General. Most Cited Cases

Ripeness is a justiciability doctrine that is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[2] Federal Courts 170B 12.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk12 Case or Controversy Requirement
170Bk12.1 k. In General. Most Cited Cases

Even in cases raising only prudential, rather than Article III concerns, the question of ripeness may be considered on a court's own motion. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[3] Federal Courts 170B 723.1**

170B Federal Courts
170BVIII Courts of Appeals
170BVIII(I) Dismissal, Withdrawal or Abandonment
170Bk723 Want of Actual Controversy
170Bk723.1 k. In General. Most Cited Cases

In determining whether a case is ripe for review, under Article III and prudential requirements, Court of Appeals must examine both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Const. Art. 3, § 2, cl. 1.

**[4] Federal Courts 170B 12.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk12 Case or Controversy Requirement
170Bk12.1 k. In General. Most Cited Cases

Under the Article III and prudential ripeness inquiry, fitness for judicial review is analyzed to determine whether the matter involves uncertain events which may not happen at all, and whether the issues involved are based on legal questions or factual ones, and if the court's interest tends toward postponement, this consideration must be weighed against the immediate impact of the actions on the challengers, and whether that impact is so harmful that present consideration is warranted. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[5] Federal Courts 170B 12.1**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk12 Case or Controversy Requirement
170Bk12.1 k. In General. Most Cited Cases

A claim is not ripe for adjudication, under Article III and prudential requirements, if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[6] Gas 190 1**

190 Gas
190k1 k. Power to Control and Regulate. Most Cited Cases

Petitioners' challenge to order of Federal Energy Regulatory Commission (FERC) conditionally approving, pursuant to Natural Gas Act (NGA), utility's proposed liquefied natural gas (LNG) project was not fit for review, under Article III and prudential ripeness requirements, since project might never go forward due to express conditions of project's approval by United States Coast Guard (USCG) for waterway suitability and Department of Interior (DOI) for suitability under Wild and Scenic Rivers Act, and neither agency had given final recommendation and had expressed serious reservations about project. U.S.C.A. Const. Art. 3, § 2, cl. 1; Natural Gas Act, § 1 et seq., 15 U.S.C.A. § 717 et seq.; Wild and Scenic Rivers Act, § 1(b) et seq., 16 U.S.C.A. § 1271 et seq.; 33 C.F.R. §§ 127.007, 127.009 (2005).

**[7] Gas 190 1**

190 Gas
190k1 k. Power to Control and Regulate. Most Cited Cases

Balance of hardship to Federal Energy Regulatory Commission (FERC) and petitioners challenging FERC's order conditionally approving, pursuant to Natural Gas Act (NGA), utility's proposed liquefied natural gas (LNG) project favored denial of review, under Article III and prudential ripeness requirements, since statute of limitations would not accrue until conditions were met to proceed with project by final approval of United States Coast Guard (USCG) and Department of Interior (DOI), and FERC's order had no immediate impact on petitioners because project could not proceed until approval was received from USCG and DOI. U.S.C.A. Const. Art. 3, § 2, cl. 1; Natural Gas Act, § 1, 15 U.S.C.A. § 717; 33 C.F.R. §§ 127.007, 127.009 (2005).

**[8] Administrative Law and Procedure 15A 722.1**

15A Administrative Law and Procedure
15AV Judicial Review of Administrative Decisions
15AV(C) Proceedings for Review
15Ak722 Time for Proceedings
15Ak722.1 k. In General. Most Cited Cases

A time limitation on petitions for review of agency decisions can run only against challenges ripe for review.

**[9] Public Utilities 317A 194**

317A Public Utilities
317AIII Public Service Commissions or Boards
317AIII(C) Judicial Review or Intervention
317Ak188 Appeal from Orders of Commission
317Ak194 k. Review and Determination in General. Most Cited Cases

When Federal Energy Regulatory Commission (FERC) denies a petition to reopen a case record, Court of Appeals reviews FERC's decision for abuse of discretion.

**[10] Administrative Law and Procedure 15A 781**

15A Administrative Law and Procedure
15AV Judicial Review of Administrative Decisions
15AV(E) Particular Questions, Review of
15Ak781 k. In General. Most Cited Cases

Generally, Court of Appeals upholds a federal agency's decision not to reopen a record or hearing based on changed circumstances or newly available information unless it clearly appears that the new evidence would compel or persuade a contrary result.

**[11] Gas 190 1**

190 Gas
190k1 k. Power to Control and Regulate. Most Cited Cases

Changes in dredging regulations and Congress' prohibition of bridge demolition were not changed circumstances or newly available information that would compel Federal Energy Regulatory Commission (FERC) to adopt contrary result to its order conditionally approving, under Natural Gas Act (NGA), utility's proposed liquefied natural gas (LNG) project, as required for FERC to reopen record, since changes in dredging regulations could cause project delays but FERC denied that project completion date was controlling factor in conditional approval, and FERC was not in position to make informed evaluation of prohibition on bridge demolition until project was approved by United States Coast Guard (USCG). Natural Gas Act, § 1, 15 U.S.C.A. § 717; 33 C.F.R. §§ 127.007, 127.009 (2005).

On Petitions for Review of an Order of the Federal Energy Regulatory Commission.

Robert S. Taylor, with whom Edward Berlin, Lester S. Hyman, B, H & T Associates, Thomas F. McGuire, Jr., Corporation Counsel, Thomas F. Reilly, Massachusetts Attorney General, Chief, Carol Iancu, Assistant Attorney General, were on brief, for the City of Fall River, the Attorney General of the Commonwealth of Massachusetts, and Massachusetts Energy Facilities Siting Board.

Paul Roberti, Assistant Attorney General, Chief, Regulatory Unit, with whom Patrick C. Lynch, Attorney General of the State of Rhode Island, and Terence Tierney, Special Assistant Attorney General, were on brief, for the Attorney General for the State of Rhode Island.

Susan M. Reid, with whom Jerry Elmer were on brief, for Conservation Law Foundation.

Beth G. Pacella, Senior Attorney, with whom John S. Moot, General Counsel, and Robert H. Solomon, Solicitor, were on brief, for Federal Energy Regulatory Commission.

Bruce F. Kiely, with whom G. Mark Cook, Adam J. White, Jessica A. Fore, Emil J. Barth, and Baker Botts L.L.P. were on brief, for intervenors Weaver's Cove Energy, LLC and Mill River Pipeline, LLC.

Michael L. Miozza, on brief, pro se.

Before TORRUELLA and LIPEZ, Circuit Judges, and FUSTÉ,[FN*] District Judge.

TORRUELLA, Circuit Judge.

***1** The City of Fall River, Massachusetts, the Attorneys General of the States of Massachusetts and Rhode Island, the Conservation Law Foundation ("CLF"), and Michael Miozza (together, "Appellants") seek reversal of the July 2005 Order of the Federal Energy Regulatory Commission ("FERC") granting conditional approval to Weaver'sCove Energy ("WCE") to site, construct, and operate a proposed liquified natural gas ("LNG") terminal and associated pipeline in Fall River, Massachusetts, as well as the reversal of subsequent orders denying the reopening of the record and rehearing. The facility, which would include a marine berth (requiring dredging of the harbor and waterways, including the Taunton River), an LNG storage tank, regasification facilities, and an LNG truck distribution facility, would receive LNG from ocean-going ships for off-load to trucks or for regasification and delivery by pipeline to New England's network of natural gas pipelines.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The conditional permit is subject to a number of stipulations, including approval of the vessel transportation plan by the United States Coast Guard ("USCG") and consistency with the Wild and Scenic Rivers Act, as determined by the Department of the Interior ("DOI"). Because the USCG and the DOI have not completed their respective evaluations of these aspects of the project, we find that it would be premature to address the merits of the appeal. Appellants maintain the right to petition FERC, and subsequently seek appeal to this Court, if and when these and other relevant agencies have made their final recommendations.

## I. *Background*

In 2004, FERC, USCG, and the United States Department of Transportation ("DOT") entered into an Interagency Agreement to coordinate review of proposed LNG facilities. Under the agreement, FERC is the lead agency in authorizing LNG facilities and in preparing a proposed facility's Environmental Impact Statement ("EIS"),[FN1] which is required by the National Environment Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* Generally, authorization is granted (as it was in this case) on the condition that certain stipulations, environmental and otherwise, are met.

Here, the development of the EIS began on May 2, 2003, with a preliminary meeting between WCE, FERC staff, and key federal and state officials to discuss WCE's proposal and the accompanying environmental review process. At that time, FERC invited all federal, state, or local agencies with jurisdiction or special expertise to cooperate in preparing the EIS, and also invited all interested parties to submit written comments and to attend a public scoping meeting to be conducted jointly by FERC and Massachusetts state officials on July 29, 2003. On December 19, 2003, WCE formally applied to FERC under the Natural Gas Act of 1938 ("NGA"), 15 U.S.C. §§ 717 *et seq.*, requesting authority to site, construct, and operate the proposed LNG facility.

During the review process, FERC received voluminous comments from the public, as well as objections from government agencies. As part of this process, FERC's Commissioner and Chairman also hosted a meeting in January 2005, at which Fall River's Mayor, Senators Edward Kennedy and John Kerry, Congressman James McGovern, Massachusetts Representative David Sullivan, and then-Governor Mitt Romney's representative presented their views on the proposal.

***2** Based on those comments and the research conducted during the review process, FERC prepared and issued a Final EIS on May 20, 2005, and conditionally authorized the project on July 11, 2005.[FN2] The conditional authorization was based on an analysis of the need for the project,[FN3] project alternatives,[FN4] and safety and security considerations.[FN5]

The conditions imposed on the project's authorization include two significant hurdles: (1) approval of WCE's transportation plan by the USCG,[FN6] and (2) the DOI's finding that the project is consistent with the Wild and Scenic Rivers Act.[FN7] Neither the USCG nor the DOI have completed their respective final evaluations.

Since the conditional approval, there have also been two changes in project conditions that could very well affect WCE's final project approval. First, at the time of conditional approval, the Brightman Street Bridge, which crosses the river leading from the ocean to the planned LNG facility site, was scheduled for demolition. However, in late 2005, Congress passed legislation forbidding the demolition of the bridge, frustrating WCE's original plan to use 150-foot wide vessels to bring LNG to the facility. A new, larger Brightman Street Bridge is still scheduled to be built next to the old protected bridge. In an amended proposal, WCE informed the USCG that it would use smaller ships that could pass through the ninety-eight foot wide opening of the Bridge, thereby increasing the frequency of shipments from the planned fifty to seventy deliveries up to 120 deliveries per year. Even with the smaller ships, however, transit through the new and old Brightman Street Bridges would be "an extraordinary navigational maneuver" leaving "no margin for error," according to the Coast Guard's preliminary findings.

Second, seven months after FERC approval, DOI announced new restrictions that would limit the dredging of the necessary waterways to a few months of the year, likely delaying the completion of the project from 2010 to 2015.

On April 17, 2006, CLF petitioned FERC to reopen the record to consider the impact of those two

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

developments on the project. FERC denied the motion, finding that there had not been a change in circumstances on which its conditional approval was based, and therefore review was not warranted. FERC explained that it is the USCG's duty to review the changed shipment plan in its yet-to-be-released Letter of Recommendation, and that there is no change relative to FERC's conditional approval unless the USCG's review of this matter results in changes to the project that require a change to the plan authorized by FERC.[FN8] FERC did not address the potential impact of the changes in dredging regulations on the project's start date.

Following FERC's order denying the motion to reopen the record, CLF requested a rehearing based on the changes to WCE's navigation plan and potential delays caused by the new dredging constraints. FERC denied CLF's subsequent rehearing request on July 19, 2006. The explanation accompanying the denial of rehearing was largely the same as the denial to the motion to reopen. FERC added that, in regard to the dredging regulations, there was "no new or significantly changed project" warranting a rehearing and that the 2010 target date for the commencement of service was not a prerequisite for FERC's authorization to the project.

***3** The Appellants now seek review of (1) the merits of FERC's conditional project approval and (2) FERC's denial of Appellant's motion to reopen the record.

## II. *Discussion*

### A. *FERC's Conditional Approval*

[1][2] At this time, we decline to review the merits of FERC's conditional project approval because it is not yet ripe for review. "Ripeness is a justiciability doctrine" that is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 807-08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). Even in cases "raising only prudential concerns, the question of ripeness may be considered on a court's own motion."*Id.* at 808.We now consider the question.

[3] The ripeness doctrine is designed to prevent courts from "entangling themselves in abstract disagreements over administrative policies" and from improperly interfering in the administrative decision-making process. *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In determining whether a case is ripe for review, we must examine "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."*Id.* at 149.

[4] Under the first prong of this ripeness inquiry, fitness for judicial review, we consider "whether the matter involves uncertain events which may not happen at all, and whether the issues involved are based on legal questions or factual ones."*Skull Valley Band of Goshute Indians v. Nielson,* 376 F.3d 1223, 1237 (10th Cir.2004); *see also McInnis-Misenor v. Me. Med. Ctr.,* 319 F.3d 63, 70 (1st Cir.2003) ("In the fitness inquiry, ... prudential concerns focus[ ] on the policy of judicial restraint from unnecessary decisions.")."If the court's interest tends toward postponement, we must then weigh this consideration against the immediate impact of the actions on the challengers, and whether that impact is so harmful that present consideration is warranted."*Midwestern Gas Transmission Co. v. Fed. Energy Reg. Comm'n,* 589 F.2d 603, 618 (D.C.Cir.1978).

[5] In making the fitness determination, the prospect of entangling ourselves in a challenge to a decision whose effects may never be "felt in a concrete way by the challenging parties,"*Abbott Labs.,* 387 U.S. at 148-49, is an especially troublesome one. We have explained that "premature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort."*W.R. Grace & Co. v. EPA,* 959 F.2d 360, 366 (1st Cir.1992) (internal quotation marks and citation omitted). As such, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

***4**[6] A pragmatic view of the facts in this case

reveals that it is not ripe for review. Plainly stated, WCE's proposed LNG project may well never go forward because FERC's approval of the project is expressly conditioned on approval by the USCG and the DOI. Neither agency has yet given its final recommendation, and each has expressed serious reservations about the project. The USCG has remarked that "it appears that the waterway may not be suitable for the type and frequency of LNG marine traffic contained in [the WCE] smaller tanker proposal," and that "the entire proposed transit route ... presents a unique challenge to water-borne security."Likewise, the DOI has warned that if Taunton River is designated as a National Wild and Scenic River (a designation that has strong local support), it is unlikely that "[the DOI] will ... be able to provide the statutorily required affirmative statement of no adverse impact," due to the "unavoidable adverse site impacts." Because "[c]ourts have no business adjudicating the legality of non-events,"*Nat'l Wildlife Fed'n v. Goldschmidt,* 677 F.2d 259, 263 (2d Cir.1982), we decline to decide whether FERC's actions thus far were proper.

[7][8] The balance of hardship to the parties in this case does not persuade us otherwise. Appellants retain every opportunity to challenge FERC's decision in the event the USCG and DOI approve the project. Such a challenge would not be barred by the statute of limitations. "A time limitation on petitions for review ... can run only against challenges ripe for review."*Baltimore Gas & Elec. Co. v. Interstate Commerce Comm'n,* 672 F.2d 146, 149 (D.C.Cir.1982); *see also* *Whittle v. Local 641, Int'l Bhd. of Teamsters,* 56 F.3d 487, 489 (3d Cir.1995) (holding that a cause of action accrues "when it is sufficiently ripe that one can maintain suit on it"). While the statute of limitations may pose a bar to claimants who delay filing their complaints based "on their own assessment of when an issue is ripe for review,"*see, e.g.,* *Eagle-Pitcher Indus. Inc. v. EPA,* 759 F.2d 905 (D.C.Cir.1985) (articulating the limited "circumstances under which the court will engage in 'retrospective ripeness analysis' after the statutory review period has expired"), the appellants here will not suffer that consequence. Because we hold that Appellants' challenge to FERC's approval of the WCE project will not be ripe for review until the USCG and the DOI have given their respective approvals for the project, the statute of limitations period will not begin to run against Appellants until WCE obtains those approvals. *Cf.* *Baltimore Gas & Elec. Co. v. Interstate Commerce Comm'n,* 672 F.2d at 149-50 (dismissing the petition on ripeness grounds, but reassuring the petitioner that the statute of limitations would not begin to run until its claims ripened).

Concerns about hardship to the parties are further lessened by the fact that FERC's decision will have no immediate impact on Appellants. Because WCE may not proceed with the NLG project until it obtains approval from the USCG and the DOI, no one will experience the effects of FERC's decision unless and until the agencies authorize the project. *See* *New Hanover Twp. v. United States Army Corps of Eng'rs,* 992 F.2d 470, 473 (3d Cir.1993) (concluding that the challenge to defendant's issuance of a general permit to landfill corporation was not ripe for review because corporation needed further approval from state agency before proceeding with landfill project).

***5** Given that decisive questions remain open, we think it wiser to allow the agencies to continue their decision-making process at least until final authorization is granted by all three agencies. *See* *Midwestern Gas Transmission Co.,* 589 F.2d at 620 ("Exhaustion of this administrative process will refine and focus the factual basis upon which both the public interest determination and the overall authorization rest, and will avoid a multiplicity of suits challenging conditional, tentative [agency] decisions."). Until then, our review would be advisory, and likely irrelevant to the ultimate approvability of the project. *See* *Nat'l Wildlife Fed'n,* 677 F.2d at 263 (declining to review adequacy of Final EISs prepared for proposed highway sections that might never be built, noting that "[r]eview now might well adjudicate matters which are ultimately immaterial and would by no means put the matter to rest, since actions brought after a decision to build [the highway] has been made can challenge the present [Final EISs] as obsolete."); *see also* *Environmental Defense Fund, Inc. v. Johnson,* 629 F.2d 239, 241 (2d Cir.1980) (holding that adjudication of the legality of an agency's recommendation would be premature where project undergoing further study could ultimately be abandoned or substantially altered).

### B. *FERC's Denial of Appellant's Motion to Reopen the Record*

[9][10] When FERC denies a petition to reopen a case record, we review its decision for abuse of discretion. *E. Carolinas Broad. Co. v. FCC,* 762 F.2d

95, 103 (D.C.Cir.1985) ("[We] normally reverse an agency's decision not to reopen the record only for abuse of discretion."). We generally uphold a federal agency's decision not to reopen a record or hearing based on changed circumstances or newly available information unless it "clearly appear[s] that the new evidence would compel or persuade ... a contrary result."*Id.* (quoting *Friends of the River v. FERC,* 720 F.2d 95, 98 n. 6 (D.C.Cir.1983)).

[11] We find that FERC did not abuse its discretion in denying to reopen the record due to the changes in the applicable dredging regulations and the status of the old Brightman Street Bridge. While the changes in dredging regulations are likely to delay project completion, FERC has denied that the anticipated project completion date of 2010 was a controlling factor in its conditional project approval. Thus, it is not clear that the change in the dredging regulations would compel FERC to adopt a "contrary result." *Id.* Likewise, we cannot conclude that the change in the status of the old Brightman Street Bridge would necessarily compel FERC to revoke the conditional project approval. Congress's prohibition of the demolition of the bridge will surely impact WCE's transit plan, but until the USCG determines the acceptable contours of that plan, FERC is not in a position to make an informed evaluation.

### III. *Conclusion*

In sum, we will not review the merits of FERC's conditional project approval because we find it is not ripe for review at this time. We also find no abuse of discretion in FERC's decision to deny a reopening of the record. However, our decision does not preclude Appellants from again petitioning FERC to reopen the record-or subsequently seeking redress with this Court-when the future of WCE's proposed LNG project is more certain.

***6*Affirmed.***

FN* Of the District of Puerto Rico, sitting by designation.

FN1. An EIS addresses not only environmental issues, but also safety, security and design issues, as well as maritime safety and security operations.

FN2. Shortly after conditional approval, on January 23, 2006, FERC denied a petition by CLF to rehear the case.

FN3.LNG facilities have existed in New England for over thirty years. The demand for the project is fueled by New England's increasing consumption of natural gas. When consumption peaks in the winter months, daily demand can exceed supply by over 1 billion cubic feet of gas.*Weaver'sCove Energy, LLC,* 112 F.E.R.C. 61,070, 61,528 (2005).

FN4. The alternatives considered included: no action or postponed action; onshore or offshore system and terminal site alternatives; terminal layout alternatives; and dredge disposal alternatives. The alternatives each failed for at least one of the following reasons: it did not meet the purpose of the proposed project; it could not be developed by 2010, when the project was expected to be operational; it involved greater environmental impacts; or the property was not available for development.*Weaver'sCove,* 112 F.E.R.C. at 61,544.

FN5. This includes federal and state safety standards, including the USCG's security plans for LNG vessels. *Weaver'sCove,* 112 F.E.R .C. at 61,540.

FN6."Pursuant to [USCG] regulations, an owner or operator that intends to construct an LNG facility must submit a Letter of Intent to the Coast Guard describing ... the vessels ... and the frequency of the visits."*Weaver'sCove Energy, LLC,* 115 F.E.R.C. 61,058, 61,179 (2006) (citing 33 C.F.R. § 127.007 (2005)). The USCG makes a determination on the suitability of the waterway for LNG vessels in a Letter of Recommendation. *Id.*"Factors considered by the [USCG] ... include, as pertinent: density and characteristics of marine traffic in the waterway; locks, bridges and other man-made obstructions in the waterway; and water depth and tides."*Id.* (citing 33 C.F.R. § 127.009 (2005)).

FN7. According to FERC's conditional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

permit, approval was granted conditional to the DOI's evaluation that "the project would not have a substantial adverse effect on the Taunton River's potential designation as a Wild and Scenic River ("WSR") and that the project would be consistent with the Wild and Scenic River Act if the Taunton River were designated a WSR." *Weaver'sCove,* 112 F.E.R.C. at 61,550.

FN8. Although the USCG has not provided FERC with a Letter of Recommendation regarding the transit of the LNG vessels, the USCG's preliminary letter stated, as previously noted, that the maneuvers required to get through the Brightman Street Bridges were extremely difficult and that the waterway configuration "appears unsuitable" for WCE's vessel transit proposal. It also noted that the "entire proposed transit route ... represents a unique challenge to water-borne security."

C.A.1,2007.
City of Fall River, MA v. F.E.R.C.
--- F.3d ----, 2007 WL 3121568 (C.A.1)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.