IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*,<br><br>*Defendants*. | Case No. 07-246-S |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO STAY**

Pursuant to Rule 7 of the Federal Rules of Civil Procedure, and Rule Cv 7(b) of the Local Rules, Plaintiff Weaver's Cove Energy, LLC ("Weaver's Cove"), by and through its attorneys, Bruce Kiely, Baker Botts L.L.P., and Gregory Benik, Benik & Associates P.C., hereby submits its memorandum of law in support of its objection to Defendants' ("CRMC's") motion to stay ("Motion") and the CRMC's memorandum in support thereof ("CRMC Mem.") (Doc. #19).

The CRMC's Motion is premised upon the recent Letter of Recommendation ("LOR")[1] issued by Captain Nash, then-Captain of the Port, Southeastern New England, U.S. Coast Guard ("USCG"). The CRMC's argument, however, proceeds upon a fundamental misapprehension of the nature and scope of that LOR. Far from rendering the proposed LNG terminal "dead," CRMC Mem. at 2, the LOR is merely the preliminary decision of a single USCG official, subject to extensive administrative and judicial review. As Capt. Nash's transmittal letter (Motion Exh. C) ("LOR Letter") expressly notes, the LOR does not preclude the filing of a new proposal by Weaver's Cove, nor does it affect the viability of orders of the Federal Energy Regulatory Commission ("FERC") approving the LNG terminal. Finally, the CRMC's characterization of a recent decision by the U.S. Court of the Appeals for the First Circuit is substantially incorrect; rather than counseling a stay in this case, it affirmatively calls for resolution of this and other cases.

## I. The CRMC Misapprehends The Nature And Scope Of The LOR

### A. The LOR Does Not Prevent LNG Vessel Traffic Altogether; It Merely Responds To A Particular Proposal

The CRMC's argument that this LOR is "practically insurmountable," (CRMC Mem. at 2), and that it renders the project "dead" (*id.*), "kill[ed]" (*id.*), or

[1] Page references to the LOR are, in fact, to the pages of the LOR's "Enclosure 2" — *i.e.*,. the "Factual Determinations, Analysis, and Detailed Recommendations." "Enclosure 1" merely recounts the administrative record.

on "life support" (*id.* at 4), dramatically overstates the LOR's actual nature and scope.

The process leading up to an LOR begins with the submission of a "Letter of Intent" ("LOI") — *i.e.*, a proposal for LNG vessel traffic in navigable waters — to the relevant Captain of the Port ("COTP"). But the LOI is not a generic proposal for vessel transit in the abstract; rather, it is a proposal specifically identifying the vessels, facilities, and routes to be utilized. 33 C.F.R. § 127.007. Thus, when the COTP issues an LOR, he does not merely approve or disapprove LNG tanker traffic altogether; rather, he evaluates the *specific details* of the particular LOI before him. *Id.* § 127.009. The LOR simply does not speak to alternative LOIs encompassing different facilities, vessels, or transit paths.

The LOR issued by Captain Nash expressly respects such limitations on its scope. Rather than foreclosing (as the CRMC would suggest) "any and all LNG vessel traffic to the Weaver's Cove terminal," the LOR expressly limited its conclusions to the specifics of the LOI's proposal. *See, e.g.*, LOR Letter at 1 ("the waterway . . . is unsuitable . . . for the *type, size, and frequency* of LNG marine traffic associated with *your proposal*") (emphasis added) (quoted in CRMC Mem. at 1); LOR at 30 ("segments 2 and 3 of the proposed route are unsuitable for the transit of *the proposed LNG tankers*") (emphasis added), *quoted in* CRMC Mem.

at 2.[2] In the LOR, Capt. Nash never concluded that LNG vessel traffic is *per se* barred in the relevant waters — nor could he, given that no such request or factual information was in the record before him.[3]

Thus, given the limited nature and scope of his LOR, it was unsurprising that Capt. Nash prefaced his analysis with an express statement noting that Weaver's Cove may submit a revised LOI to the new COTP, who would review the specifics of such an alternative plan just as Capt. Nash evaluated the LOI before him. *See* LOI Letter at 2 (citing 33 C.F.R. § 127.007). As Capt. Nash himself made clear, his LOR does not prejudice Weaver's Cove from submitting a revised LOI. *Id.*

Indeed, despite suggestions to the contrary elsewhere in its motion, the CRMC recognizes that Weaver's Cove can submit more than one LOI for Coast Guard approval. Indeed, one of the CRMC's affirmative defenses expressly

---

[2] *See also* LOR at 30 ("Segment Two is unsuitable for the transit of LNG tankers *as proposed*" (emphasis modified)); *id.* at 29 ("the waterway . . . is unsuitable for the transit of *the proposed LNG tankers*") (emphasis modified)).

[3] Even when Capt. Nash volunteered a conclusion beyond of the scope of his LOR analysis (*i.e.*, outside of Part 127 of the pertinent regulations), and stated that even if the USCG or a court were to overrule the LOR (and if he had remained the COTP) he still would use his "discretionary authorities" to prohibit "recurrent transit of LNG tankers," LOR at 30, he limited his analysis on that point to "*the facts before me*"— *i.e.*, to the specific types of vessels proposed in the LOI, *id.* (emphasis added). He did not state that his analysis foreclosed LNG vessel traffic of all types under all circumstances beyond the record before him in that Part 127 proceeding.

relies on the fact that Weaver's Cove submitted an LOI, and then amended that LOI. *See* Ans. to Amended Compl. ¶¶ 98-113. While Weaver's Cove disagrees with the CRMC on the question of whether the amended LOI affects the CRMC's responsibilities under the Coastal Zone Management Act ("CZMA") to assess a dredging proposal, it does agree with the CRMC's acknowledgment that the filing of an LOI does not render subsequent LOIs a nullity with respect to Coast Guard review and approval.

**B. The LOR Is Not Final Agency Action**

The CRMC concedes (*see* CRMC Mem. at 3) that Capt. Nash's LOR does not even mark the conclusion of the USCG's evaluation of the *current* LOI; rather, Weaver's Cove can request reconsideration by Captain Nash's successor COTP. LOR Letter at 2 (citing 33 C.F.R. § 127.015(a)).

But even that reconsideration does not constitute the USCG's final action. Instead, the USCG's rules afford applicants additional remedies. If the request were to lead to a negative response, Weaver's Cove has the right to seek rehearing via an appeal to the USCG's District Commander. *Id.* § 127.015(b), (c). If there is a negative determination at the district level, the rules entitle the applicant to file an appeal to the Assistant Commandant for Marine Safety, Security, and Environmental Protection. *Id.* § 127.015(c)(1)-(2). Only a decision at the Assistant Commandant level is deemed to be final agency action. *Id.*

§ 127.015(d). And that action is itself subject to judicial review. *See* 5 U.S.C. § 704. In short, Capt. Nash's LOR is but the first step in a process for USCG evaluation of the proposal contained in the LOI.

Thus, the CRMC's effort to characterize the LOR as final or "insurmountable" must fail as (1) it is contrary to the LOR itself, (2) it ignores the fact that, on appeal, the USCG can approve the current LOI, and (3) the LOR does not foreclose Weaver's Cove from submitting a new LOI.

### C. The LOR Does Not Affect The FERC's Approval Of The Terminal And Pipelines

Just as the LOR's precise nature and narrow scope prevent it from affecting subsequent LOIs submitted by Weaver's Cove (should any be necessary following the aforementioned administrative and judicial reviews of the LOR), the LOR has no effect on the FERC's approval of the Weaver's Cove terminal or the related pipelines. Again, Capt. Nash himself prefaced his LOR with the observation that his analysis does not affect the validity of the FERC's approval order, which remains in effect until at least July 2010. LOR Letter at 2.[4]

---

[4] Capt. Nash's suggestion that the FERC's Initial Order will "expir[e] in July 2010" is a misstatement. The FERC's order included the condition that "[c]onstruction of the facilities authorized herein shall be completed within five years . . . ." *Weaver's Cove LNG, LLC*, 112 FERC ¶ 61,070, at 61,546 (2005). But such deadlines are regularly extended upon motion. *See, e.g.*, *Calypso U.S. Pipeline, LLC*, 118 FERC ¶ 61,051, at 61,277 (2007).

Indeed, the FERC orders approving the LNG terminal, which were recently affirmed by the First Circuit, *Fall River v.FERC*, 2007 WL 3121568 (1st Cir. Oct. 26, 2007) (Motion Exh. E),[5] stated that the USCG's approval of an LOI different from the one proposed at the time of the FERC approval would not even necessarily require the FERC to reopen its own proceedings. Instead, USCG approval of a navigation plan different from the one considered by the FERC would merely give the FERC cause to consider whether the approved LOI so differs from the proposal before the FERC as to necessitate a reopening of FERC proceedings. *Weaver's Cove Energy, LLC*, 116 FERC ¶ 61,041 at ¶ 8 (2006). In other words, the FERC's approval does not necessarily turn on a particular LOI/LOR. Even if the USCG ultimately approves an LOI different from Weaver's Cove's first LOI in one or more respects, the FERC will not necessarily treat the project it already approved as having changed.

### D. In Sum, The LOR Changes Nothing About The Case Before This Court

As discussed above, the nature and scope of Capt. Nash's LOR is limited: it does not foreclose USCG approval of LNG vessel traffic to the proposed Weaver's Cove terminal; it is not final agency action; and it does not

---

[5] As described in further detail below, *infra* Part III, the CRMC's description of the First Circuit's decision completely omits the second part of the court's opinion, which rejected the challenge of Rhode Island and others to the FERC's refusal to reopen its proceedings following Weaver's Cove's submission of an amended LOI to the USCG. *See* CRMC Mem. at 4-5 n.1.

affect validity of the FERC orders regarding the Weaver's Cove terminal and the related pipelines. There is no logical or evidentiary basis for the CRMC's claim that the LOR affects the justiciability of the case now before this Court. Prior to the LOR, Weaver's Cove

(1) had the FERC's conditional approval;

(2) needed to comply with the CZMA in order to give full effect to that FERC approval and to secure the necessary dredging authorizations from the U.S. Army Corps of Engineers; and

(3) was in the ongoing process of securing USCG approval of LNG vessel traffic to and from the LNG terminal.

In the aftermath of Capt. Nash's LOR, Weaver's Cove

(1) has the FERC's conditional approval;

(2) needs to comply with the CZMA in order to give full effect to that FERC approval and to secure the necessary dredging authorizations from the U.S. Army Corps of Engineers; and

(3) is in the ongoing process of securing USCG approval of LNG vessel traffic to and from the LNG terminal.

In short, the LOR has in no way changed the circumstances material to the justiciability of the issues before this Court.[6] The issue before this Court — the

---

[6] At least two permitting agency apparently agree. In the face of possible derailment of the orderly processing of Weaver's Cove's applications pending before it, the Massachusetts Department of Environmental Protection took the position that "the processing of cases has not changed due to the recent announcement from the U.S. Coast Guard," such that those proceedings should "proceed on the current schedule." *See* Mass DEP Response, *In re Weaver's Cove Energy, LLC et al.*, Mass. Div. of Admin. Law. Apps., Docket Nos. DEP-07-382 *et al.* (Oct. 30, 2007) (attached). Similarly, the Rhode Island Department of

CRMC's failure to comply with the requirement that it act within six months of the filing of a CZMA consistency certification — remains unchanged. Thus, Weaver's Cove respectfully opposes the CRMC's motion to stay these proceedings, which is premised solely on the basis of non-final agency action that by the USCG's own express statements does not foreclose subsequent USCG approval and, ultimately, successful operation of the LNG terminal.[7]

## II. The CRMC's Comparison Of This Case To *KeySpan* Is Inapt

The CRMC attempts to bolster its argument by reference to a completely different case, *KeySpan LNG, L.P. v. R.I. CRMC*, No 05-091-S, previously before this Court. But its attempt to compare that case with the present matter is altogether inapt.

Although the CRMC acknowledges that this Court is "amply acquainted" with *KeySpan*, its description of the facts giving rise to a stay in that

---

Environmental Management's proceedings before the Administrative Adjudication Division (Docket No. 07-002/WRA) are proceeding apace. The parties' most recent hearing was conducted on November 7, 2007, and a schedule was set for further proceedings.

[7] In support of its position, the CRMC quotes a newspaper article that quotes a USCG official as stating that the LOR "kills the project." CRMC Mem. at 2 (quoting Exh. B). As that article provides no context for the USCG official's comment, it is impossible to discern whether the official's "project" referred to the LNG project generally, or to the LOI specifically. In any event, as the foregoing discussion of the LOR (and the express terms of the LOR itself) makes clear, it would be a misstatement of law to suggest that the LOR somehow ends the USCG's LOI/LOR process or nullifies the FERC's approval of the terminal and pipelines.

case is markedly at odds with the facts set forth in that docket. According to the CRMC, "this Court agreed to halt that litigation," and that "[t]he present Weaver's Cove litigation *is no different*." CRMC Mem. at 4 (emphasis added). But the differences between the two cases are unmistakable. First and foremost, the stay in that case occurred only by the voluntary agreement of *both parties*. *See* Stipulation, *KeySpan v. R.I. CRMC*, No. 05-091-S (Oct. 7, 2005). Here, by contrast, only one party is calling for a stay. Weaver's Cove has not stipulated to a stay; therefore the predicate for any comparison to or lessons to be learned from *KeySpan* does not exist. *KeySpan* simply is inapplicable to this case.

But even more importantly, *KeySpan* differs from this case in the event giving rise to the joint stipulation to stay the case: Whereas this case involves merely Capt. Nash's LOR denying Weaver's Cove's LOI, the *KeySpan* case was disrupted by the FERC's failure to find that KeySpan would be in the public interest and *outright rejection* of KeySpan's proposed LNG project.

That difference is marked and material. As described above, Capt. Nash's LOR does not affect the proceedings before the FERC or, for that matter, those before the Army Corps of Engineers; those two proceedings are what give rise to Weaver's Cove's need to comply with the CZMA. *See* Am. Compl. ¶¶ 41-42 (Doc. 8). (And, as noted above, the recent LOR does not by itself

foreclose subsequent USCG approval of this or another LOI.) Thus, the LOR does not affect Weaver's Cove's practical need to resolve the CZMA issue.

By contrast, the FERC's outright rejection of the KeySpan LNG project wholly eliminated KeySpan's need to secure CRMC approval of activities related to the operation of the terminal. Nothing in the LOR eliminates the need for Weaver's Cove to comply with the CZMA.

## III. The First Circuit's Decision Weighs *Against* The CRMC's Position, Not In Favor Of It

In a footnote, the CRMC notifies the Court of the First Circuit's recent decision to affirm the FERC's orders approving the Weaver's Cove facilities. *Fall River v. FERC*, Nos. 06-1203 *et al.* (1st Cir. Oct. 26, 2007) (Motion Exh. E.).[8] But as noted above, *supra* note 5, the CRMC's description of that case is markedly incomplete.

**A.** In the First Circuit case, Rhode Island and others challenged the legal and factual sufficiency of the FERC's orders approving the Weaver's Cove project, as well as the legal sufficiency of the FERC's orders refusing to reopen the record in light of Weaver's Cove's submission of an amended LOI to the USCG. *See Fall River* at 4-5. The Court dismissed the petitioners' challenges to the FERC's orders conditionally approving the terminal and pipelines, on ripeness

---

[8] For the Court's ease of reference, this Memorandum will cite to *Fall River* as paginated in the CRMC's Exhibit E. For example, under that pagination, the text of the opinion begins on page 3 and ends on page 8.

grounds: Because the FERC's approval orders were conditioned on Weaver's Cove's satisfaction of a number of related requirements, such as securing the requisite approvals from the USCG, the U.S. Department of the Interior, and the final FERC approvals, the Court concluded that challenges to those conditional orders were not ripe and would not be ripe until Weaver's Cove secured those approvals. *Id.* at 5-6. Then, in the second half of the opinion (which is not referenced in the CRMC's footnote account), the First Circuit affirmatively rejected — *on the merits* — Rhode Island's and others' challenges to the legal sufficiency of the FERC's refusal to reopen the record as to the LOI. *Id.* at 6-7.

**B.** According to the CRMC, *Fall River* stands for a simple proposition: that case was not ripe for review because "the Weaver's Cove project is still in its conceptual stage, such that the project will not have a concrete form unless and until both [*sic*] the Coast Guard, among other agencies, makes a final decision . . . ." CRMC Mem. at 5 n.1.[9]

But the CRMC's claim that *Fall River* somehow justifies the immediate cessation of related litigation turns that opinion on its head. First, and most obviously, *Fall River* did not endorse a full stop on litigation, because even in *that* case the court *decided litigated issues on the merits*. Specifically, the existence of conditions in the FERC's approval orders did not stop the First Circuit

[9] The First Circuit raised the ripeness issue *sua sponte*. *Id.* at 5.

from resolving the subsequent Weaver's Cove orders; the difference is that whereas the issues involved in the ripe-for-review orders were not themselves built on not-yet-fulfilled conditions, the unripe-for-review orders specifically *contained* unfulfilled conditions. The case before this Court, regarding the CZMA and Rhode Island's Category B Assent requirements, is in that respect like the ripe-for-review orders, and unlike the unripe ones: Neither relates to judicial review of orders expressly premised on conditions not yet met. Rather, both call for judicial review of concrete issues of law and fact arising under the CZMA and Category B Assent, and the CRMC has not issued CZMA or Category B Assent decisions that are conditioned upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 5 (quotation marks omitted).

The CRMC also has failed to show that a change to the proposed traffic would necessarily entail a change to the proposed dredging that is the only matter pending before the CRMC. Indeed, the CRMC repeatedly admits through allegations that Weaver's Cove has *not* changed its dredging proposal, even when Weaver's Cove amended its LOI. *See* Pl. Mem. in Supp. of Mot. for Summ. Judg. at 21-22 (Doc. #16).

Thus, Weaver's Cove's claims under the CZMA and Category B Assent are not based on contingent events, and as such are ripe for review.

**C.** The CRMC cannot credibly claim that a stay of this case would be consistent with the First Circuit's reasoning. Quite the contrary: to grant the CRMC's motion to stay this proceeding would affirmatively *thwart* the First Circuit's decision.

That decision involved the First Circuit's withholding judgment on the FERC orders approving Weaver's Cove until, *inter alia*, Weaver's Cove secures final FERC approval of the project via satisfaction of the various conditions. But such final approval *will never and can never occur* without resolution of the CZMA issues raised in *this* case, because the FERC's Initial Order was conditioned on Weaver's Cove *satisfying the CZMA*. *See* Am. Compl. ¶ 41. The CRMC's request that this Court stay indefinitely these proceedings would be to set judicial review of the FERC orders yet *further* into the future. By the CRMC's own description, the USCG's proceedings could encompass "multi-step appellate review procedures." CRMC Mem. at 3. Thus, the CRMC's prescribed course of action — *i.e.*, to defer this Court's proceedings until after the USCG's — would not only delay *this* case, but it would also delay the ultimate resolution of the *First Circuit* case. The First Circuit's decision did not call for such a dramatic delay, and the CRMC's request that this Court should compound the First Circuit's pause with a yet longer one should be rejected.

Furthermore, because the CRMC's requested stay in this case would delay resolution of the First Circuit case, a stay would create a hardship not merely to Weaver's Cove in this case, but to all parties in the First Circuit and FERC proceedings, including the FERC itself. Given that the burden placed on this Court's resources by resolution of a case already in the midst of summary judgment motions is small, and the burden of delay to Weaver's Cove and to third parties is substantial, a stay is inappropriate.

## IV. The CZMA Itself Counsels Against Delay

As Weaver's Cove has noted in its Amended Complaint and in its Memorandum in Support of Its Motion for Summary Judgment, the CZMA sets forth short deadlines for resolution of disputes. Specifically, the state is given only six months after filing of a consistency certification to act lest the state's concurrence with that consistency certification be conclusively presumed. 16 U.S.C. § 1456(c)(3)(A). Given that Congress in the CZMA created a short timeframe for administrative decision-making, and that the CZMA is often implicated in complex multi-permit infrastructure projects such as the Weaver's Cove project, it would be counterproductive — if not directly contrary to the Congress's intent — to read that statute as endorsing dramatic delays in judicial oversight of state agency action under that statute.

* * *

In conclusion, because the LOR has not affected the factual or legal issues before this Court or the positions of the parties, a change in the procedural posture of this case is unwarranted. And given that a stay premised on the LOR would fundamentally undermine the First Circuit's recent decision and the CZMA itself, a stay would be wholly imprudent. Weaver's Cove respectfully requests that the CRMC's Motion be denied.

Respectfully submitted,

/s/ Gregory L. Benik
Gregory L. Benik (#1515)
Benik & Associates P.C.
931 Jefferson Blvd., Suite 2008
Warwick, R.I. 02886
(phone) 401-454-0054
(fax) 401-732-5054
gbenik@jreri.com
*Attorney for Weaver's Cove Energy, LLC*

Dated: November 8, 2007

Of Counsel:

Bruce F. Kiely
G. Mark Cook
Adam J. White
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(phone) 202-639-7700
(fax) 202-585-1035

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of November, 2007, the foregoing was filed electronically with the Clerk of Court and served upon the following by operation of the Court's electronic filing system:

Brian A. Goldman, Goldlaw@cox.net
Michael Rubin, mrubin@riag.ri.gov
Paul J. Roberti, proberti@riag.ri.gov