U.S. Department of Homeland Security
United States Coast Guard

Commanding Officer
U.S. Coast Guard
Sector Southeastern New England

1 Little Harbor Road
Woods Hole, MA 02543
Phone: 508-457-3219
Fax: 508-457-3236
Email: Edward.G.LeBlanc@uscg.mil

16000
December 7, 2007

BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Mr. Bruce F. Kiely
Baker Botts L.L.P.
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400

Mr. Gordon Shearer
President and Chief Executive Officer
Weaver's Cove Energy, LLC
1185 Avenue of the Americas
New York, NY 10036

Dear Mr. Kiely and Mr. Shearer:

I have reviewed your letter of November 20, 2007, requesting reconsideration of my Letter of Recommendation (LOR) of October 24, 2007. As requested, I reconsidered my determinations, analysis, and ultimate recommendation that the waterway from near Sandy Point, Prudence Island, Rhode Island to the proposed facility in Fall River, Massachusetts, is unsuitable from a navigation safety perspective for the type, size, and frequency of LNG marine traffic associated with your proposal of May 12, 2004, as amended by your change of information letter dated February 2, 2006. After a thorough review of your request, including its exhibits and other documents referenced therein, I find no substantive issue, nor new information, that would suggest my recommendation of unsuitability was incorrect or made without due consideration of the record. Consequently, I stand by my October 24, 2007 recommendation.

Several recurring themes and inaccurate factual assertions raised in your request for reconsideration merit specific response:

1. **The LOR Process:** Your letter suggests that Weaver's Cove has not been afforded due process, and specifically that I "in spirit and substance…did not adhere to the process set forth in NVIC 05-05."[1] As a preliminary matter, I note that the *guidance* provided by NVIC 05-05, by its own language, was not applicable to your application to the extent that NVIC 05-05 was published on June 14, 2005, more than a year *after* Weaver's Cove submitted its original Letter of Intent, and more than a month after FERC issued its Final Environmental Impact Statement (FEIS). FERC's approval order was issued just one month later. In any event, I have reviewed the steps that I and my predecessors undertook in gathering and

[1] Weaver's Cove Request for Reconsideration ("Reconsideration Request") dated November 20, 2007, page 10.

16000
December 7, 2007

analyzing the information I am required to assess in making my waterway suitability recommendation under 33 CFR § 127.009, and I am convinced that the process used to evaluate the information in the record and arrive at a decision was full, fair, transparent and in accordance with law, regulation, and policy.

2. **The Administrative Record:**

   a. Your request for reconsideration contends that I "ignored or missed four (4) key evidentiary documents before [me] at the time of decision..."[2] I will address each assertion in order.

      i. The October 9, 2007, letter from Weaver's Cove to the COTP regarding issues raised at a meeting of September 4, 2007. Admittedly, this letter is not listed as part of the Administrative Record in Enclosure (1) to my Letter of Recommendation. This submission was received just as my analysis was finalized. I have, however, since reviewed the letter, along with the accompanying documentation, in its entirety. I find nothing therein that prompts me to alter my ultimate recommendation of unsuitability.

      ii. The COTP letter of May 23, 2007. As I was the author of this letter, I implicitly considered its contents in developing my Letter of Recommendation. As the letter itself does not contain any substantive matter on which my Letter of Recommendation was based, it was not specifically listed in Enclosure (1) to the LOR. My letter (of May 23, 2007) speaks to, among other things, a NEPA review. The Record of Decision, issued concurrently with my Letter of Recommendation on October 24, 2007 (available on FERC's public docket), states:

> As I view the safety of navigation as paramount, my recommendation that the waterway is unsuitable generated no additional environmental documentation requirements. I, therefore, (pursuant to 40 CFR § 1506.3) adopt those portions of the FERC EIS that address the environmental impacts associated with the proposed use of the waterway and those portions addressing any environmental impacts of the no action alternative. This letter represents the Coast Guard's record of decision on the adopted portions of the FERC EIS.

Accordingly, the record indicates I considered and addressed the procedural substance of my May 23, 2007 letter.

[2] Reconsideration Request at 7.

iii. The third and fourth sets of documents your letter suggests were not considered by me are the "input, letter, or other submission" provided by the Coast Guard to FERC preceding issuance of FERC's DEIS and FEIS, respectively. Unlike in other post-NVIC 05-05 FERC-led LNG terminal siting projects mentioned in your letter, the Coast Guard neither produced nor submitted a waterway suitability report, as such, to FERC. The Coast Guard did, however, provide the functional equivalent through the course of the Port and Waterways Safety Assessment (PAWSA) workshop, held on September 7 and 8, 2004; and through several other workshops focused exclusively on maritime security. The results of these workshops were communicated to FERC during the course of the Coast Guard's dialogue with that agency during its environmental review process.[3] This input was adopted by FERC and is reflected in DEIS and FEIS documents themselves.

As my Letter of Recommendation indicated, because my ultimate recommendation was based on my analysis of *navigation safety* issues, other relevant factors, such as maritime security, were not further analyzed. With respect to the PAWSA workshop, its results were indeed considered by me.[4] Reliance on its findings, however, was tempered by, among other things, the fact that the 2004 PAWSA assumed (1) that the old Brightman Street Bridge would be removed before LNG tanker transits would take place, and (2) that LNG tanker deliveries to Fall River would occur at a rate of about one per week.

b. Your request for reconsideration also contends that I "relied on at least seven (7) documents of which [I] had not provided Weaver's Cove prior notice of [my] intent to rely on them and the opportunity to rebut or refute."[5] Again, I will address each assertion in order.

---

[3] With respect to these documents, you claim that Coast Guard has "refused" to respond to requests under the Freedom of Information Act (FOIA) for their production. In fact, the Coast Guard has not refused to provide documents. Rather, we are working diligently to respond to the FOIA requests submitted on behalf of Weavers Cove. As the FOIA requests at issue are very broad in nature, however, it is taking considerable resources to locate, examine, and copy the material that is responsive to your request. We will continue to process your requests in accordance with applicable law and procedures.

[4] In a related argument, your reconsideration request claims that "the previous COTP" made findings favorable to Weaver's Cove that have now been arbitrarily overturned. This misrepresents the record. The previous COTP neither made findings, nor issued a Letter of Recommendation. At the time – a time before federal law effectively barred removal of the old Brightman Street Bridge – the previous COTP cooperated with FERC in developing a DEIS and FEIS, under the hypothesis of what could be possible if it were (later) determined (through the LOR process) that the waterway was suitable for LNG transits, which is one of about 75 conditions attached to FERC's approval.

[5] Reconsideration Request at 5.

16000
December 7, 2007

i. The Rothblum paper, "Human Error and Marine Safety," a product of the Coast Guard Research and Development Center, was relied on for the general proposition that human error can contribute to marine accidents. Weaver's Cove does not dispute that proposition.[6]

ii. The First District memo regarding the old Brightman Street Bridge, listed in Enclosure (1) to my Letter of Recommendation, was incorrectly transcribed from "4/3/06" as March 4, 2006. It should read "April 3, 2006."[7] This April 3, 2006, memo was provided to you via a previous FOIA request.

iii. The Corps of Engineers correspondence you reference (including both the dredging information and Docket CP04-46) is included in FERC's docket for the Weaver's Cove proposal. Thus, Weaver's Cove has had ample opportunity to review and comment on its contents.

iv. The recently completed Coast Guard Waterways Analysis and Management System (WAMS) review was relied on primarily for the proposition that the aids-to-navigation system in the waterway at issue is adequate for current users. Nowhere has Weaver's Cover refuted that assertion. Moreover, the general public, including Weaver's Cove in particular, was invited to provide input during the WAMS review. No input was received from Weaver's Cove.

v. The vessel critical profiles for vessels delivering coal to NRG power were obtained from a Coast Guard database (Marine Information for Safety and Law Enforcement, or MISLE) to assess Weaver's Cove's claim, in its letter of July 18, 2007, that its proposed LNG vessels were essentially similar to coal ships already transiting the area. Should Weaver's Cove wish to refute the accuracy of the vessel characteristic information maintained by the Coast Guard, it is free to do so.

c. Additionally, your request for reconsideration suggests that various politicians made "numerous undocumented assertions and held several undisclosed meetings" with me and members of my staff, and that I did not give Weaver's Cove "notice of those comments or meetings," or "afford Weaver's Cove an opportunity to rebut comments

---

[6] Your request for reconsideration asserts that in the absence of information on LNG tanker accident statistics, "any statements about human error have no relevance or validity in [my] analysis." I disagree. Your letter misconstrues, and misrepresents, my intent in mentioning the myriad places where any human error could affect the safe navigation of a tanker and tug combination undertaking the unique evolution that would be required to negotiate the old and new Brightman Street bridges. I did not intend to employ a quantitative, statistical risk analysis of this evolution. Again, as you concede, it is undisputable that human error can contribute to marine accidents. The point is that the navigation evolution you propose leaves little to no room for such error -- something the simulation modeling data and reports affirmed. Thus, I highlighted a number of places where that error could manifest to help illustrate why, in my professional opinion, navigating the proposed transit route with the type, size, and frequency of ships you propose cannot be done safely on a *repeatable* basis.

[7] In reviewing Enclosure (1) to the LOR, an additional typographical error was found. In item #40 (Response to Weaver's Cove regarding navigation issues), the date should read "April 3, 2006" vice "April 3, 2007."

made in those meetings."[8] The Coast Guard routinely provides informational briefings to federal, state, and local officials on various Coast Guard operations and responsibilities.

I personally provided three briefings on the Weaver's Cove proposal to various elected officials, at their specific request. Importantly, in all such instances, I limited my interaction to providing factual background and details from the public record, information regarding my duties and responsibilities with respect to assessing the suitability of the waterway for LNG marine traffic, and updates on the procedural posture and anticipated timeline for issuing my Letter of Recommendation. Those officials wishing to comment on the project were asked to do so in writing to ensure that all comments could be reflected in the public docket. If any elected official provided me with unsolicited opinions outside the docket or public meeting process, I did not consider those comments in arriving at my ultimate recommendation. I only considered those written comments contained in the record, including notes from public meetings where verbal comments were received.

3. **Professional Judgment:** In your request for reconsideration, you indicated surprise that I "chose to override the recommendation of the marine pilots" and claim you are "unaware of anywhere else in the LNG industry where a COTP has substituted his judgment for the judgment of professional pilots"[9]. The judgment of marine pilots is indeed valued and was carefully considered in my analysis. Of course, marine pilots are but one of several groups of professional mariners the Coast Guard works with. Ultimately, I am the only financially disinterested party with the statutory authority and responsibility in the LOR process for ensuring the safety of the federal waterway. Weaver's Cove suggestions notwithstanding, I will not abdicate that responsibility to marine pilots, to Weaver's Cove, or any other person or entity—that duty is mine alone. I carefully considered the entire record before exercising my professional judgment and discretion to arrive at my ultimate recommendation.

For the reasons cited above, I affirm my determinations, analysis, and ultimate recommendation that the waterway from near Sandy Point, Prudence Island, Rhode Island to the proposed facility in Fall River, Massachusetts, is unsuitable from a navigation safety perspective for the type, size, and frequency of LNG marine traffic associated with your proposal.

If you feel aggrieved by this action, you may appeal to the Commander, First Coast Guard District, pursuant to 33 C.F.R. §127.015(a). Your appeal must be submitted, in writing, to the Commander, First Coast Guard District, within 30 days of receipt of this letter. Your appeal should be addressed to:

Commander (dp)
First Coast Guard District
408 Atlantic Ave
Boston, MA 02110-3350

---

[8] Reconsideration Request at 3.

[9] Reconsideration Request at 45.

16000
December 7, 2007

If the delay in presenting a written appeal would have an adverse impact on your operations, you may request to make an oral presentation, but your written request must be submitted within five days of your oral presentation.

If you have questions, my point of contact remains Mr. Ed LeBlanc of the Sector Southeastern New England Waterways Management Branch. He may be reached at the address, phone number, and e-mail address listed above.

Sincerely,

Roy A. Nash

ROY A. NASH
Captain, U.S. Coast Guard
Captain of the Port
Southeastern New England

Copy: Commander, First Coast Guard District (d, dp, dl)
Commander, Atlantic Area (Am)
Commandant (CG-3PSO)
Federal Energy Regulatory Commission
U.S. Army Corps of Engineers, New England District
Mass and RI Congressional delegations
Mayor, City of Fall River
Applicable state and local agencies