U.S. Department of Homeland Security
United States Coast Guard

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-5411
Phone: (202) 372-1511
Fax: (202) 372-1914

16592
October 4, 2007

Mr. Ted Gehrig
President
Weaver's Cove Energy, LLC
One New Street
Fall River, MA 02720

Dear Mr. Gehrig.

This is in reply to Baker Botts, LLP letter of August 17, 2007, sent on your behalf, Request for the Initiation of a Detailed Investigation under 33 C.F.R. § 116.20. In order to ensure that the Coast Guard's position concerning the necessity of conducting an investigation under the Truman-Hobbs Act is completely clear, we would like to make the following points:

1. Before issuing permit 8-97-1, dated December 5, 1997, the Coast Guard determined that the old Brightman Street Bridge and the new replacement bridge, in combination, would create a hazard to navigation. To remove this hazard, the Coast Guard included a condition in the permit that required the Massachusetts Highway Department (MHD) to remove the existing bridge to or below the natural bottom within 270 days of completion of the new bridge. Public Law 109-59, dated August 10, 2005, superseded this permit condition by requiring that the old Brightman Street Bridge be retained for pedestrian and bicycle access, and as an emergency service route.

2. The Coast Guard confirmed the permit determination with the May 8, 2007 Navigation Review. This review concludes that retaining the old Brightman Street Bridge not only nullifies the navigation improvements intended with the new bridge, but actually makes navigation more difficult. Maximum intended waterway improvement will only be possible with removal of the old Brightman Street Bridge.

3. The Navigation Review is not and was never intended to be a Truman-Hobbs Preliminary Investigation. This review was for informational purposes only and was conducted using the methodology provided in the Bridge Administration Manual for Truman-Hobbs investigations. The Coast Guard stated the scope and intent of the Navigation Review twice, once at the meeting held at the NRG Somerset Power plant (attended by Weaver's Cove Energy, LLC) on August 16, 2006 and again in the Navigation Review itself. The Coast Guard believes that initiating a Preliminary Investigation pursuant to a Truman-Hobbs alteration would be redundant and a strain on already stretched resources.

The Coast Guard takes the responsibility to keep navigation through or under bridges free, easy, and unobstructed very seriously and has twice determined that the old Brightman Street Bridge and the new replacement bridge, in combination, are a hazard to navigation. Should Public Law 109-59 be rescinded, the Coast Guard would move immediately to enforce the permit condition requiring the Commonwealth of Massachusetts to remove the old Brightman Street Bridge.

Sincerely,

Hala Elgaaly, P.E.
Chief, Bridge Administration Division
U. S. Coast Guard
By direction of the Commandant

Copy: Bruce F. Kiely, Baker Botts, LLP
Jessica Fore, Baker Botts, LLP

FHALL: fwh typed on 9/21/07 FHall/Public/Bridges of Interest/Brightman/Response to Baker Botts Letter

**Bridge Administration Program Meeting**

| |
|---|
| **Meeting/Teleconference Date:** August 28, 2007 |
| **Purpose & Objective of Meeting:** |
| **Project Manager:** Frank W. Hall |
| **Agenda Items:** Brightman Street Bridge, Mile 1.8, across the Taunton River |
| **Facilitator:** |
| **Note Taker:** Frank W. Hall |
| **Action Items:** A letter responding to Weaver's Cove/ Baker Botts request will need to be drafted. The Coast Guard has twice determined the two Brightman Street bridges together constitute a hazard to navigation and that a Truman-Hobbs investigation would be redundant. |

**Comments:** On December 5, 1997, the Coast Guard issued a bridge permit for a new bridge to replace the existing Brightman Street Drawbridge, Mile 1.8, Taunton River. Massachusetts Highway Department (MHD) was the applicant and the project was partially funded by the Federal Highway Administration. A condition of the permit required the existing Brightman Street Drawbridge to be removed following completion of the new bridge. On August 10, 2005 an Act of Congress (SAFETEA-LU, Section 1948) changed the project by prohibiting the expenditure of federal funds for the demolition of the existing Brightman Street Drawbridge and required MHD to continue to use the bridge as a pedestrian and bicycle bridge. It is the opinion of the USCG JAG that Section 1948 renders Paragraph 4 of the new Brightman Street bridge permit, requiring removal of the bridge, to be unenforceable.

On August 17, 2007, CG-3PWB received a request from Weaver's Cove Energy, LLC to conduct a Detailed Investigation by conducted under 33 CFR §116.20. They contend that the May 8, 2007 Navigation Review conducted by CGD8(dwb) 's in substance a Preliminary Investigation Report under 33 CFR §116.15. This is not the case. While some of the data gathered by CGD8(dwb) may be transferable to a Preliminary Investigation Report, the Navigation Review does not and, clearly states that it does not, identify the navigational benefits (in dollars) that will be used in a Benefit/Cost (B/C) Analysis. The calculations provided in an actual Preliminary Investigation are essential in determining if the B/C Ratio equals or exceeds 1:1, and is therefore eligible for a Detailed Investigation and Public Hearing. Further, in a meeting with Weaver's Cove Energy and other concerned parties, conducted on August 16, 2006 at the NRG Somerset Plant meeting room, Gary Kassof, CGD1(dpb) outlined the parameters of the Coast Guard's informational analysis and stated that this analysis was not pursuant to a Truman-Hobbs (T-H) alteration.

At the August 16, 2006 meeting, it was explained to Weaver's Cove Energy that the information gathered for a B/C Analysis reflects past trends, not future projections. Weaver's Cove contention that if the bridge were altered, the future navigation benefit, estimated to exceed $1 billion, is not supported by historical data, and therefore, cannot be considered.

Weaver's Cove asserts that, when the new Brightman Street bridge opens, MHD intends to maintain the old bridge in the open to navigation position. Regardless of whether the old Brightman Street bridge is in the open or closed position, MHD is still required to maintain the bridge in an operational condition and keep the fendering system in repair. Keeping the bridge in the open position does not make it any less a "publicly-owned highway bridge," subject to alteration under either 33 USC 494 or 502.

To further complicate the situation, the Water Resources Development Act of 2007, which is now in a conference committee of senators and representatives to work out differences in the versions of the bill each chamber approved, prohibits the Corps of Engineers from dredging the channel riverward of the Charles M. Braga Memorial Bridge below 35 feet. It appears it is the intent of Congress that the Brightman Street bridge be maintained as a barrier to LNG traffic to Fall River, MA. The Coast Guard has already determined that the old Brightman Street Bridge and the new replacement bridge, in combination, are a hazard to navigation. A Truman-Hobbs investigation would be redundant and wasteful of already strained resources.

Timeline

**Brightman Street Bridge, across the Taunton River, mile 1.8, between Fall River and Somerset, Massachusetts.**

**5 DEC 1997:** US Coast Guard issues permit (8-97-1) authorizing the construction of the new Brightman Street Bridge. Condition 4 of the permit requires that, "All parts of the existing replaced bridge shall be removed down to or below the natural bottom of the waterway."

**15 JUL 2005:** The Federal Energy Regulatory Commission issued an order authorizing Weaver's Cove Energy, LLC (Weaver's Cove) under section 3 of the Natural Gas Act (NGA) to site, construct and operate a liquefied natural gas (LNG) terminal in Fall River, Massachusetts. This order was released after an EIS was completed on 20 May 2005.

**10 AUG 2005:** The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Public Law 109-59, in Section 1948 states that "Notwithstanding any Federal law, regulation, or policy to the contrary, no Federal funds shall be obligated or expended for the demolition of the existing Brightman Street Bridge connecting Fall River and Somerset, Massachusetts, and the existing Brightman Street Bridge shall be maintained for pedestrian and bicycle access, and as an emergency service route."

**24 AUG 2005:** USCG Judge Advocate General (G-LEL) advises CG-3PWB to take no action to enforce the provisions of the permit for the new Brightman Street bridge.

**14 MAR 2006:** Senators Kennedy and Kerry and Congressmen Frank and McGovern invite the Commandant to meet with them concerning the Weaver's Cove LNG facility. Commandant declines, prepares digest to provide additional background information (digest not in file).

**3 APR 2006:** CGD1(dpb) sends to Headquarters a Preliminary Review of the Brightman Street Bridge along with recommendation that an obstructive bridge analysis be conducted.

**6 APR 2006:** Headquarters concurs with the CGD1(dpb) conclusions and authorizes a Preliminary Investigation. Due to the political sensitivity of this issue, the investigation is, at this time, referred to as an "Obstructive Bridge Analysis" to gain separation for the Truman-Hobbs alteration process.

**13 APR 2006:** The CGD8(dwb) Bridge Administrator states his obstructive bridge team should conduct the study. Headquarters concurs.

**25 MAY 2006:** The Coast Guard published in the Federal Register a Notice of Proposed Rulemaking (71 FR 30108). As part of the "Background and Purpose," the November 21, 2005, the Coast Guard request for public comments on "Navigation and Waterways Management Improvements, Providence River Regulated Navigation Area; Narragansett Bay, Rhode Island and Mount Hope Bay, MA" was mentioned. Two of the three comments addressed navigational concerns related to the waterway configuration resulting from the proximity of the Old Brightman Street Bridge to the New Brightman Street Bridge. Specifically, there is only 1100 feet between the bridges, the navigation opening of the Old Brightman Street Bridge is only 98

feet while the opening of the New Brightman Street Bridge is 200 feet, and the openings of the two bridges are not aligned with each other. This configuration requires a vessel to transit through one opening, stop, be pushed transversely (sideways) by tugs for approximately 100 feet to align with the next bridge opening, and then proceed forward.

**25 JUL 2006**: In an email from CG-3PWB to CG-3PW concerning questions from Representatives Frank and McGovern, it is stated that the general methodology described in 33 CFR 116 is being used to provide an informational analysis and documentation pursuant to the CGD1(dpb) request.

**26 JUL 2006**: Congressional Q&A 843 from Reps. Frank and McGovern-

QUESTION:
Do the provisions of 33 CFR 116 take precedence over the SAFETEA-LU law (PL 109-59) that prohibits the use of federal funds to demolish the Brightman Street Bridge?

ANSWER:
No. However, the general procedures described in 33 CFR PART 116 by which the Coast Guard determines a bridge to be an unreasonable obstruction to navigation are being followed to provide informational analysis and documentation concerning potential navigation hazards between the old and new structures and are being conducted at the request of the First Coast Guard District. The First Coast Guard District request stems from concerns filed during the 21 November 2005 request for public comments mentioned in the Notice of Proposed Rulemaking dated 25 May 2006 for the Proposed Regulated Navigation Area. This is not a study conducted pursuant to the Truman Hobbs Act as described in 33 CFR 116.

**26 JUL 2006**: Congressional Q&A 845 from Reps. Frank and McGovern-

QUESTION:
With regard to 33 CFR 116, what is the precedent for placing an order to alter requirement on a bridge or its owner?

ANSWER:
In accordance with the provisions of 33 CFR 116, the Commandant of the Coast Guard has the authority to issue bridge owners an Order to Alter whenever the Coast Guard determines a bridge is an unreasonable obstruction to navigation. The decision to issue an Order to Alter is based on written complaints and input gained at public hearings, both of which can prompt a comprehensive investigation into the impact of the bridge on navigation. Currently, 15 bridges are being altered.

**16 AUG 2006**: Meeting conducted in Somerset, MA (see below attendance roster) to discuss the parameters of the Coast Guard's Informational Analysis, that this analysis was not pursuant to a Truman-Hobbs alteration. Further, the analysis was preliminary in nature and concerned with gathering verifiable, quantifiable facts, present trends and costs to navigation.

Attendance Roster:

CAPT Roy Nash, USCG, Sector Southeastern New England
LCDR Edward LeBlanc, USCG, Sector Southeastern New England
Gary Kassof, USCG, Chief, CGD1(dpb) Bridge Office
Roger Wiebusch, USCG, Chief, CDG8(dwb) Bridge Office
Bill Knutson, USCG, CDG8(dwb) Bridge Office
Frank Hall, USCG, Headquarters, Office of Bridge Administration
Leonard Ariagno, Plant Manager, NRG Energy, Somerset
Howard McVay, President, Northeast Marine Pilots, Inc.
Blair MacIntyre, Poten & Partners, Inc.
Ted Gehrig, President & COO, Weaver's Cove Energy
John Bentley, Maritime Manager, Weaver's Cove Energy

**21 SEP 2006**: Congressional Q&A 843 from Rep. Inhofe-

QUESTION:
Please provide a list of the all permit numbers, with issue dates, for the Brightman Street Bridge? This bridge spans the Taunton River between Fall River and Somerset in Massachusetts.

ANSWER:
The following U. S. Coast Guard Bridge Permit and Permit Amendment numbers, with issue dates, are for the new Brightman Street Bridge which is presently under construction:

| Permit | Issue Date |
|---|---|
| 8-97-1 | 05 December 1997 |
| 8a-97-1 | 23 August 2006 |

The existing Brightman Street Bascule Bridge was authorized by Secretary of War permit issued on 02 June 1906; no permit number was assigned.

**2 FEB 2006**: Weaver's Cove amended their Letter of Intent of 12 MAY 2004, to propose using smaller LNG tankers and increasing the number of transits per year. These smaller LNG Tankers will be 750' long, have an 85' beam and a draft of 37.5', and make between 240-260 transits of the waterway per year.

**13 MAR 2007**: Section 3017 of the Water Resources Development Act of 2007 instructs the ACOE that the authorized depth of the Fall River Project extending riverward of the Charles M. Braga Bridge, Fall River and Somerset, Massachusetts, shall not exceed 35 feet.

**14 MAR 2007**: Congressional Q&A 843 from Senator Kerry-

QUESTION:
SEN Kerry's office believes that Weaver's Cove has asked the Coast Guard to look into the old Brightman Street Bridge in MA and whether it hinders navigation. They would like the current status of any analysis the Coast Guard is currently conducting, what the recommendation might be, and a quick overview of the process if the Coast Guard determines that it hinders navigation?

ANSWER:
The study/analysis is ongoing, and the analysis is expected to be completed by the

end of May 2007. Even if the analysis concludes that the bridge hinders navigation, the 2005 Highway Bill prohibits the expenditure of Federal funds to demolish the Brightman Street Bridge. Therefore, the Coast Guard can not take any action towards the removal of the Bridge. However, the law does not preclude the expenditure of State, local or private funds to remove the bridge.

It should be noted that the obstructive bridge analysis is a completely different process from that for assessing the suitability of the waterway for LNG marine traffic. While the obstructive bridge analysis will be completed by the end of May, this is not the case for the Waterways Suitability Report (WSR).

Regarding the suitability assessment of the waterway for LNG marine traffic, the applicant has re-submitted their Letter of Intent to the Captain of the Port (COTP) assuming the old Brightman Street bridge will remain in place. They are now proposing to use smaller LNG tankers, but with a more frequent delivery rate, so the project can move forward with the navigational restrictions imposed by that bridge. The COTP is currently evaluating the safety implications relating to the smaller LNG tankers, and will then look at the security implications if the safety aspects are manageable. We do not currently have an estimated timeframe for completing that assessment process and issuing a WSR.

**8 MAY 2007:** CGD8 (dwb) completes obstructive bridge analysis, now know as a "Navigation Review." This review concludes that retaining the old Brightman Street Bridge not only nullifies the navigation improvements intended with the new bridge but makes navigation more difficult. Maximum intended waterway improvement will only be possible with removal of the old Brightman Street Bridge.

**9 MAY 2007:** CAPT Roy Nash, Captain of the Port, Southeastern New England issued an Executive Summary concerning Weaver's Cove proposal to use smaller LNG tankers with an increased number of transits. The Summary's preliminary assessment is that the waterway may not be suitable for the type and frequency of LNG traffic Weaver's Cove proposes.

**10 MAY 2007:** Pre-briefing held at USCGHQ to prepare for briefing of Reps. Frank, McGovern and Cummings concerning LNG proposal and Coast Guard Obstructive Bridge analysis. CG-3PWB attended pre-brief to provide information on Brightman Street Bridge.

14 MAY 2007: Congressional Q&A 857 from Rep. McGovern-

QUESTION:
Does the CG have the authority to direct the Brightman Street Bridge to be moved/altered using state funding?

ANSWER:
No. The Coast Guard does not have the authority to dictate how state funds are used. Moreover, Public Law 109-59 specifically prohibits the expenditure of federal funding for demolition of the Brightman Street Bridge as well as allocation of personnel resources supported by federal funding to pursue bridge demolition.

14 MAY 2007: Congressional Q&A 857 from Rep. McGovern-

QUESTION:
Could the Brightman Street bridge be MODIFIED based on the language in Section 1948 of the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users" or SAFETEA-LU (see attached)?

ANSWER:
Section 1948 of Public Law 109-59 prohibits the obligation or expenditure of federal funds to demolish the existing bridge. However, it is silent on the subject of modification. Therefore, as long as the congressional directive of the provision is met (*i.e.*, to maintain the existing bridge for pedestrian/bicycle/emergency purposes), modifications to the existing bridge may be permissible.

Whether a proposed project constitutes a modification and, as such, would be consistent with the congressional intent of section 1948 is a determination made outside of the Coast Guard's purview. The Coast Guard neither proposes nor designs projects; its role is limited to determining whether modifications would adversely impact navigation.

**17 AUGUST 2007:** CG-3PWB received a letter with 2-binders of exhibits from Baker Botts, LLP, a law firm representing Weaver's Cove Energy, LLC, requesting the Coast Guard initiate a Detailed Investigation (33 CFR 116.20) of the obstructive nature of the old Brightman Street bridge. They contend that the Navigation Review conducted by CGD8(dwb) on 8 May 2007 is in fact a Preliminary Investigation (33 CFR 116.15). This is not the case, as there was no Benefit/Cost analysis done and no Benefit/Cost Ration developed. The Coast Guard has already determined that the old Brightman Street Bridge and the new replacement bridge, in combination, are a hazard to navigation. A Truman-Hobbs investigation would be redundant and wasteful of already strained resources.

There is continued Congressional interest in the Weaver's Cove LNG proposal and the Brightman Street Bridge. Recently, Congressmen Patrick Kennedy (D-RI) and Elijah Cummings (D-MD) each cited possibilities for blocking the proposed liquefied natural gas (LNG) plans that would affect Narragansett Bay. The Water Resources Development Act of 2007, is now in a conference committee of senators and representatives to work out differences in the versions of the bill each chamber approved.

The Weaver's Cove plans for the terminal are awaiting a final report on safety and security by the Coast Guard. Coast Guard officials said on 23 JUL 2007 that the report may be completed within four to six weeks.