# Federal Consistency Manual

CRMC
COASTAL RESOURCES MANAGEMENT COUNCIL

**Rhode Island**
**Coastal Resources Management Program**

Stedman Government Center
4808 Tower Hill Road
Wakefield, Rhode Island
02879-1900

## TABLE OF CONTENTS

**Introduction** 1

**Federal Consistency Under the Coastal Zone Management Act** 3

**Federal Consistency Under Executive Order 12372** 6

**The Rhode Island Coastal Resources Management Program** 8
- **The Rhode Island Coastal Zone** 10
- **CRMC's Review Process** 11

**Federal Consistency Under the Rhode Island Coastal Resources Management Program: Procedures and Requirements** 13
- **Direct Federal Agency Activities** 14
- **Indirect Federal Activities** 18
- **Outer Continental Shelf Exploration, Development, and Production Activities** 22
- **Federal Assistance to State and Local Governments** 23
- **Dispute Settlement Mechanisms** 24

## APPENDICES

**Appendix A - Section 307, Coastal Zone Management Act, as amended (by reference only)**
**Appendix B - Executive Order 12372 (by reference only)**
**Appendix C - 15 CFR Part 930 (by reference only)**
**Appendix D - RIGL 46-23-1 (by reference only)**
**Appendix E - RICRMP Section 400: Federal Consistency**

# Introduction

The Federal Coastal Zone Management Act (CZMA) (16 USC §§ 1451-1464) encourages states to take a leading role in the management of their coastal regions. As one incentive for state participation in the federal coastal zone management program, section 307 of the CZMA (Appendix A) requires that various federal activities that are reasonably likely to affect any land or water use or natural resource of the coastal zone be consistent with a state's approved coastal zone management program. Before certain activities can take place, federal agencies or applicants for federal approvals or assistance must submit a consistency determination or certification to the state coastal management agency that the activity will be conducted consistent with the state's federally approved coastal management program (CMP). Through this process, the state has the opportunity to evaluate those federal activities which affect the state's coastal zone and ensure that the activities meet state coastal management policies. Hence, a primary purpose of section 307 is to ensure a balance between state coastal zone management programs and federal activities.

In 1978, with the adoption of the Rhode Island Coastal Resources Management Program (RICRMP) into the federal coastal management program established by the CZMA, federal activities affecting any Rhode Island coastal use or resources became subject to the consistency provisions of section 307*. Since that time, the consistency process has become an important step for ensuring federal activities respect Rhode Island's valuable coastal zone. The agency responsible for overseeing implementation of the RICRMP generally, and federal consistency in particular, is the Rhode Island Coastal Resources Management Council (CRMC).

This handbook is intended to provide federal agencies, federal license, permit and assistance applicants, and other interested persons with an understanding of the federal consistency requirement under section 307 as it is implemented by the RICRMP. A brief description of Executive Order 12372 (E.O. 12372) (Appendix B), its implementation in Rhode Island, and its relationship to the section 307 review process is also provided. The CRMC's procedures for ensuring consistency with applicable enforceable policies of the RICRMP are outlined and a listing of various federal activities, both direct and indirect, and assistance programs subject to the federal consistency requirement is provided. This manual is intended to be used as a companion document to Section 400 of the RICRMP. The guidelines in this handbook incorporate the mandatory regulations (15 CFR part 930) (Appendix C) into the existing state review process. Relevant federal regulations are cited throughout the manual.

This manual has been adapted from *The Federal Consistency Workbook* developed by the National Oceanic and Atmospheric Administration's (NOAA) Office of Ocean and Coastal Resource Management (OCRM). Additional information was provided by the *Narragansett Bay Project Comprehensive Conservation and Management Plan* and by the Rhode Island Department of Administration, Division of Planning (RIDOP). Partial funding for this project was provided by the Narragansett Bay Project and NOAA.

*Throughout this document, the terms "effects to" or "affecting" "any coastal use or resource" means reasonably likely effects to any land or water use or natural resource of the coastal zone.

**Federal Consistency Under the Coastal Zone Management Act**

Congress passed the CZMA to assist coastal states, including the Great Lake states, and United States territories in developing state coastal management programs to comprehensively manage coastal uses and resources. Federal consistency is the CZMA requirement contained in section 307 that federal actions which affect any land or water use or natural resource of the coastal zone be consistent with the enforceable policies of a state's or territory's federally approved CMP. It is an important mandatory but flexible mechanism to resolve potential conflicts between states and federal agencies, by fostering early consultation, cooperation and coordination.

Under the CZMA section 307, federal agencies and applicants for federal approvals or assistance must provide state CMPs with consistency determinations or certifications The CMPs then review proposed federal actions to determine if the actions will be consistent with the state CMP. Federal consistency reviews are the responsibility of the lead state CMP agency. At the federal level, the National Oceanic and Atmospheric Administration (NOAA): oversees the states' use of consistency; advocates, when appropriate, state positions with other federal agencies; provides states, and federal agencies with technical assistance; mediates consistency disputes between states and federal agencies; and processes appeals to the Secretary of Commerce.

Federal actions subject to the federal requirement include:

1. Direct federal actions - activities and development projects performed by a federal agency, or contractor on behalf of a federal agency. Examples of such actions are: installation of mooring buoys by the National Park Service; fisheries management plans by the National Marine Fisheries Service; naval exercises; the disposal of excess federal land by the General Services Administration; U.S. Army Corps of Engineers (Corps) navigational dredging and beach renourishment projects; outer continental shelf (OCS) oil and gas lease sales by the Minerals Management Service (MMS); improvements to military bases; naval disposal of radioactive or hazardous waste performed by a private contractor, etc.

2. Indirect federal actions - actions not performed by a federal agency, but requiring federal permits, licenses or other forms of federal approval. Examples of such actions are: activities requiring Corps 404 permits; Corps permits for use of ocean dump-sites, Nuclear Regulatory Commission permits for nuclear power plants, delicensing of nuclear facilities by the Nuclear Regulatory Commission, etc. Also included as a subset of this category are plans and licenses for outer continental shelf (OCS) oil and gas exploration, development and production.

3. Federal financial assistance to states and territories and to local governments. Examples of this include: federal highway administration funds to state, territory and local governments, construction grants for wastewater treatment works, hazardous waste management funds, Housing and Urban Development grants, etc.

The Coastal Zone Reauthorization Amendments of 1990 (CZARA) amended the CZMA to clarify that federal consistency applies when any federal activity, regardless of location, affects any coastal use or resource. The new language broadens the scope of review for states to include federal activities resulting in indirect effects on the coastal zone and reflects Congressional intent to overturn the effect of Secretary of the Interior v. California, 464 U.S. 312 (1984). According to the Conference Report, the intent of the new language was to:

> "establish[] a generally applicable rule of law that any federal agency activity (regardless of its location) is subject to [the consistency requirement] if it will affect any natural resources, land uses, or water uses in the coastal zone. No federal agency activities are categorically exempt from this requirement."

(H.R. Conf. Rep. No. 964, 101st Cong., 2nd Sess., 968-975, 970 [hereinafter Conference Report]).

The Conference Report on the 1990 amendments provides further clarification as follows:

> "The question of whether a specific federal agency activity may affect any natural resource, land use, or water use in the coastal zone is determined by the federal agency. The conferees intend this determination to include effects in the coastal zone which the federal agency may reasonably anticipate as a result of its action, including cumulative and secondary effects. Therefore, the term "affecting" is to be construed broadly, including direct effects which are caused by the activity and occur at the same time and place, and indirect effects which may be caused by the activity and are later in time or farther removed in distance, but are still reasonably foreseeable."
> (Id. at 970-71)

These changes reflect a clear Congressional intent to eliminate any "categorical exemptions" from CZMA consistency review, and instead to establish a uniform threshold standard requiring federal agencies to make a case-by-case, factual determination of reasonably foreseeable effects on any coastal use or resource. The amendments to section 307(c)(1) were intended to leave no doubt that all federal agency activities meeting the "effects" standard are subject to the CZMA consistency requirements. (Id. at 970-71; 136 Cong. Rec. H 8076 (Sept. 26, 1990).) Accordingly, the threshold for implementation of federal consistency requirements is now dependent upon the "effects test". A federal action, regardless of where or when it takes place, or the type of federal action, is subject to federal consistency if the action is reasonably likely to affect any land or water use or natural resource of the coastal zone.

Federal consistency is more than just a procedural dictate. Because it is based on effects, not geographic boundaries, and there are no categorical exemptions from its requirements, federal consistency is a method of ensuring greater protection of coastal uses and resources. The scope of the federal consistency effects test can help protect entire ecosystems as well as individual resources and uses. For example, if any activity is to occur outside the coastal zone, e.g., outside of the state's waters or inland coastal zone boundary, but will affect coastal water quality, habitat, wetlands, etc., and that activity involves some form of federal action, then it is subject to the federal consistency requirement and the enforceable policies of the RICRMP. Moreover, a federal activity taking place outside of Rhode Island, which affects any coastal use or resource of Rhode Island, is subject to the consistency requirement.

Maximizing the benefits of federal consistency requires that federal agencies provide routine notification to coastal states of actions, permits, and financial assistance; and requires coastal states to pay regular attention to proposed federal actions, develop adequate consistency procedures, and notify federal agencies, other state agencies, and others of a state's assertion of consistency. In essence, federal agencies and others have an affirmative duty to comply with the federal consistency requirement, but CMPs need to take regular, consistent, and assertive steps. In Rhode Island, early consultation and cooperation between federal agencies and the CRMC can help federal agencies and permit applicants avoid costly last minute changes to projects in order to comply with the RICRMP.

**Federal Consistency Under Executive Order 12372**

Executive Order 12372, issued in July of 1982 under the Demonstration Cities and Metropolitan Government Act and the Intergovernmental Cooperation Act, establishes a mechanism by which state, local, and community representatives can review and comment on projects or programs seeking federal financial assistance. The Executive Order is implemented on the state level under the authority and guidance of Executive Order 83-11 through the Rhode Island Intergovernmental Review Process (IGR).

In accordance with the IGR, any state agency, local government, or private organization that is seeking federal financial assistance to implement an activity within the State must submit grant or cooperative agreement applications for intergovernmental review. The purpose of this process is to assure compliance with applicable State Guide Plan elements, conformance to Local Comprehensive Plans, and coordination of programs within the state. Federal agencies subject to E.O. 12372 are required to "accommodate or explain" identified inconsistencies with state policies and plans; there is no obligation under E.O. 12372 to alter the proposed activity.

Rhode Island established its E.O. 12372 review process in 1983. The Associate Director for Planning is designated as the state's "single point of contact" responsible for the official state "Clearinghouse" for public information and coordinating the IGR. Approximately 300 federal categorical grant or cooperative agreement programs are subject to review under E.O. 12372 and E.O. 83-11. While E.O. 12372 is mostly applicable to federal financial assistance activities, direct federal actions and environmental impact statements required pursuant to the NEPA, and Corps permit applications are also subject to the IGR.

In most cases, the federal agency subject to IGR submits an application to the Clearinghouse, the Rhode Island Department of Administration, Division of Planning (RIDOP), for review. Upon receiving notification, the RIDOP solicits and coordinates comments from appropriate state and local agencies. Applications are reviewed by state agencies with respect to relevant policies and plans. Agencies also provide an indication of necessary permits for which the applicant will be responsible. A response as to whether the proposal is consistent with state and local plans is synthesized by the RIDOP and forwarded to the sponsoring federal agency. Again, federal agencies subject to E.O. 12372 are required only to accommodate or explain identified inconsistencies with state plans or programs; there is no obligation on the part of the federal agency to alter a proposed activity. Meetings are scheduled with all relevant parties, as necessary, to attempt to reconcile identified inconsistencies. (NBP, CCMP 1990)

Where proposed federal actions may affect any coastal use or resource, the CRMC can, in addition to reviewing the action under E.O. 12372, separately review the action under section 307 of the CZMA. Since section 307 requires federal activities to be consistent with the enforceable policies of a state's CMP, rather than simply that federal agencies accommodate or explain identified inconsistencies, a separate section 307 consistency review by the CRMC is the most effective tool for requiring consistency of federal actions with the RICRMP. However, the IGR provides an important notification mechanism for CRMC review of many proposed federal actions and a means for negotiation when a federal action may not require a section 307 review, but about which the CRMC has concerns nonetheless. The relationship between these two consistency mechanisms and procedures for their implementation are explained more fully in the section of this manual entitled "Federal Consistency with the Rhode Island Coastal Resources Management Program".

## The Rhode Island Coastal Resources Management Program

The agency vested with implementation of the state's coastal zone management program in Rhode Island is the Coastal Resources Management Council (CRMC). This section provides a general description of the CRMC and the RICRMP as background on how the federal consistency process is implemented in Rhode Island.

The CRMC was created in 1971 pursuant to § 46-23 of the Rhode Island General Laws (R.I.G.L.) (Appendix D) for the purpose of managing the coastal resources of the state. The Council, which is comprised of sixteen members and a support staff, is charged with the responsibility:

> to preserve, protect, and, where possible, to restore the coastal resources of the state for this and succeeding generations through comprehensive and long range planning and management designed to produce the maximum benefits for society from such coastal resources; preservation and restoration shall be the guiding principle upon which environmental alterations will be measured, judged and regulated (R.I.G.L. §46-23-1).

To carry out this mandate, the CRMC is engaged in a wide range of planning and management programs. Among these programs are:

- ° CRMC's regulatory requirements pursuant to the RICRMP and Special Area Management Plans (SAM Plans)
- ° Municipal Harbor Management Program
- ° Rights-of-Way (ROW) Designation Program
- ° Federal consistency reviews
- ° Aquaculture operations management
- ° Submerged lands management

The CRMC adopted the RICRMP in 1976 and received its federal program approval pursuant to the CZMA in 1978. The RICRMP was substantially revised in 1983 and 1990.

The RICRMP is regulatory in nature and is largely structured as a strategic plan for the state's coastal areas. It is based on six CRMC water types and the shoreline features (type of shoreline). The Council's six water types are:

- ° Type 1 Conservation Areas;
- ° Type 2 Low Intensity Use;
- ° Type 3 High Intensity Boating;
- ° Type 4 Multipurpose Waters;
- ° Type 5 Commercial and Recreational Harbors; and
- ° Type 6 Industrial Waterfronts and Commercial Navigation Channels (RICRMP §200).

Maps depicting the water type designations are provided at the end of "the Redbook" which contains the regulatory requirements of the RICRMP. There are specific policies and prohibitions that correspond to each water type. Approximately 70% of the state's shoreline is adjacent to either Type 1 or Type 2 waters. The policies for these water types are designed to protect these areas from commercial development and restrict the placement of in-water structures. For example, the construction of new marinas is prohibited in Type 1 and Type 2 waters. For other water types, the policies are less restrictive and encourage specific types of water-dependent uses. For example, policies for Type 3 waters and adjacent upland areas specifically encourage recreational uses of the shoreline such as marinas, docks, and public launching ramps.

Like the water types, the CRMC also has policies related to shoreline features. The CRMC defines shoreline features as:

- ° Coastal Beaches;
- ° Barrier Islands and Spits;
- ° Coastal Wetlands;
- ° Coastal Headlands, Bluffs, and Cliffs;
- ° Rocky Shores;
- ° Manmade Shorelines; and,

° Dunes.
(RICRMP §210)

There are specific policies designed to protect each shoreline feature and manage upland development. For example, the CRMC has policies which severely restrict and prohibit any alterations to coastal wetlands, beaches, and dunes. In some instances, the coastal features have been further classified, e.g., the CRMC has policies that pertain to developed, moderately developed, and undeveloped barrier beaches.

The RICRMP also contains policies that apply to specified types of activities and their proposed location vis-a-vis adjacent water types and shoreline features (see RICRMP §300). For example, RICRMP section 300.4 addresses recreational boating facilities and contains the CRMC's marina regulations. In addition to the regulations contained in the RICRMP, the CRMC has adopted by reference several guidance manuals which have the force of regulation including: *Rhode Island Soil Erosion and Sediment Control Manual* ; *Rhode Island Stormwater Design and Installation Standards Manual* ; and the CRMC's *Buffer Management Guidance* . The CRMC has also developed SAM Plans, two of which are regulatory in nature. These SAM Plans and their regulatory applications are described in the following section. Lastly, the RICRMP also includes specific policies for the development of power generating facilities which have the potential to impact the coastal zone and its resources, regardless of their proposed location, which are contained in the "Energy Amendments."

**The Rhode Island Coastal Zone**

The seaward extent of Rhode Island's coastal zone boundary is the three mile outer limit. The CRMC's jurisdiction includes all tidal waters within state jurisdiction including the coastal ponds, some of which are not tidally influenced but are associated with a barrier beach system.
The inland extent of Rhode Island's coastal zone boundary is a tiered system which is dependent on the type and location of an activity. This approach to jurisdiction with regard to the implementation of the federal consistency requirement is most easily understood in terms of three tiers. Policies and standards governing activities within these three tiers are contained in the RICRMP and the Council's SAM Plans.

The first tier of Rhode Island's coastal zone generally extends 200 feet inland of a coastal feature. Within this area the CRMC has authority over any development activity, including maintenance. Also included in this first tier are watersheds for which a SAM Plan has been adopted. For the purposes of federal consistency, those watersheds are the Salt Pond region of Rhode Island's southern shore, the Narrow River watershed, and the SAM Plans that have been developed for the Providence Harbor waterfront and the Pawcatuck River Estuary. Within these SAM Plan areas, the CRMC has jurisdiction over, and specific enforceable policies governing, large development projects (developments requiring one or more acre of parking or a 2,000 gallon/day capacity septic system, and subdivisions of six units or more). The CRMC also has specific land use designations and associated policies and prohibitions governing development within these poorly flushed areas.

The second tier of the Rhode Island's coastal zone boundary extends inland to include Rhode Island's 21 coastal communities. Within this second tier, all federal (as well as state) activities must be consistent with the RICRMP. Although the CRMC generally does not issue permits inland of the first tier of jurisdiction unless the activity is one over which the CRMC has authority statewide, for the purposes of federal consistency, this area is considered Rhode Island's coastal zone. Therefore, federal activities, including federal licenses, permits and financial assistance, which affect any coastal use or resource of these communities, must be consistent with the RICRMP and any applicable SAM Plan.

The third tier of CRMC jurisdiction encompasses the entire state for certain activities which the state has predetermined may affect coastal resources or uses regardless of location within the state. These activities are: energy generation, transfer processing, or storage; chemical processing; minerals extraction; sewage treatment and disposal; and solid waste disposal. Where the Council has determined that a proposed aforementioned activity will affect any coastal use or resource that activity is subject to the federal consistency requirement and Council review. However, the CRMC has the authority to review any activity when the activity will affect any coastal use or resource. The CRMC, with the concurrence of NOAA, may determine that any federal activity meets the "effects test" and may therefore be subject to the federal consistency requirement, regardless of its location in the state.

**CRMC's Review Process**

Generally, applicants proposing an activity within the first tier of Rhode Island's coastal zone must apply for a CRMC Assent (CRMC permits are referred to as Assents). When an Assent from the CRMC is required, and the proposed activity involves either a direct or indirect federal action, the issuance of an Assent constitutes CRMC concurrence with an applicant's certification that the project is consistent with the RICRMP. In all cases, however, the issuance of a CRMC Assent and the certification or determination[1] of federal consistency remain distinct, even when the two processes overlap. Activities that require federal approval and are reasonably likely to affect any coastal use or resource, but which do not require a CRMC Assent, remain subject to the consistency requirement.

There are several types of Assents issued by the Council. They include:

° Findings of No Significant Impact (FONSIs) (RICRMP §110.4)
° Maintenance Assents (RICRMP §300.14)
° Category A Assents (RICRMP §110.1)
° Category B Assents (RICRMP §110.2)
° Emergency Assents (RICRMP §180)

In addition, applicants can apply for a Preliminary Determination where the CRMC reviews the project as proposed and provides the applicant with comments such as identifying applicable policies and standards prior to submitting a formal application to the Council. All of the Assents are processed administratively with the exception of Category B Assents and some particularly complex or contentious Category A Assents. All Category B Assents are subject to public notice (as are some Category A Assents) and have a public hearing before the Council which makes a final decision. Category A applications are never denied administratively, but are brought before the Council for a decision.

Tables contained in the RICRMP are used to determine if an activity is reviewed as a Category A or B Assent. These tables also give an indication as to whether a proposed activity is prohibited. If an activity is prohibited it requires a "Special Exception" from the Council in accordance with the burdens of proof contained in RICRMP §130. If a proposed activity is not explicitly prohibited, but the applicant cannot meet

[1] There are some subtle yet important differences in the federal consistency process and its associated terminology as it applies to direct and indirect federal activities. Federal agencies conducting any direct federal activity are required to make a "determination" of consistency with the enforceable policies of the RICRMP with which the CRMC may agree or disagree. Applicants for federal permits or licenses are required to make a "certification" of consistency with the RICRMP to the federal agency providing the license, permit. A copy of the certification of consistency is then forwarded to the CRMC for review whereupon the CRMC may either concur or object.

the specific policies and standards contained in the program, then the applicant must obtain a variance in accordance with the burdens of proof outlined in RICRMP §120. Some variances can be processed administratively.

Federal consistency determinations and certifications are evaluated using the enforceable policies and standards that would apply to a CRMC permit application for that particular project type (see the RICRMP for specific policies and standards). Accordingly, the federal agency conducting, licensing or supporting a particular project subject to the RICRMP would be required to ensure that the applicable policies and standards contained in the RICRMP will be met. Where the CRMC does not have specific standards for the proposed activity, the CRMC can rely on its legislative mandate and associated general enforceable policies, and on relevant policies contained in the *State Guide Plan,* which is also part of Rhode Island's approved CMP.

Federal consistency determinations and certifications are subject to the same level of review as outlined above. For example, minor repair work to a structure on federal lands would require a consistency determination with a level of review equal to that which would be required under a maintenance permit application. On the other hand, a federally supported large road project within any one of Rhode Island's 21 coastal communities would be subject to a level of review equal to that of a Category B application.

## Federal Consistency Under the Rhode Island Coastal Resources Management Program: Procedures and Requirements

Application of the federal consistency requirement contained in section 307 of the CZMA is primarily dependent upon the effects the proposed activity has on any coastal use or resource. In order to assist federal, state and local agencies in determining whether a proposed activity is subject to the federal consistency requirement, the CRMC has listed, with the concurrence of NOAA's Office of Ocean and Coastal Resource Management (OCRM), certain activities, both direct and indirect, reasonably likely to affect any coastal use or resource (see Tables 1, 2 and 3 contained in Appendix E, RICRMP Section 400: Federal Consistency). It is important to note that these lists are not exhaustive and that any federal activity which affects any coastal use or resource is subject to the federal consistency requirement. Accordingly, the CRMC monitors those federal activities within and outside of the coastal zone which, although not specifically listed, affect any coastal use or resource of Rhode Island.

In general, federal agencies conducting any activity within the first or second tier of Rhode Island's coastal zone affecting any coastal use or resource are subject to the consistency requirement. Federal agencies conducting activities or third parties contracted to conduct such activities for a federal agency are in most cases not required to obtain a CRMC Assent. In cases where a federal agency is permitting, licensing or supporting a non-federal project (i.e., an indirect federal activity) within the first tier of the CRMC's jurisdiction, the applicant is responsible for obtaining the required CRMC Assent. Here, the issuance of a CRMC Assent constitutes concurrence with the certification of consistency. It is important to keep in mind that some activities, including many federally supported activities, are often subject to both the CRMC permit process as well as the federal consistency requirement. The CRMC has taken steps to ensure that these reviews are not duplicative, yet they remain distinct.

There is no categorical exemption for any federal activity. If a federal activity affects any coastal use or resource then consistency applies. However, the President may exempt a specific federal activity (but not a class of federal activities) under certain circumstances. A direct federal activity affecting any coastal use or resource must be consistent to the maximum extent practicable. This requires federal activities to be fully

consistent with the RICRMP unless compliance is prohibited based upon the requirements of existing law applicable to the federal agency's operation. See 15 CFR § 930.32. Thus, a direct federal activity may deviate from full consistency if legally required (as opposed to a general notion or claim of national security). Finally, federal agencies may deviate from full consistency with an approved program when such deviation is justified because some unforeseen circumstances, i.e., an emergency situation arising after the approval of the management program, present the federal agency with a substantial obstacle that prevents complete adherence to the approved program.

The following sections provide a general discussion of the CRMC's federal consistency requirements and procedures under section 307 of the CZMA and, where relevant, E.O. 12372. Specific enforceable policies associated with various water types, coastal features and activities are contained in the RICRMP. Requirements and procedures particular to consistency determinations and certifications can be found in section 400 of the RICRMP (Appendix E). It remains the responsibility of any federal agency and permit applicant to consult with the CRMC and the RICRMP to ensure that all federal consistency requirements are met.

To facilitate a smoother consistency review, it is best for the federal agency, the CRMC, and the applicant (if not the federal agency) to discuss a proposed activity as early in the process as possible. The CRMC and federal agencies can agree, at any time, to more flexible consistency review procedures (providing public participation requirements are still met) when circumstances require. Regardless of what procedures are ultimately agreed upon and used, consistency determinations and certifications are, in all cases, subject to the public notice, hearing, and appeals provisions of Section 400 of the RICRMP and the Code of Federal Regulations (15 CFR Part 930). All consistency determinations and certifications should be sent to the following address as early in the planning process as possible:

Federal Consistency Coordinator
Coastal Resource Management Council
Oliver H. Stedman Government Center
4808 Tower Hill Road
Wakefield, RI 02879-1900
Phone: (401) 783-3370

**Direct Federal Agency Activities**

Federal agencies proposing an activity need to follow the requirements of CZMA section 307(c)(1), (2)(16 USC §1456(c)(1), (2)) and 15 CFR part 930, subpart C. The Rhode Island counterpart to these regulations is contained in RICRMP section 400 (Appendix E). The RICRMP procedures and regulations on federal consistency requirements are derived directly from these two sources and are discussed below.

Federal agencies proposing activities, whether within or outside Rhode Island's coastal zone, must first determine if the activity is reasonably likely to affect any coastal use or resource. As guidance, federal agencies are directed to Table 1 of RICRMP section 400 (Appendix E) for a list of direct federal activities which the CRMC has determined affect Rhode Island's coastal uses or resources. All federal development projects taking place within the coastal zone are presumed to affect coastal uses or resources and are therefore subject to federal consistency requirements. The CRMC maintains jurisdiction, both in permitting and in consistency determinations, over power generation facilities statewide due to their predetermined potential to affect coastal uses and resources. This is not to say that every power generation facility in the State will impact coastal uses and resources. It is possible that a federal agency would undertake the development of a

power generation facility which would have no effects on coastal uses or resources. In such a case, the federal agency would submit a "negative determination." Also, effects are not limited to direct effects but can also include cumulative and secondary effects. Once the federal agency has determined that effects are reasonably foreseeable, the federal activity must be conducted in a manner that is consistent to the maximum extent practicable with the RICRMP.

The CRMC monitors, through the E.O. 12372 process, the NEPA process, and other mechanisms "unlisted" federal activities to ensure that no federal activity taking place within or outside of the coastal zone (or any other previously defined area subject to the consistency requirement), which affects any coastal use or resource, is undertaken without a review and determination of consistency with the RICRMP. For unlisted activities, the federal consistency trigger is reasonably foreseeable effects, regardless of the location of the activity.

**Review Process**

Early Coordination:
The initial step for federal consistency review of any direct federal activity should be to contact the CRMC to inform the State of the proposed activity. This early coordination will help identify initial state concerns and applicable enforceable policies. If necessary, the Council will arrange an "early coordination" meeting at which the activity is discussed by the relevant authorities to identify and, whenever possible, to resolve any issues that are likely to arise prior to the submission of a federal consistency determination.

Federal Agency Responsibility:
Federal agencies must provide the Council with consistency determinations for all development projects located within Rhode Island's coastal zone and for other activities, whether within or outside Rhode Island's coastal zone, if an activity is reasonably likely to affect any coastal use or resource . For guidance, Table 1 provides a list of those activities presumed to have an effect. It is possible that a listed activity, in certain circumstances, will not affect any coastal use or resource. In those cases, federal agencies must submit a negative determination to the CRMC.
Consistency determinations must be in writing, and submitted at the earliest practicable time in the planning process. Unless both the federal and state agencies agree to a different schedule, notification must be provided at least 90 days prior to the point at which alternatives to the proposed action can no longer reasonably be considered. 15 CFR § 930.34 (b). The consistency determination must address effects and indicate the federal agency's assessment of its consistency, or lack thereof, with applicable provisions of the RICRMP. 15 CFR § 930.39 (a).

Unlisted, Unreported, Repeated and Phased Activities:
In the event that the Council identifies an activity or proposed activity which it considers is subject to a consistency review by the CRMC, but which is either not listed or not proposed to be located in the coastal zone, the Council will notify the appropriate federal agency within 45 days from receipt of notice of the unlisted Federal activity that the activity is subject to a consistency determination. 15 CFR § 930.35 (b). If the Federal agency decides that a consistency determination is not required for the activity in question, i.e., no effects on any land or water use or natural resource of the coastal zone is reasonably likely, then the agency shall provide the Council with a negative determination at least 90 days before final approval of the activity. 15 CFR§ 930.35 (d). The unlisted procedures and 45 day notice process do not relieve a federal agency from providing the state with a consistency determination for all activities which the federal agency determines are reasonably likely to affect any coastal use or resource. 15 CFR § 930.35 (c).

Where a federal agency will be conducting incremental actions that are repetitive or periodic, substantially similar in nature, and do not affect any coastal use or resource when performed separately, the federal agency may develop a general consistency determination. 15 CFR § 930.37 (b). However, the federal agency must consider, when making its determination, any cumulative and secondary effects resulting from the activity(ies).

In cases where major federal decisions related to a proposed development project will be made in phases based upon developing information, a consistency determination will be required for each major decision. 15 CFR§ 930.37 (c).

<u>Necessary Information and Data</u>:
A consistency determination must be accompanied by data and information sufficient to support the determination. The data should address effects and consistency with the specific policies, standards, and requirements contained in the RICRMP, any applicable SAM Plan, and, when appropriate, applicable elements of the *State Guide Plan* as specifically as possible to ensure a timely and efficient consistency review. 15 CFR § 930.39 (a). The consistency determination will be reviewed at a level equal to the review to which the proposed activity would be subject as a CRMC permit application. Federal agencies are directed to the matrices and §300 of the RICRMP as well as any applicable SAM Plan to determine whether a proposed activity is allowable, the level of review to which it is subject, and specific policies, standards and information requirements. Depending upon the complexity and potential impacts of the proposed activity, consistency determinations range from very brief to detailed documents. Generally, the following is considered to be the minimum necessary to be provided:

° A detailed description of the site, nature, and extent of the proposed activity and its associated facilities and services, their effects on any coastal use or resource, and the comprehensive data and information sufficient to support the agency's determination including appropriate facility development plans, engineering drawings, maps, diagrams, technical data, and other relevant material.

° A brief assessment indicating how the activity will be undertaken in a manner consistent to the maximum extent practicable with the RICRMP.

If a federal agency asserts that compliance with the RICRMP is prohibited, it shall clearly describe in its consistency determination the legal authority which it believes limits the federal agency's ability to comply with the applicable requirements of the RICRMP. 15 CFR § 930.32(a).

<u>Council Review and Response</u>
Each consistency determination shall be reviewed by the Council. The Council shall notify federal agencies within 45 days in writing of its agreement or disagreement with the consistency determination and supporting documentation as described above. This time period shall begin once the Council has received all the necessary information and data. The Council may, where necessary, request additional time to evaluate and respond to federal agency determinations pursuant to CFR § 930.42 (b). Federal agencies must approve one request for an extension period of fifteen days. The federal agency may presume agreement with its consistency determination if the Council fails to respond or to request an extension within the 45 day time frame. Final federal agency action may not be undertaken sooner than 90 days from the issuance the consistency determination to the State. 15 CFR § 930.41

Where the Council disagrees with an agency's consistency determination it will describe how the activity is inconsistent with applicable policies, standards, and requirements contained in the RICRMP. It will further recommend alternatives to or modifications of the proposed action that would render it consistent to the

maximum extent practicable. A copy of such notification is forwarded to the Secretary of Commerce. 15 CFR § 930.42 (a). If the disagreement is based upon a finding that the agency has failed to provide sufficient information, the Council shall describe the nature of and the need for such information. A copy of such notification shall be forwarded to the Secretary of Commerce. 15 CFR § 930.42 (a) & (b).

**Conflict Resolution**

It is the Council's policy to resolve state-federal disagreements through direct negotiation and consultation with the affected agency in the event of the Council's objection to a federal agency consistency determination. If the conflict persists, the federal agency or the Council, may request formal mediation through the Secretary of Commerce as provided for in 15 CFR part 930 subpart G or informal negotiation through NOAA's Office of Ocean and Coastal Resource Management. Dispute settlement mechanisms are discussed more fully at the end of this chapter. Specific information pertaining to mediation is located in RICRMP Section 400.

**Monitoring of Activities for Continuing Consistency**

In the event that the Council determines that an activity previously determined to be consistent with the RICRMP is not being conducted in such a manner or is having such effects on the coastal zone so as to be inconsistent with the Program, it shall request the agency to take appropriate remedial action. The request shall include necessary supporting information and a proposal for the recommended action. 15 CFR § 930.44.

## Federal License or Permit Activities

A private individual or business, a state or local government agency, or any other type of non-federal entity, applying to the federal government for a required permit or license or any other type of an approval or authorization, needs to follow the requirements of CZMA section 307(c)(3)(A)(16 USC §1456(c)(3)(A)) and 15 CFR part 930, subpart D. The Rhode Island counterpart to these regulations is contained in RICRMP section 400. The RICRMP procedures and regulations on federal consistency requirements are derived directly from these two sources and are discussed below.

Applicants for federal licenses, permits, and other approvals for activities, whether within or outside the coastal zone, affecting any coastal use or resource, must certify that the proposed activity will be conducted in a manner that is consistent with the enforceable policies of the RICRMP. All federally licensed, permitted, and approved activities occurring in the coastal zone are deemed to affect coastal uses or resources if the state has "listed" the particular federal license or permit program in its coastal management program document. (See Table 2 of RICRMP section 400 contained in Appendix E.) Federal permits related to OCS oil and gas activities are treated similarly, but are covered separately in a subsequent section.

For a listed federal permit or license involving an activity occurring in the coastal zone, i.e., within any one of Rhode Island's 21 coastal communities, the applicant must submit a CZMA federal consistency certification to the licensing or permitting federal agency and a copy of that certification to the CRMC. In addition to the certification, the applicant must provide the state with the necessary data and information to allow the state to assess the project's effects. This information will normally be contained in the application to the federal agency, but may include other information required by the CRMC (e.g., necessary state permits). The CRMC's review time starts when the certification and the necessary information and data are received. If the CRMC concurs with an applicant's certification, then the federal agency may issue its approval. If the CRMC objects, the federal agency may not issue its license or approval until the objection is resolved or overridden

by the Secretary of Commerce on appeal by the applicant. Concurrence is presumed in the absence of an objection within six months following commencement of the CRMC's review.

As previously noted, in cases where the license or permit activity is also subject to CRMC permit requirements, the issuance of a valid CRMC Assent or license shall constitute concurrence with an applicant's certification of consistency with applicable provisions of the RICRMP. Failure to obtain a CRMC Assent or license shall, in and of itself, be deemed conclusive evidence of a state determination of inconsistency and no additional action, determination, or notice shall be required of the state.

Federal agencies may not approve any license or permit for which requisite state permits or licenses required under the various provisions of the RICRMP have not been obtained. "Requisite state permits and/or licenses" as referenced in the RICRMP Section 400 and identified in RICRMP Section 300 (Activities under Council Jurisdiction) shall include all Council permits and/or other state permitting actions which, under the provisions of Title 46, Chapter 23 of the RI General Laws must be undertaken consistently with the policies, standards, and requirements contained in the Rhode Island Coastal Resource Management Program.

**Review Process**

Early Coordination:
The initial step for federal consistency review of any federal license or permit should be for the applicant to inform the CRMC of the proposed activity and determine whether the proposed activity is or may be subject to the federal consistency requirement. This early coordination will answer questions concerning whether a review is necessary and the scope of the review. If necessary, the Council will arrange an "early coordination" meeting at which the activity is discussed by the applicant and relevant state authorities to identify state concerns and relevant enforceable policies and, whenever possible, to resolve any issues that are likely to arise.

Applicant Responsibility:
An applicant for a listed federal license or permit must submit to the Council a copy of the application along with all supporting information and a copy of the certification of consistency provided to the licensing or permitting federal agency. The Council will advise the applicant of the receipt of the certification and the date of receipt of the complete information package. The Council's review of an applicant's consistency certification begins on the receipt date. 15 CFR § 930.60(a). It is important to remember that the proposed activity, depending on its nature and location, may be subject to CRMC permit requirements.

Unlisted or Unreported Activity:
With the assistance of federal agencies, the Council will monitor unlisted federal license and permit activities through the E.O. 12372 Clearinghouse, through review of NEPA environmental impact statements and through other such avenues as provided to it by law. An applicant may be required to submit a consistency certification to the CRMC for unlisted federal permits or licenses when the proposed activity affects any coastal uses or resources, whether taking place within or outside of the coastal zone. In such cases, the CRMC must notify the applicant, the relevant federal agency, and OCRM that it intends to review the activity. The state must make this notification within 30 days of receiving notice of the activity, otherwise the state waives its consistency rights. The waiver does not apply where the CRMC does not receive notice.

OCRM must approve the state's consistency review of an unlisted federal permit or license. The applicant and the federal agency have 15 days from receipt of a request by the CRMC to review the activity to provide comments to OCRM. OCRM will make a decision usually within 30 days of receipt of the state's request. The sole basis for OCRM's decision will be whether the proposed activity can be reasonably expected to

affect any land or water use or natural resource of the coastal zone. The federal agency may not approve the activity until the consistency process is complete.

If OCRM does not approve the Council's request, the applicant does not need to submit a consistency certification. If OCRM approves the Council's decision, the applicant shall submit an amended application to the federal agency and the Council containing a consistency certification and necessary supporting information. Council concurrence may be presumed in the absence of a Council objection within 6 months from the identification of the need for a consistency review or within 3 months from the receipt of the applicant's consistency certification and information, whichever period terminates last. 15 CFR § 930.54 (d) &(e).

Necessary Data and Information:
The applicant shall provide a statement of consistency in its permit or license application to the federal agency. The consistency certification shall read: "The proposed activity complies with the Rhode Island's approved Coastal Resource Management Program and will be conducted in a manner consistent with such Program." A copy of the statement shall also be provided to the Council along with supporting information. 15 CFR § 930.57. Applicants are directed to the matrices and §300 of the RICRMP as well as any applicable SAM Plan to determine whether a proposed activity is allowable, the level of review to which it is subject, and applicable policies, standards and information requirements. Further, applicants are encouraged to consult with the Council when preparing the information and data package to ensure consistency and avoid unnecessary delay. 15 CFR § 930.56. At a minimum, the following information must be provided:

° A detailed description of the site, nature, and extent of the proposed activity and its associated facilities and services, their effects on any coastal use or resource, and the comprehensive data and information sufficient to support the agency's certification including maps, diagrams, technical data and other relevant material. 15 CFR § 930.58 (a) (1).

° A brief assessment relating the probable coastal zone effects of the proposal and its associated facilities to the relevant elements of the RICRMP. 15 CFR § 930.58 (b) (c).

° Based upon the above assessment, an analysis indicating that the proposed activity, associated facilities and their effects are consistent with the RICRMP. 15 CFR § 930.58 (a) (4).

Whenever a proposed federal activity requires a CRMC Assent, the informational requirements for federal consistency shall be the same as, and will be satisfied by, the requirements for the CRMC Assent. 15 CFR § 930.59.

Council Review and Response:
Each consistency certification shall be reviewed by the Council. The Council will notify appropriate federal permit or license issuing agencies and applicants within 6 months from receipt of the consistency certification. 15 CFR § 930.64 (a). Whether the Council concurs with the consistency certification or not, it will notify the federal agency and the applicant of its decision as early as possible. Also, in cases where multiple federal permits or licenses are required, the Council will work with the applicant and relevant federal agencies to facilitate the review process. The Council shall review the applicant's consistency certification for adequacy and shall request from the applicant in writing any required additional information. The request for information in addition to that described above (Necessary Data and Information) will not stop this six month review period. CRMC concurrence is conclusively presumed in the absence of objection within 6 months following the commencement of Council review (i.e., receipt of a completed application). 15 CFR § 930.63 Where the Council finds issuance of a federal permit and/or license to be inconsistent with applicable

provisions of the RICRMP or where it finds that insufficient information to make such a determination has been submitted by the applicant, it will indicate the nature of the inconsistency with reference to specific provisions of the RICRMP and notify the federal permit or license issuing agency, the applicant and the Secretary of Commerce. Alternatives to, or modifications of, the proposed action which would render it consistent with the RICRMP will be recommended. 15 CFR § 930.64 (b).

**Conflict Resolution**

Upon receipt of a CRMC objection, the federal agency may not grant the federal license or permit, except where the applicant appeals the objection to the Secretary of Commerce, and the Secretary overrides the CRMC's objection. Information pertaining to Secretarial appeals is located in Section 400 and 15 CFR part 930, subpart H. However, the CRMC will make every effort to work with the relevant federal agency and the applicant to reach an agreement which would allow the activity to be conducted in a manner consistent with the RICRMP. Specific dispute settlement mechanisms are described in the last section of this manual.

**Monitoring for Continuing Consistency**

In the event that the Council determines that an activity previously determined to be consistent with the RICRMP is not being conducted in such a manner or is having such effects on any coastal use or resource so as to be inconsistent with the Program, it shall request the federal agency permitting or licensing the activity to take appropriate remedial action. The request shall include necessary supporting information and a proposal for the recommended remedial action. A copy of the request will be sent to the applicant. The Council may request secretarial mediation in accordance with 15 CFR part 930, subpart G (see section 400) if the disagreement is not resolved within a reasonable time.

## Outer Continental Shelf Exploration, Development, and Production Activities

A person applying to the federal government for outer continental shelf (OCS) exploration, development and production activities needs to follow the requirements of CZMA section 307(c)(3)(b)(16 USC §1456(c)(3)(B)) and 15 CFR part 930, subpart E.

Any person who submits to the Department of the Interior an OCS plan for the exploration of, or development of, or production from, any area leased under the Outer Continental Shelf Lands Act, must certify to the CRMC that any activity proposed in such OCS plans which require any federal licenses, permits, or other approvals, will be conducted in a manner consistent with the RICRMP. The process and requirements for this section generally mirror those of federally licensed or permitted activities discussed above. In addition, the CRMC has specific informational requirements pertaining to consistency certifications for OCS exploration, development and production activities which can be obtained by contacting the CRMC.

## Federal Assistance to State and Local Governments

A state or local government agency (or any related public entity) applying for federal financial assistance needs to follow requirements of CZMA section 307(d)(16 USC §1456(d)) and CFR part 930, subpart F. The Rhode Island counterpart to these regulations is contained in RICRMP section 400.

The federal agency may not grant any federal assistance if the CRMC objects to a state or local government agency's application for federal financial assistance. A list of federal financial assistance programs which

may support activities subject to these requirements is contained in Table 3 (see RICRMP section 400, Appendix E). However, the exclusion from this list of particular federal funding program does not relieve the state agency or local government applicant from complying with the federal consistency requirement if the activity to be funded could affect any coastal use or resource.

**Review Process**

The CRMC review is conducted pursuant to E.O. 12372 (see page 6). Activities supported by federal assistance programs listed in Table 3 of Appendix E are subject to review under the consistency requirement: that is, federal agencies providing assistance must not merely accommodate or explain inconsistencies, but may not provide the requested assistance until inconsistencies with the RICRMP have been resolved. Further, if the CRMC is informed of a request for financial assistance to support an activity which it considers to be subject to the federal consistency requirement, but which is not listed in Table 3, the CRMC can advise the federal agency of its intent to review the application under federal consistency. Generally, the CRMC is notified of an application for federal financial assistance by any unit of state or local government through Rhode Island's Intergovernmental Review Process established under E.O. 12372 and E.O. 83-11. Where the federal agency disagrees with the CRMC's intent to review, it may request mediation by the Secretary of Commerce.

The CRMC is then given 15 days to provide comments concerning the application. Within this time the CRMC may concur with or object to the consistency notice, or request additional information. Where the CRMC objects to the granting of financial assistance due to the proposed activity's effects on any coastal use or resource, the CRMC will assist the applicant in altering the proposed activity so as to be consistent with the RICRMP.

**Conflict Resolution**

In the event that the CRMC objects to the awarding of federal financial assistance to any unit of state or local government, the CRMC will notify the applicant and the relevant federal agency. The CRMC will then make every effort to resolve inconsistencies with the applicant and the federal agency. If no resolution can be agreed upon, the applicant may, within thirty days of receiving notice of this objection, file a notice of appeal with the Secretary of Commerce. Procedures for such an appeal are discussed below.

**Monitoring of Activities for Continuing Consistency**

In the event that the Council determines that an activity previously determined to be consistent with RICRMP is not being conducted in such a manner or is having such effects on the coastal zone so as to be inconsistent with the Program, it will request the federal granting agency take appropriate remedial action. The request will include necessary supporting information and a proposal for the recommended remedial action. A copy of the request will be sent to the applicant 15 CFR § 930.100.

**Dispute Settlement Mechanisms**

**Mediation by the Secretary of Commerce**

In the event of a serious disagreement between the CRMC and a federal agency over any aspect of the federal consistency requirement, either party may request that the Secretary of Commerce formally mediate the dispute. All parties must agree to participate in the mediation, but agreement to participate is non-binding and either party may withdraw from the mediation at any time. Secretarial mediation is a formal process that

includes a public hearing, submission of written information, and meetings between the parties, upon which a hearing officer, appointed by the Secretary, will propose a solution.

Secretarial mediation may be used for disputes under any of the four consistency review types: direct federal activities, federally licensed or permitted activities, OCS license and permit activities, and federally funded activities. However, the request can only be made by the head of a federal agency or the Governor or CRMC. Exhaustion of the mediation process is not a prerequisite to judicial review. Specific policies and requirements for secretarial mediation are contained in Section 400 of the RICRMP.

**Informal Negotiation of Disputes**

The availability of formal secretarial mediation or litigation does not preclude the parties from informally negotiating the dispute through OCRM or another facilitator. OCRM has successfully filled the negotiator role in the past and most disputes are addressed through this method. Either party may request OCRM involvement, and of course participation is non-binding.

**Appeals to the Secretary of Commerce**

An applicant for a federal license or permit, including those described in detail in an OCS plan, or a federal funding activity, may appeal the CRMC's objection to the Secretary of Commerce. The Secretary may override the state's objection because the activity is consistent with the objectives or purposes of the CZMA, or is necessary in the interest of national security. The Secretary will only review the appeals on these grounds. The Secretary will not review other factors, e.g., whether the objection is in accordance with the state law. However, the Secretary of Commerce does look to see that the objections are based on enforceable policies. If the objection is based on enforceable policies, then Commerce assumes the objection is valid. If the Secretary overrides the state's objection, the authorizing federal agency may permit or fund the activity. A secretarial override does not obviate the need for an applicant to obtain any state required permits or authorization. The Secretarial appeal is an administrative remedy and generally must be sought prior to litigation. The appeal process takes approximately one year.

**Rhode Island Coastal Resources Management Program**
**Section 400. Federal Consistency**

**A. Introduction**

The following sections detail the Council's federal consistency requirements and procedures. They have been derived directly from federal regulations implementing the Coastal Zone Management Act (CZMA) (16 USC §§ 1451-1464) and are provided in the Code of Federal Regulations (15 CFR part 930). Any changes to those regulations supersede Rhode Island's state-level counterpart as contained in the following sections. The Council's *Federal Consistency Manual* contains background and explanation on the CRMC's federal consistency process and requirements and should be consulted for more information.

The federal consistency requirement, as provided for in section 307 of the CZMA, is an important function of state coastal management programs. Under section 307, federal agencies conducting an activity which is reasonably likely to affect any land or water use or natural resource of the coastal zone, are required to do so in a manner consistent, to the maximum extent practicable, with the enforceable policies of the state's coastal management program developed and implemented under the CZMA. Enforceable policies are those policies which are legally binding through constitutional provisions, laws, regulations, land use plans, ordinances, or judicial or administrative decisions, by which a State exerts control over private and public land and water uses and natural resources in the coastal zone. 16 USC § 1453(6a). Federal permits and licenses, including those associated with outer continental shelf (OCS) plans, and grant-in-aid programs to local or state governments and related public entities, which are reasonably likely to affect any land or water use or natural resource of the coastal zone must also be consistent with the state's coastal management program.

As part of Rhode Island's coastal management program, both the geographical scope of the state's coastal zone and the enforceable policies applicable to the coastal zone are defined and have been approved by the National Oceanic and Atmospheric Administration (NOAA). Rhode Island's approved coastal zone, for the purposes of exercising the federal consistency requirement of the CZMA, includes the area encompassed within the state's seaward jurisdiction (three miles) to the inland boundaries of the state's 21 coastal communities. The Rhode Island Coastal Resources Management Program (RICRMP), which includes this "Redbook," the Council's Special Area Management Plans, the "Energy Amendments" which address power generation facilities statewide, adopted State Guide Plan elements, and their implementing tools, together make up Rhode Island's federally approved coastal program. Those provisions of these programmatic documents and regulations which meet the definition of enforceable policies under the CZMA constitute the enforceable policies with which federal activities must be consistent in Rhode Island.

In order to assist federal agencies in determining whether a proposed activity is subject to the federal consistency requirement, and in accordance with the CZMA, the CRMC has listed activities, both direct and indirect, reasonably likely to affect any land or water use or natural resource of the coastal zone (Tables 1, 2 and 3). It is important to note that these lists are not exhaustive and that <u>any</u> federal activity reasonably likely to affect any land or water use or natural resource of the coastal zone may be subject to the federal consistency requirement. Therefore, any federal activity, whether direct or indirect, which is reasonably likely to affect any land or water use or natural resource of any of the state's 21 coastal communities is subject to consistency with the enforceable policies of the RICRMP.

There are some subtle yet practical differences in the federal consistency process and its associated terminology as it applies to direct and indirect federal activities. As an example, federal agencies conducting any direct federal activity are required to make a "determination" of consistency with the enforceable policies of the RICRMP with which the CRMC can agree or disagree. Applicants for federal permits or licenses and applicants for federal assistance, on the other hand, are required to make a "certification" of consistency with the RICRMP to the federal agency providing the license, permit or financial support, and to the CRMC. The

CRMC may either concur with or object to the certification. The proceeding sections further detail these distinctions and provide the specific requirements and responsibilities associated with the federal consistency requirement.

Many indirect federal activities because of their location (see RICRMP Part Two: Areas Under Council Jurisdiction and applicable Special Area Management (SAM) Plans) are subject to both the CRMC permit process as well as federal consistency requirements. (RICRMP Sections 200 and 300 and applicable SAM Plans provide specific guidance on permit requirements.) The CRMC has taken steps to ensure that these reviews are not duplicative, yet they remain distinct. With the exception of activities taking place on federal lands, a CRMC Assent is required for indirect federal activities taking place within the Council's permit jurisdiction.

Where no Council Assent is required for an activity subject to the federal consistency requirement, the Chair or Executive Director of the Council will make the final decision regarding the proposed activity's consistency with applicable provisions of the RICRMP. In so doing, the Chair or Executive Director may seek the advice of the Planning and Procedures Subcommittee on federal consistency reviews.

There is no categorical exemption for any direct federal activity. Any direct federal activity that is reasonably likely to affect the coastal zone must be fully consistent with the RICRMP except where compliance is prohibited based on the requirements of existing law applicable to the federal agency's operation. Federal agencies may also deviate from full consistency when unforeseen circumstances, such as an emergency situation, prevent complete adherence.

All consistency determinations and certifications should be sent to

Federal Consistency Coordinator
Coastal Resources Management Council
Oliver H. Stedman Government Center
4808 Tower Hill Rd.
Wakefield, RI 02879-1900

**400.1 Direct Federal Activities**

**A. Definitions**

1. Direct federal activities are activities, including development projects, performed by a federal agency, or contractor on behalf of the federal agency. Examples of such actions include: installation of mooring buoys by the National Park Service; fisheries management plans by the National Marine Fisheries Service; naval exercises; the disposal of excess federal land by the General Services Administration; U.S. Army Corps of Engineers (Corps) navigational dredging and beach renourishment projects; OCS oil and gas lease sales by the Minerals Management Service; improvements to military bases; and naval disposal of radioactive or hazardous waste performed by a private contractor.

**B. Policies**

1. Federal agencies proposing an activity must follow the requirements of CZMA section 307(c)(1) and (2), 16 USC 1456 (c)(1), (2) and 15 CFR part 930, subpart C.

2. Federal agencies proposing an activity are encouraged to contact the Council early in the planning process in order to minimize conflicts and delays.

3. Federal agencies shall notify the Council of all proposed activities and development projects which are reasonably likely to affect any land or water use or natural resource of Rhode Island's coastal zone. Notification must be in writing and submitted at the earliest practicable time, but at a minimum of 90 days prior to the stage at which alternatives to the proposed action may no longer be reasonably considered.

4. Listed activities - Any federal agency proposing an activity listed on Table 1 should provide a determination of consistency with the applicable enforceable policies of the RICRMP to the Council.

5. Unlisted activities - In the event that the Council identifies an activity or proposed activity which is reasonably likely to affect any land or water use or natural resource of the coastal zone, but which is not listed, the Council will notify the appropriate federal agency within 45 days from receipt of notice of the unlisted federal activity that, in the Council's opinion, the activity requires a consistency determination. If the federal agency decides that a consistency determination is not required for the activity in question, i.e., no effects on any land or water use or natural resource of the coastal zone are reasonably likely, then the agency shall provide the Council with a negative determination at least 90 days before final approval of the activity unless the Council and the federal agency agree to an alternate schedule.

6. Repeated and Phased activities - Where a federal agency will be conducting incremental actions that are repetitive or periodic, substantially similar in nature, and do not affect any land or water use or natural resource of Rhode Island's coastal zone, when performed separately, the federal agency may develop a general consistency determination. However, the federal agency must consider, when making any determination, potential cumulative and secondary effects resulting from the activity(ies).

In cases where major federal decisions related to a proposed development project will be made in phases based upon developing information, a consistency determination will be required for each major decision.

7. Where a state permit is a prerequisite for Council review of a proposed activity and the permit program is part of the enforceable policies of the RICRMP, the federal agency shall either obtain the required approvals or, in cases where the federal agency is not required to obtain the state permit, satisfy the policies and standards required by those programs.

**C. Information Requirements**

1. The consistency determination must indicate the federal agency’s assessment of consistency, or lack thereof, with applicable provisions of the RICRMP. A determination concerning the consistency of a proposed federal activity must be accompanied by data and information sufficient to support the determination of the federal agency. The information should address any reasonably likely effects and consistency with specific the policies, standards, and requirements contained in the RICRMP, any applicable SAM Plan, and, when appropriate, applicable elements of the *State Guide Plan* as specifically as possible to ensure a timely and efficient consistency review.

The consistency determination will be reviewed at a level equal to the review to which the proposed activity would be subject as a CRMC permit application. Agencies are directed to the matrices and §300 of the RICRMP as well as any applicable SAM Plan to determine whether a proposed activity is allowable, the level of review to which it is subject, and specific policies, standards and information requirements.

2. Where a CRMC permit would be required for the proposed activity if it were being conducted by a private entity, the informational requirements for a consistency review are the same as those required for a permit review.

3. The following is the minimum information necessary:

a. A detailed description of the site, nature, and extent of the proposed activity and its associated facilities and services, their coastal zone effects, and the comprehensive data and information sufficient to support the agency's certification including appropriate facility development plans, engineering drawings, maps, diagrams, technical data, and other relevant material.

b. A brief assessment indicating how the activity will be undertaken in a manner consistent to the maximum extent practicable with the RICRMP.

c. Based upon the above assessment, a brief analysis indicating that the proposed activity, associated facilities and their effects are consistent to the maximum extent practicable with the RICRMP.

4. If a federal agency asserts that compliance with the RICRMP is prohibited, it shall clearly describe in its consistency determination the legal authority which it believes limits the federal agency's ability to comply with the applicable requirements of the RICRMP.

5. In cases where a federal agency may be exempt from obtaining other state permits which are a prerequisite for Council review of a proposed activity, the federal agency shall furnish the CRMC with data and information adequate to ensure that the requirements of any prerequisite regulatory program have been met.

**D. Council Review**

1. Federal agencies shall provide the Council with a consistency determination no later than 90 days before final action on the proposed activity unless the federal agency and the Council have agreed to an alternate schedule.

2. The Council will inform the federal agency of its agreement or disagreement with the federal agency's consistency determination at the earliest practicable time. The Council will respond to all consistency determinations within 45 days of receiving notification of the proposed activity. Federal agencies may presume agreement with the determination after 45 days unless the Council has requested an extension of the review period. Federal agencies shall grant one extension of the review period of 15 days or less. The federal agency and the Council may agree to a longer review period. In no case shall the federal agency commence an activity within 90 days of providing the Council with a consistency determination unless approved by the Council.

3. Where the Council disagrees with an agency's determination of consistency it will indicate the nature of its objection with specific reference to applicable policies, standards, and requirements contained in the RICRMP. It will further recommend alternatives to or modifications of the proposed action that would render it consistent to the maximum extent practicable. A copy of such notification shall be forwarded to the Secretary of Commerce. If the disagreement is based upon a finding that the agency has failed to provide sufficient information, the Council shall describe the nature of and the need for such information. A copy of such notification shall be forwarded to the Secretary of Commerce.

**E. Prerequisites**

1. Where the Council requires other state permits as a prerequisite for application review, and the federal agency is required to obtain the state permit, the federal agency shall obtain those permits prior to submitting its consistency determination.

2. In cases where the federal agency may be exempt from obtaining other state permits which are a prerequisite for Council review of a proposed activity, and which are enforceable components of the RICRMP, federal agencies shall furnish the CRMC with data and information adequate to ensure that the requirements of any prerequisite regulatory program have been met.

**F. Conflict Resolution**

1. It is the Council's policy to resolve state-federal disagreements through direct negotiation and consultation with the affected agency in the event of the Council's disagreement with a federal agency's consistency determination.

2. If the conflict persists, the federal agency or the Council, may request formal mediation through the Secretary of Commerce as provided for in 15 CFR part 930, subpart G or informal negotiation through NOAA's Office of Ocean and Coastal Resource Management (OCRM).

**400.2 Federal License or Permit Activities**
**A. Definitions**

1. Federal license or permit activities means any form of approval required by a federal agency (but does not include approvals to other federal agencies). Examples of such actions are: activities requiring Corps 404 permits; Interstate Commerce Commission water carrier licenses; Corps permits for use of ocean dump-sites; Nuclear Regulatory Commission permits for nuclear power plants; and delicensing of nuclear facilities by the Nuclear Regulatory Commission.

**B. Policies**

1. A private individual or business, a state or local government agency, or any other type of non-federal entity, applying to the federal government for a required permit or license or any other type of an approval or authorization, must follow the requirements of CZMA section 307(c)(3)(A)(16 U.S.C. § 1456(c)(3)(A)) and 15 CFR part 930, subpart D.

2. Applicants for federal licenses or permits are encouraged to contact the Council early in the planning process in order to minimize conflicts and delays.

3. Applicants for federal licenses, permits, or other approvals must certify to the Council that the proposed activity, whether in or outside of the coastal zone, if reasonably likely to affect any land or water use or natural resource of the coastal zone, will be conducted in a manner consistent with the enforceable policies of the RICRMP.

4. Listed activities - Applicants for federal licenses, permits or other approvals for activities occurring in the coastal zone and listed in Table 2 must submit a consistency certification to the approving federal agency and the Council. In addition, applicants for certain activities identified in section 320 of the RICRMP, regardless of their location within the State, must submit a consistency certification to the approving federal agency and the Council.

5. Unlisted activities - In the event that the Council identifies an unlisted activity for which a federal license or permit is required and which is reasonably likely to affect any land or water use or natural resource of the coastal zone, the Council will notify the applicant, the relevant federal agency and OCRM of its intent to review the activity for consistency with the enforceable policies of the RICRMP.

6. In cases where a proposed activity requires a CRMC Assent, the issuance of that Assent shall constitute Council concurrence with the applicant's consistency certification.

7. Where any other state or local permit is a prerequisite for Council review of a proposed activity, the applicant shall first obtain the required approvals or, in cases where the applicant is exempt from obtaining any prerequisite permit, satisfy the policies and standards required by those programs.

8. No federal agency may issue a license, permit or other approval until: the Council has concurred with the applicant's consistency certification in writing or concurrence has been conclusively presumed six months after the Council receives the consistency certification; or, through the CZMA appeals process, the Secretary of Commerce has determined either that the activity is consistent with the CZMA, or that the activity is necessary in the interest of national security.

**C. Information Requirements**

1. The applicant shall provide a statement of consistency in its federal permit or license application. The consistency certification shall read: "The proposed activity complies with the Rhode Island's approved Coastal Resource Management Program and will be conducted in a manner consistent with such Program." A copy of the statement shall also be provided to the Council along with supporting information.

2. Where a CRMC permit is required for the proposed activity, the informational requirements for a consistency review will be satisfied by those of the permit review.

3. The following is the minimum necessary information:

a. A detailed description of the site, nature, and extent of the proposed activity and its associated facilities and services, their coastal zone effects, and the comprehensive data and information sufficient to support the applicant's certification including maps, diagrams, technical data and other relevant material.

b. A brief assessment relating the probable coastal zone effects of the proposal and its associated facilities to the relevant elements of the RICRMP.

c. Based upon the above assessment, an analysis indicating that the proposed activity, associated facilities and their effects are consistent with the RICRMP.

4. In cases where an applicant may be exempt from obtaining other state permits which are enforceable components of the RICRMP and are a prerequisite for Council review of a proposed activity, the applicant shall furnish the CRMC with data and information adequate to ensure that the requirements of any prerequisite regulatory program have been met.

**D. Council Review**

1. Council review of the proposed activity shall commence upon receipt of the consistency certification and necessary data and information. The Council shall respond to all consistency certifications within six months or concurrence can be conclusively presumed.

2. The Council may object to a consistency certification within six months following commencement of its review. The Council's objection may be based either on a failure to comply with the enforceable policies of the RICRMP or on a failure to provide information necessary to assess the proposed activity in spite of the Council's request to do so. In cases where the Council's objection is based on a failure to comply with the enforceable policies of the RICRMP, the Council will provide the applicant with a description of how the

proposed activity is inconsistent and alternative measures, if they exist, which would render the activity consistent. In cases where the objection is based on a lack of sufficient information, the Council will describe the information necessary for its review. The Council will notify the applicant, federal agency and OCRM of its objection to the consistency certification.

3. In cases where the Council requests a consistency certification for an unlisted federal license, permit or other approval (see Table 2), the Council will notify the applicant, the federal agency and OCRM of its request within 30 days of receiving notice of the activity. The applicant and the federal agency have 15 days from receipt of the Council's notification to provide comments to OCRM. OCRM will then make a decision on the Council's jurisdiction based on whether the activity is reasonably likely to affect any land or water use or natural resource of the coastal zone.

**E. Prerequisites**

1. Where the Council requires other state permits as a prerequisite for application review, the applicant shall obtain those permits prior to submitting its consistency certification.

2. In cases where the applicant may be exempt from obtaining other state permits which are a prerequisite for Council review of a proposed activity, and which are enforceable components of the RICRMP, applicants shall furnish the CRMC with data and information adequate to ensure that the requirements of any prerequisite regulatory program have been met.

**F. Conflict Resolution**

1. In cases where the Council objects to an applicant's consistency certification, the Council will make every effort to work with the relevant federal agency and the applicant to reach an agreement which would allow the activity to be conducted in a manner consistent with the RICRMP.

2. If the conflict persists, the federal agency or the Council may request formal mediation through the Secretary of Commerce as provided for in 15 CFR part 930, subpart G or informal negotiation through NOAA's Office of Ocean and Coastal Resource Management (OCRM).

3. An applicant, within 30 days of receipt of the Council's objection, may appeal the Council's objection to the Secretary of Commerce as provided for in 15 CFR part 930, subpart H.

**400.3 Outer Continental Shelf Exploration, Development and Production Activities**

**A. Definitions**

1. Outer Continental Shelf Exploration, Development and Production Activities are those activities associated with the exploration or development of, or production from, any area which has been leased under the Outer Continental Shelf Lands Act (43 USC 1331 et seq.).

**B. Policies**

1. Any private person or business applying to the federal government for outer continental shelf (OCS) exploration, development and production activities must follow the requirements of CZMA section 307(c)(3)(B), (16 USC §1456(c)(3)(B) and 15 CFR part 930, subpart E.

2. Any person who submits to the Department of the Interior an OCS plan for the exploration of, or development of, or production from, any area leased under the Outer Continental Shelf Lands Act, must certify to the CRMC that any activity proposed in such OCS plans which require any federal licenses, permits, or other approvals, will be conducted in a manner consistent with the RICRMP.

3. In general, the Council's policies, review procedures and conflict resolution mechanisms for proposed OSC activities mirror those required for federal license or permit activities provided in the previous section. However, due to the unique nature of these activities, information necessary to assess the consistency certification may vary. Applicants for such activities are therefore encouraged to contact the Council early in the planning process in order to minimize conflicts and delays.

## 400.4 Federal Assistance to State and Local Governments

### A. Definitions

1. Federal Assistance to State and Local Governments means assistance provided under a federal program to any unit of state or local government or related public entity through grant or contractual arrangements, loans, subsidies, guarantees, insurance or other form of financial aid.

### B. Policies

1. A state or local government agency, or related public entity, applying for federal financial assistance must follow the requirements of CZMA section 307(d)(16 USC § 1456(d)) and 15 CFR part 930, subpart F.

2. The Council monitors federal assistance programs through Rhode Island's Intergovernmental Review Process established under E.O. 12372 and E.O. 83-11. However, any federal assistance program which is reasonably likely to affect any land or water use or natural resource of the coastal zone is subject to the consistency requirement.

3. Listed programs - Those federal assistance programs listed in Table 3 and supporting activities within the coastal zone are subject to the consistency requirement.

4. Unlisted programs - In the event that the Council identifies a proposed project supported by federal assistance, which the Council has determined is reasonably likely to affect any land or water use or natural resource of the coastal zone, regardless of whether the assistance program is listed in Table 3 and of the location of the proposed project, the Council shall notify the applicant agency, the supporting federal agency and NOAA that the Council will review the activity for consistency.

### C. Council Review

1. The Council will review applications for federal assistance for consistency with the RICRMP in accordance with the procedures developed under the intergovernmental review process implemented under Executive Order 12372 and Executive Order 83-11.

2. If the Council does not object to the proposed activity in accordance with the procedures developed under the intergovernmental review process, the supporting federal agency may grant the federal assistance.

3. The Council may object to the proposed project based either on a failure to comply with the enforceable policies of the RICRMP or on a failure to provide information necessary to assess the proposed activity in spite of the Council's request to do so. In cases where the Council's objection is based on a failure to comply with the enforceable policies of the RICRMP, the Council will provide the applicant with a description of

how the proposed activity is inconsistent and alternative measures, if they exist, which would render the proposed project consistent. In cases where the objection is based on a lack of sufficient information, the Council will describe the information necessary for its review. The Council will notify the applicant agency, the federal agency and OCRM of its objection.

**D. Conflict Resolution**

1. In cases where the Council objects to a proposed project, the Council will make every effort to work with the relevant federal agency and the agency seeking federal assistance to reach an agreement which would allow the activity to be conducted in a manner consistent with the RICRMP.
2. If the conflict persists, the federal agency or the Council may request mediation through the Secretary of Commerce as provided for in 15 CFR part 930, subpart G or informal negotiation through NOAA's Office of Ocean and Coastal Resource Management.

3. In no case shall the federal agency grant assistance for a proposed project to which the Council has objected unless the applicant appeals the Council's objection to the Secretary of Commerce and the Secretary overrides the Council's objection.

**Table 1**
**Direct Federal Activities**

The Council has determined that the following activities are reasonably likely to affect coastal uses or resources. Federal agencies or contractors undertaking these activities on behalf of a federal agency are required to submit a negative determination or a consistency determination to the CRMC if the federal agency determines that the activity is reasonably to affect any coastal use or resource. This list is not exhaustive and does not obviate the responsibility of federal agencies to submit a consistency determination to the CRMC for any direct activity which is reasonably likely to affect any coastal use or resource.

**Activities taking place within any coastal community**

- Filling, removing, or grading of shoreline features
- Residential, commercial, industrial, and recreational structures
- Recreational boating facilities
- Mooring and anchoring of houseboats and floating businesses
- Treatment of sewage and stormwater
- Construction of shoreline protection facilities
- Energy-related activities and structures
- Dredging and dredge material disposal
- Filling in tidal waters
- Aquaculture
- Mosquito Ditching
- Construction of public roadways, bridges, parking lots, railroad lines and airports
- Maintenance of structures
- Alterations to freshwater flows to tidal waters and water bodies and coastal ponds

**Activities taking place anywhere within the state**

- Power generating plants (excluding facilities of less than a 40-megawatt capacity)
- Petroleum storage facilities (excluding storage facilities of less than 2,400-barrel capacity)
- Chemical or petroleum processing facilities
- Minerals extraction
- Sewage treatment and disposal facilities (excluding individual sewage disposal systems)
- Solid waste disposal facilities
- Desalination plants

**Management Plans**

- Fisheries Management Plans developed under the Magnuson Fisheries Conservation and Management Act
- Oil Spill Response Plans

**Miscellaneous Direct Federal Activities**

- Land acquisition, transfer and disposal
- Site selection plans for ocean disposal of dredged materials
- Revisions to Flood Insurance Study and National Flood Insurance maps

**Table 2**
**Federal License or Permit Activities**

The Council has determined that activities requiring the following federal licenses or permits are reasonably likely to affect coastal uses or resources. Applicants for any of these licenses or permits are required to submit a certification of consistency to the licensing or permitting federal agency and the CRMC. This list is not exhaustive and does not obviate the responsibility of applicants for federal approvals to submit a consistency certification for any activity reasonably likely to affect any coastal use or resource to the CRMC.

**Department of Defense - Army Corp of Engineers**
° Permits and licenses for the discharge of dredged or fill material into the waters and adjacent wetlands of the U.S. pursuant to Sec. 404 of the Federal Water Pollution Act of 1972, as amended

° Permits to regulate the obstruction or alteration of, the construction of any structure in or over, and the excavation from or depositing of material in any navigable waters of the U.S. pursuant to sections 9 and 10 of the Rivers and Harbors Act of 1899

° Permits and licenses to regulate transportation of dredged material for the purpose of dumping it in navigable waters pursuant to Sec. 103 of the Marine Protection, Research and Sanctuaries Act of 1972.

° Permits authorizing artificial islands or fixed structures on the outer continental shelf pursuant to section 4(F) of the Outer Continental Shelf Lands Act and amendment

° Permits authorizing the temporary occupation of seawall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the U.S. pursuant to section 14 of the Rivers and Harbors Act of 1899

° Approvals of plans for improvements made at private expense under Army Corps of Engineers supervision pursuant to the Rivers and Harbors Act of 1899

**Department of Transportation - U.S. Coast Guard**
° Approval of plans for the construction and modification of bridges, causeways, and pipelines over navigable waters pursuant to 33 USC 401, 491 - 507 and 525 - 534;

°Licenses for the construction and operation of deepwater ports pursuant to the Deepwater Port Act of 1974 (33 USC 150).

° Approvals of private aids to navigation pursuant to 14 USC 83

° Permits and authorizations for the handling of dangerous cargo by vessels in U.S. ports pursuant to 46 USC 170

° Permits for the handling of flammable or combustible liquids in U.S. ports pursuant to 46 USC 391(a)

**Environmental Protection Agency**
° Permits authorizing the discharges pursuant to section 402 of the Federal Water Pollution Control Act of 1972, as amended (the National Pollution Discharge Elimination System)

° Permits authorizing any discharge, including sewage sludge, into navigable waters pursuant to sections 401, 402 (33 USC 1341 1342)

° Permits and authorization for underground injections pursuant to section 1421 of the Safe Drinking Water Act (42 USC Chapter 82)

° Permit sources and waivers of compliance allowing extensions of time to meet air quality standards under section 112(c)(1) of the Clean Air Act of 1972, as amended

° Exemptions granted under the Clean Air Act for stationary sources

° Permits required under the Resource Conservation and Recovery Act of 1980 and its amendments for facilities that store, treat or dispose hazardous wastes

° Permits required pursuant to section 405 of Clean Air Act of 1972, as amended

° Permits for the transportation of dumping material other than dredged material in navigable waters pursuant to Sec 102 of the Marine Protection, Research and Sanctuaries Act of 1972

° Aquaculture pursuant to Section 318 of the Marine Protection, Research and Sanctuaries Act of 1972

**Department of the Interior**

° Permits and licenses for drilling and mining and related facilities on public lands

° Permits for pipeline rights-of-way on public lands and the outer continental shelf

° Permits and licenses for rights-of-way on public lands

° Endangered species permits pursuant to the Endangered Species Act (16 USC 1539)

° Permits related to the taking of marine mammals pursuant to the Marine Mammals Protection Act (16 USC 1361-1407)

° Permits for the granting of outer continental shelf corridor rights-of-way (43 USC 931(c))

**Department of Energy**

° Permits related the regulation of gas pipelines, licensing of import or export of gas pursuant to the Natural Gas Act (15 USC 717, 717(b))

° permits and approvals related to the construction and operation of LNG import/export marine terminals pursuant to the Natural Gas Act (15 USC 717f(c))

° Permission and approval required for the abandonment of natural gas pipeline facilities under section 7(b) of the Natural Gas Act (15 USC 717f(b))

**Nuclear Regulatory Commission**

° Permits and approvals related to the construction and operation of commercial nuclear reactors pursuant to the Atomic Energy Act of 1954 (including delicensing activities).

**Table 3**
**Federal Assistance to States and Territories**
**and Local Governments**

The Council has determined that the following federal assistance programs may support activities which are reasonably likely to affect any land or water use or natural resource of the coastal zone. The Council monitors these federal assistance programs through the Intergovernmental Review Process established under E.O. 12372 and E.O. 83-11. When a unit of state, territorial or local government applies for federal assistance to support an activity which is reasonably likely to affect any land or water use or natural resource of the coastal zone, the state, territorial or local government unit must provide the Council with a certification of consistency. This list is not exhaustive and does not obviate the responsibility of any unit of state, territorial or local government to submit a consistency certification to the CRMC for any federally supported activity reasonably likely to affect any land or water use or natural resource of the coastal zone.

Resource Conservation and Development Loans
Soil and Water Loans
Water and Waste Disposal Systems for Rural Communities
Watershed Protection and Flood Prevention Loans
Industrial Development Grants
Rural Economic Development Loans and Grants
Resource Conservation and Development
Watershed Protection and Flood Prevention
Grants for Public Works and development Facilities
Support for Planning Organizations
Technical Assistance
Public Works Impact Projects
Sudden and Severe Economic Dislocation and Long-term Deterioration
Interjurisdictional Fisheries Act of 1986
Coastal Zone Management Program Administrative Grants
Coastal Zone Management Estuarine Research Reserves
Fisheries Research and Development Grants/Cooperative Agreements
Public Telecommunications Facilities - Construction and Planning
Aquatic Plant Control
Beach Erosion Control
Emergency Rehab of Flood Control, Federally Authorized Coastal Protection Works
Flood Plain Management Services
Protection of Essential Highways, Highway-Bridge Approaches, and Public Works
Flood Control Projects
Navigation Projects
Snagging and Clearing for Flood Control
Protecting, Clearing and Straightening Channels
Planning Assistance to States
Emergency Advanced Measures for Flood Prevention
Joint Military/Community Comprehensive Land Use Plans
Housing Development Grants
Anadromous Fish Conservation
Sport Fish Restoration
Wildlife Restoration
Endangered Species Conservation
National Water Resources Research Program

Historic Preservation Fund Grants-in-Aid
Outdoor Recreation - Acquisition, development and Planning
Disposal of Federal Surplus Real Estate Property for Parks, Recreation and Historic Monuments
Airport Improvement Program
Highway Planning and Construction
Development and Promotion of Ports and Intermodal Transportation
Construction Grants for Wastewater Treatment Works
Water Pollution Control - State and Interstate Program Support
Water Quality Management Planning
Business and Industrial Loans
Emergency Community Water Assistance Grants
Cooperative Forestry Assistance
State and Local Economic Development Planning
Mortgage Insurance, Rental and Cooperative Housing for Moderate Income and Elderly, Market Interest Rate
Mortgage Insurance, Rental Housing for the Elderly, Urban Renewal Areas
Public Indian Housing
Public Indian Housing, Comprehensive Improvement Assistance Program
Urban Mass Transportation Capital Improvement Grants, Capital and Operating Assistance Formula Grants
Public Transportation for Nonurbanized Areas
State Underground Water Source Protection
Water Pollution Control, Lake Restoration Cooperative Agreements
Environmental Protection Consolidated Grants-Program Support
Consolidated Pesticides Compliance Monitoring and Program Cooperative Agreement
Toxic Substance Compliance Monitoring Program
Hazardous Waste Management State Program Support
State Underground Storage Tanks Program
Underground Storage Tanks Trust
Solid Waste Management Assistance
Pollution Prevention Incentives for States
Conservation Reserve Program
Cooperative Extension Service
Sea Grant Support
Marine Sanctuary Program
Military Construction, Army National Guard
Military Base Re-Use Studies and Community Planning
Surplus Property Utilization
Community Development Block Grants/Entitlement Grants and State's Program
Rental Housing Rehabilitation
Indian Loans and Grants-Economic Development
Environmental Contaminants
Boating Safety Financial Assistance
Disposal of Federal Surplus Real Estate Property
Priorities and Allocations for Energy Programs and Projects
Nuclear Waste Disposal Siting
Environmental Restoration