EPSILON ASSOCIATES INC.
Engineers ■ Environmental Consultants

79001/permitting/401/RI/RIDEM_RICMRCc·rlt

July 16, 2004

Mr. Danni Goulet
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

Mr. Ron Gagnon
401 Water Quality Certification Coordinator
RI Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

PRINCIPALS
Theodore A. Barten, P.E.
Margaret B. Briggs
Michael E. Guski, CCM
amuel G. Mygatt, LLB.
Dale T. Raczynski, P.E.
Cindy Schlessinger
Lester B. Smith, Jr.
Victoria H. Fletcher, RLA

Subject: Weaver's Cove Energy, LLC Dredging Program
Section 401 Water Quality Certification and
Federal Coastal Zone Consistency Determination Applications

Dear Sirs:

On behalf of Weavers Cove Energy, LLC ("Weaver's Cove") (the "Applicant"), Epsilon Associates, Inc. ("Epsilon") is submitting applications for federal consistency certification from the Coastal Resources Management Council (CRMC) and Dredging / Section 401 Permit jointly issued by CRMC and the RI Department of Environmental Management (RIDEM). Four copies of these applications are enclosed.

The Weaver's Cove project team has had several introductory and pre-application meetings with representatives of the CRMC and RIDEM, including meetings held on October 30, 2002, July 28, 2003, December 8, 2003, and April 19, 2004. As discussed in those meetings, Weaver's Cove is developing a state-of-the-art liquefied natural gas ("LNG") Terminal on an approximately 73 acre brownfield site located on the Taunton River in the City of Fall River, Massachusetts. The Project requires dredging of the Mount Hope Bay – Fall River Federal navigation channel, a portion of which is located in Rhode Island State Waters, to facilitate access to the LNG Terminal site.

Weaver's Cove plans to dredge approximately 140,000 cubic yards (cy) of in-situ sediment from within the Rhode Island portion of the Federal channel (the planning volume total inclusive of the overdredge used for upland placement capacity planning

150 Main Street • Maynard, Massachusetts 01754-0700 ■ 978•897•7100 Fax 978•897•0099
www.epsilonassociates.com

purposes is approximately 230,000 cy). Using the most recent bathymetric surveys, the dredging footprint in Rhode Island covers an area of approximately 33 acres. Dredged material will be used as engineered fill to create landforms on the LNG Terminal site in Fall River, Massachusetts.

On December 19, 2003, Weaver's Cove and Mill River Pipeline, LLC ("Mill River") each submitted applications to the Federal Energy Regulatory Commission ("FERC") for authorizations to construct the Weaver's Cove LNG Terminal and Mill River pipeline laterals, respectively. Included with their applications was a comprehensive 13-part Environmental Report that reviewed all of the potential environmental impacts associated with the construction and operation of the proposed Project. As the lead Federal agency for this Project, the FERC is preparing an Environmental Impact Statement ("EIS") as required under the National Environmental Policy Act.

On March 18, 2004, Weaver's Cove and Mill River submitted applications to the US Army Corps of Engineers ("USACE") for approvals under Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act relative to the proposed dredging associated with the Project. The USACE is a cooperating agency with FERC in connection with the preparation of the EIS as it relates to the waterfront and dredging components of the Project. A copy of the Section 10/404 permit application has already been forwarded to RI CRMC and RI DEM.

In addition, Weaver's Cove and Mill River have submitted several permit applications to Massachusetts regulatory agencies, given that all of the Weaver's Cove and Mill River facilities will be constructed within Massachusetts. Notably, Weaver's Cove intends to utilize dredged material as engineered fill on the LNG Terminal site. Weaver's Cove has a contractual right to purchase the LNG Terminal site, and therefore has control over the proposed dredged material placement site. The permitting process for handling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details regarding existing and proposed conditions on the Fall River site are subject to the jurisdiction of the FERC and other Federal agencies, as well as the pertinent Massachusetts agencies for review and permitting. No authorization for these Massachusetts activities is required from the RI DEM/CRMC.

As part of the enclosed applications to conduct dredging in Rhode Island waters, Weaver's Cove requests approval to dredge the Federal channel at anytime during the year. The Applicant has modeled potential impacts of elevated suspended sediment and sediment deposition on marine organisms found in Mount Hope Bay. Modeling results demonstrate that through careful selection of dredging equipment, the concentration of suspended sediment and extent of deposition will not exceed thresholds that may be harmful to marine organisms and lifestages found in Mount Hope Bay, including winter flounder.

These results clearly demonstrate that the proposed dredging conducted throughout the year will be protective of marine resources and that time of year restrictions are not necessary.

This application includes the following information to assist the RI CRMC and RI DEM in its processing of the permits requested by Weaver's Cove:

1) The Application Form for State Assent for proposed dredging activities.

2) Federal Consistency Determination, including a detailed description of the Project's consistency with the Rhode Island Coastal Resources Management Plan.

3) Section 401 Water Quality Determination application, including a description of the approved sediment sampling plan, sediment chemistry results, and marine fisheries issues.

4) The Project's Dredging Program, which summarizes the proposed dredging activities, the results of the sediment sampling program, and dredged material disposal options. The Dredging Program Report was provided with the FERC and USACE Section 10/404 applications.

5) Applied Science Associates' ("ASA") "Suspended Sediment Modeling Report." The ASA report was also included in the Project's December 19, 2003 FERC application, in the Project's data request response submitted to FERC on February 5, 2004, and as an Attachment to the USACE Section 10/404 application.

6) An "Essential Fish Habitat Assessment" (with supplementary information dated March 4, 2004), which was also previously submitted with the FERC and USACE applications.

Also, attached to this cover letter is the State of Rhode Island Dredging Application Checklist, annotated with references to various components of the applications.

Weaver's Cove has provided an adequate level of project information directly into the Federal Coastal Zone Consistency Determination and 401 Water Quality Certification applications without referencing previously submitted applications to the FERC and USACE. However, as these applications are part of the Project's public record, we recommend that agency reviewers use those applications as background information as necessary.

The Weaver's Cove project team looks forward to continuing to work cooperatively with the RI CRMC and RI DEM in advancing this important energy infrastructure project. If you have any questions regarding this application, please do not hesitate to contact me at (978) 461-6212 or via email at lsmith@epsilonassociates.com.

Sincerely,

EPSILON ASSOCIATES, Inc.

Lester B. Smith, Jr.
Principal

cc: Ted Gehrig, Weaver's Cove Energy, LLC
Leon Bowdoin, Mill River Pipeline, LLC
Mark Cook, Esq, Baker Botts, LLP
John Partridge, Partridge Snow & Hahn
John Boehnert, Partridge Snow & Hahn
Daniel Crocker, Partridge Snow & Hahn
Santiago Alfageme, PE, Moffat & Nichol
Corry Platt, CEP, Concept2Delivery
Craig Swanson, PhD, PE, ASA
Ted Barten, PE, Epsilon Associates
Victoria Fletcher, Epsilon Associates

# State of Rhode Island Dredging Application Checklist

This application package checklist contains the information requirements needed by CRMC and RIDEM to process requests for all dredging and dredged material disposal activities.

## INSTRUCTIONS

1. All applicable sections of the application forms must be completed and signed.

2. The application forms must be submitted with all supporting documents, studies, reports, or additional information where required and applicable (five (5) copies total).

Four copies of the applications have been provided to the RIDEM and four copies have been provided to the CRMC, for a total of eight copies

## REQUIRED ENCLOSURES

1. Site plan which includes the overall project proposed. See Attachment B, Project Plans, Sheet 1
2. A project narrative describing the scope of the work and the anticipated coastal resources and water quality impacts. Address applicable RICRMP (primarily Sections 300.1 and 300.9) See CRMC App., Attachment A
3. "Local" approvals (in on-site/upland disposal proposed). See Footnote 1
4. Proof of property ownership N/A – Project located in Federal Navigation Channel
5. Application fee. CRMC Application fee provided at time of filing
6. Any additional items as outlined below.

### Site Plan Requirements

1. All site plans must be drawn to scale (1"=40' **required**). See Attachment B Site Plans
2. All site plans must be at least 8 ½" x 11" in size. See Attachment B Site Plans
3. All site plans must have all markings permanently fixed. See Attachment B Site Plans
4. All site plans must depict the following:
   (a) All Streets and Rights of Way within 50 feet of the property lines of the proposed activity with fixed reference points including utility poles and numbers, house numbers stone walls fences bulkheads parking lots, above ground and underground utilities, drainage structures or any other similar type infrastructure); N/A – Project located in Federal Navigation Channel
   (b) Magnetic North arrow; See Attachment B Site Plans
   (c) Entire property boundary with dimensions including easements and existing topography; N/A*
   (d) Locus plan using USGS quadrangle map; See Figure 1-2 of the CRMC App. Attachment A
   (e) Graphic and numerical scale; See Attachment B Site Plans
   (f) Legend explaining all markings and symbols; See Attachment B Site Plans
   (g) All site features that are under CRMC, DEM or ACOE jurisdiction which are typically, but not limited to wetland edge, perimeter wetlands, rivers, streams, coastal features. All features subject to jurisdiction that extend beyond the property line of site or limit of disturbance shall be shown for a distance of 100 feet (min) beyond the project or property line, which ever is greater. This shall also include all surface water bodies within 100 feet of the property. N/A – Project Located in Federal Navigation Channel and will not be within 100 feet of the RI shoreline
   (h) Separate plans that detail the Existing site conditions with contours at two foot intervals, and the Proposed site conditions with contour lines at two foot intervals (one foot if minor project) on the project datum; The existing plan(s) shall detail the groundwater

**ootnote 1: The project developer has a contractual right to purchase a Brownfields site in Fall River, Massachusetts on which dredge aterial will be used as engineered fill, and therefore has control over the dredge material placement site. The permitting process for andling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details egarding existing and proposed conditions on the Fall River site are subject to the jurisdiction of Massachusetts for review and ermitting. Accordingly, no authorization for our Massachusetts activities can be sought from the RIDEM/CRMC.**

classification of all disposal or reuse areas, the zoning designation(s) and the limits / elevation of the flood plain or floodway; **See Attachment B and Footnote 1**

(i) Proposed limits of disturbance of the dredge area (including side slopes), dewatering area, reuse area and construction staging / access areas with geographic coordinates; **See Attachment B Site Plans and Footnote 1**

(j) All temporary and permanent erosion and sediment controls; **See Footnote 1**

(k) All in-water facilities (docks, piers, floats, etc...) on the subject parcel as well as all fixed and floating facilities within 100 feet of the property line or limit of disturbance, which ever is greater (this shall include mooring fields); **N/A – Project located in Federal Navigation Channel**

(l) Location of federal navigation projects (channels, anchorage areas, etc...) shall be shown graphically as well as have the geographic coordinates shown; **Federal Channel shown in Attachment B**

(m) Cross sectional views every 200' (min) of the area to be dredged showing the existing and proposed contours on a distorted scale of 1:10 (Provide north/south east/west transition sections); **See Attachment B Site Plans**

(n) The applicant shall address the stability of all adjacent structures that are within 25' of the dredge foot print or side slope and provide a detailed narrative about the stability of these structures subsequent to dredging (as applicable.); **N/A – Project Located in Federal Navigation Channel**

(o) A plan that details location and existing conditions of the disposal area with contours. The adjacent areas within 100 feet of the proposed disposal area shall also be shown; **See Footnote 1**

(p) A plan detailing the proposed conditions at the disposal area including the placement method. The plan must show all areas within 100 feet of the limit of disturbance; **See Footnote 1**

(q) The location and details of the dewatering basin(s) including existing and proposed contours, if not on barge. The plans shall detail the berms, overflow and outlet weirs, runoff collection systems, point source discharge locations and turbidity control methods. The selection and design of settling basins shall be consistent with the USACE publication entitled Engineering and Design, Confined Disposal of Dredged Material, Engineer Manual No. 1110-2-5027; **See Footnote 1**

(r) For projects that propose to dewater on a barge, the sediment and turbidity control systems to be utilized shall be detailed, including these controls during material transfer; **See Footnote 1**

(s) The location of any pier, dock or road that will be utilized in the transfer, off-loading or removal of the dredge material for dewatering, storage or final placement shall be shown; **See Footnote 1**

(t) Mean High and Mean Low Water elevation and the datum used to reference all grades and depths, if not Mean Low Water a table that details the conversion must be included on the plan; **See Attachment B Site Plans**

(u) A project benchmark with geographic coordinates based on the Rhode Island State Coordinate system shall be within or adjacent to the project and shown on the site plan(s); **See Attachment B Site Plans**

(v) Location of sampling points and soil logs; **See Appendix C of Dredging Program**

(w) The location of any wells within 2000' of the dewatering, storage and reuse area. **N/A – Project Located in Federal Navigation Channel**

5. All site plans that propose work within 25 feet of <u>ANY</u> structure, involve dredging, excavation or grading, propose new structures or are for structural rehabilitation must be prepared by a Registered Professional Engineer and must contain the stamp affixed to each sheet along with the date and the signature of the professional. All other proposals may be prepared by a Registered Land Surveyor. **N/A – there are no structures within 25 feet of the proposed dredging**

6. All site plans containing more than one sheet must be numbered consecutively. **Project plans are numbered Sheets 1 through 4**



**Footnote 1: The project developer has a contractual right to purchase a Brownfields site in Fall River, Massachusetts on which dredge material will be used as engineered fill, and therefore has control over the dredge material placement site. The permitting process for handling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details regarding existing and proposed conditions on the Fall River site are subject to the jurisdiction of Massachusetts for review and permitting. Accordingly, no authorization for our Massahcusetts activities can be sought from the RIDEM/CRMC.**

**State of Rhode Island Dredging Application Checklist**
Application Instructions and Required Enclosures

**Projects that involve freshwater wetlands shall include the following additional items on the Site Plan:** **N/A - Project located in Federal Navigation Channel**

(a) The edge of any swamp, marsh, bog, pond, emergent, submergent, shrub or forested wetland or any special aquatic site;
(b) The edge of any, river stream, intermittent stream, area subject to flooding and or storm flowage
(c) The edge of any 50' perimeter wetland
(d) The edge of any one hundred foot (100') or two hundred foot (200') riverbank wetland;
(e) The edge and elevation of any flood plain and the limit of any floodway
(f) The proposed limits of all vegetative clearing and surface or subsurface disturbance
(g) Temporary and permanent stormwater, flood protection and/or water quality management controls and best management practices
(h) Proposed measures to conduct, contain or otherwise control the movements of surface water, groundwater and stormwater flows including the ultimate destination of such flows

**Project that involve Rehandling Facilities shall include the following additional items in the Site Plan:** **See Footnote 1**

(a) All existing and proposed private wells within 2000 feet of the property line
(b) All existing and proposed infrastructure including roadways, surface and subsurface utilities, sewer and sanitary line and water quality structures
(c) All existing and proposed site drainage facilities both surface and subsurface
(d) All existing and proposed loading and unloading infrastructure
(e) All proposed processing, tipping, sorting and treatment areas
(f) Cross-sections (to the above standards) of the storage basin berms
(g) Proposed controls for sedimentation outside of berms, odor, dust and containment plan in the event of berm failure.
(h) Proposed weighing and vehicle / material control facilities
(i) On-site traffic patterns
(j) Proposed landscaping.

**Narrative Report Requirements:**

(a) The proposed dredging method and an estimate of the length of the time to conduct the dredging project; **See Section 4.4 of the CRMC App. Attachment A**
(b) Stamped calculations verifying the estimated volume of dredge material; **See Attachment C of the RI 401 Application**
(c) Aquatic resources in the area such a shellfish beds, eelgrass beds, migratory pathways, habitat for finfish; **See Figures 2-2 through 2-8 of the RI 401 Application and the EFH Assessment**
(d) Information of past dredging events, historic spills, past sediment test data taken in or near the proposed dredge area, and the presence of outfalls for both the dredging area and surrounding area. The source(s) of the information shall be referenced: **See Dredging Program Section 5, summarized in Section 5 of the RI 401 Application**



**..tnote 1: The project developer has a contractual right to purchase a Browfields site in Fall River, Massachusetts on which dredge iaterial wil be used as engineered fill, and therefore has control over the dredge material placement site. The permitting process for andling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details :garding existing and proposed conditions on the Fall River site are subject to the jurisdiction of Massachusetts for review and permitting. ccordingly, no authorization for our Massachusetts activities can be sought from the RIDEM/CRMC.**

**State of Rhode Island Dredging Application Checklist**
Application Instructions and Required Enclosures

(e) The method of transport to the disposal area(s); **See Section 4.5 of the CRMC App. Attachment A**
(f) Stamped calculations verifying the capacity of the dewatering area and the disposal area(s); All design assumptions, settlement and weir calculations shall be detailed in the narrative; **See Footnote 1**
(g) Estimated dewatering time; **See Footnote 1**
(h) A letter from the property owner of the dewatering area and the disposal area(s) indicating approval for the estimated volume of dredge material to be dewatered and/or disposed of on their property; **Applicant currently has a contractual right to purchase the property, and will be property owner at time of dewatering**
(i) Disposal area restoration and/or usage plan; **See Footnote 1**
(j) Applicable RICRMP Regulations. Refer to Section 300.2 & 300.9 standards. **See Section 5 of the CRMC App. Attachment A**

**Sampling Plan Requirements**

Provide letter from RIDEM showing that the sediments are acceptable for disposal at the proposed disposal site.

A proposed sampling plan must be submitted for review and approval prior to samples being taken. The required sampling will depend on the proposed disposal option for the dredged material. At a minimum, for upland disposal, grain size analysis and bulk sediment analysis must be conducted. TCLP testing is recommended to determine if the material is considered hazardous.
**The sampling and analysis plan is described in the Dredging Program, Section 5.2.1, and was submitted to and approved by representatives of both the RIDEM and RI CRMC**

**Additional Information That May be Required.**

1. A letter requesting the timeframe for dredging if work is proposed anytime other than November 1 through December 31. See cover letter

2. Approval letter from the solid waste landfill for the estimated volume of dredged material to be disposed of at a landfill or used as daily cover. N/A

3. A species inventory addressing community structure may be required. The scope of work must be approved by the RIDEM Office of Water Resources prior to performing the inventory. **Aquatic resources are discussed in the RI 401 Application, Section 2.2 and the EFH Assessment**

4. Disposal in open water requires a narrative discussing the alternatives to open water disposal that were considered and why these alternatives were not chosen. The RIDEM OWR will coordinate with the ACOE and the EPA in developing a sampling plan for open water disposal. **N/A – Project proposes upland disposal on a site in Massachusetts**

5. U.S. Army Corps of Engineers permit (concurrent application).

**A USACE Section 10/401 application was submitted for the project on March 18, 2004. Copies were supplied to the RIDEM and RI CRMC.**

**General Information Requirements**

Provide an address and/or phone number(s) of contact person(s) who will be able to answer all questions regarding this application.

**Lester B. Smith, Principal, Epsilon Associates Inc., 150 Main Street, Maynard, MA 01754 978-461-6212**



**..note 1: The project developer has a contractual right to purchase a Brownfields site in Fall River, Massachusetts on which dredge aterial will be used as engineered fill, and therefore has control over the dredge material placement site. The permitting process for ndling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details regarding isting and proposed conditions on the Fall River site are subject to the jurisdiction of Massachusetts for review and permitting. :cordingly, no authorization for our Massachusetts activities can be sought from the RIDEM/CRMC.**

**State of Rhode Island Dredging Application Checklist**
Application Instructions and Required Enclosures

Provide an address and/or phone number(s) of contact person(s) who should be contacted should questions regarding monitoring and permit compliance arise during construction.

**G. F. "Ted" Gehrig, President, Weaver's Cove Energy, One New Street, Fall River, MA 02720 508-675-9470**

**NOTE:** All proposals are forwarded to the Rhode Island Historical Preservation Commission for review and comment in accordance with Section 220 of the RICRMP. In some cases, the applicant may be required to submit the results of an archaeological assessment survey in order to document the presence or absence of significant archaeological sites. If the proposed development would damage a significant historical or archaeological resource, the CRMC may require modification of, or prohibit the proposed action. For additional information, you may contact Rhode Island Historical Preservation directly: Environmental Review Coordinator, 150 Benefit Street, Providence, Rhode Island, 02903. Telephone (401) 277-2678.

**Correspondence with the Rhode Island Historical Preservation and Heritage Commission dated November 20, 2003 states that the project will have no effect on significant cultural resources.**

# *Rhode Island Coastal Resources Management Council*
# *Federal Consistency Determination Application*

## Weaver's Cove Energy, LLC

## Dredging of Mount Hope Bay-Fall River Harbor

## Federal Navigation Channel

*Submitted to:*

State of Rhode Island
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, Rhode Island 02879-1900

*Prepared for:*

Weaver's Cove Energy, LLC
One New Street
Fall River, Massachusetts 02720

*Prepared by:*

Epsilon Associates, Inc.
150 Main Street
Maynard, Massachusetts 01754

*In Association with:*

Applied Science Associates, Inc.
Narragansett, Rhode Island

Moffatt & Nichol
New York, New York

Concept 2 Delivery, Inc.
Cary, North Carolina

July 2004

Weaver's Cove Energy, LLC
Dredging of the Mount Hope Bay-Fall River Harbor Federal Navigation Channel
Coastal Zone Management Consistency Determination Application
Rhode Island Coastal Resources Management Council

# TABLE OF CONTENTS


ASSENT APPLICATION

ATTACHMENT A FEDERAL CONSISTENCY STATEMENT 1

1.0 Project Overview 1
1.1 Project Scope and Jurisdiction 1
1.2 Rhode Island Portion of the Project 4
2.0 Project Purpose 5
3.0 Coastal Zone Management Act Jurisdiction 7
4.0 Proposed Dredging in Rhode Island Waters 7
4.1 Overview of Proposed Dredging 7
4.2 Dredging Limits 9
4.3 Estimation of In-Situ Sediment Volume to be Dredged 9
4.4 Dredging Methodology 10
4.5 Transportation of Dredged Material 10
4.6 Dewatering and Disposal Area Capacities 11
4.7 Handling and Re-Use of Dredged Material as Engineered Fill 11
4.8 Schedule 11
5.0 Consistency with CRMC Policies 11
5.1 Water Type - Industrial Waterfronts and Commercial Navigation Channels 12
5.2 Activity Type - Dredging and Dredged Materials Disposal 15
5.2.1 Policies 15
5.2.2 Prerequisites 17
5.2.3 Prohibitions 19
5.2.4 Additional Category B Requirements 19
5.2.5 Standards 22

ATTACHMENT B PROJECT PLANS

FIGURES

Figure 1-1 Locus Map of Proposed LNG Terminal Site and Approximate Limits of Proposed Dredging 2
Figure 1-2 USGS Locus Map 3
Figure 5-1 CRMC Water Type Designations 13

Note: Several documents referred to in this application have been submitted in conjunction with various permit applications. Copies of these documents have been provided to the CRMC and include:

- FERC Application Environmental Report (topic-specific "Resource Reports")
- US Army Corps of Engineers Section 10/404 Permit application
- Section 401 Water Quality Certification application for dredging activities in Rhode Island waters (filed concurrently with this CZM Consistency Determination Application)

These permit applications include several common attachments which are also relevant to this CZM Consistency Determination Application, such as the Dredging Program, ASA Suspended Sediment Modeling Report, and Essential Fish Habitat Assessment.

# Assent Application

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
COASTAL RESOURCES MANAGEMENT COUNCIL
4808 TOWER HILL ROAD; Suite 3, WAKEFIELD, RI 02879
(401) 783-3370

**Application for State Assent**
to perform work regulated by the provisions of Chapter 279 of the Public Laws of 1971 Amended.

| | |
|---|---|
| N/A Mount Hope Bay | File No. |
| Location No. Street City/Town | |
| Owner's Name Weaver's Cove Energy, LLC Plat No. | Lot No. |
| Mailing Address One New Street<br>City/Town Fall River State MA Zip Code 02720 | Res. Tel. #<br>Bus. Tel. # 508-675-9470 |
| Contractor RI Lic. # Address | Tel. No. |
| Designer Address | Tel. No. |
| Name of Waterway Mount Hope Bay Est. Project Cost $ 1.51M | Fee/Costs $ 7,806.25 |

Have you or any previous owner filed an application for and/or received an assent for any activity on this property? (If so please provide the file and/or assent numbers). No

IS THIS APPLICATION BEING SUBMITTED IN RESPONSE TO A COASTAL VIOLATION?
YES ____ NO X
IF YES, YOU MUST INDICATE NOV OR C&D NUMBER ____

Name and Addresses of adjacent property owners whose property adjoins the project site. (Accurate addresses will insure proper notification. Improper addresses will result in an increase in review time.)
N/A. Names and addresses for public notification purposes will be generated by CRMC staff.

Describe accurately the work proposed. (Use additional sheets of paper if necessary and attach this form.)
Maintenance and improvement dredging in the Federal Navigation Channel. Disposal of Dredged materials will be conducted outside the state of Rhode Island.

[signature]
Owner's Signature

NOTE: The applicant acknowledges by evidence of their signature that they have reviewed the Rhode Island Coastal Resources Management Program, and have, where possible, adhered to the policies and standards of the program. Where variances or special exceptions are requested by the applicant, the applicant will be prepared to meet and present testimony on the criteria and burdens of proof for each of these relief provisions. The applicant also acknowledges by evidence of their signature that to the best of their knowledge the information contained in the application is true and valid. If the information provided to the CRMC for this review is inaccurate or did not reveal all necessary information or data, then the permit granted under this application may be found to be null and void. Applicant requires that as a condition to the granting of this assent, members of the CRMC or its staff shall have access to the applicants property to make on-site inspections to insure compliance with the assent. This application is made under oath and subject to the penalties of perjury. 04/03

PLEASE REVIEW REVERSE SIDE OF APPLICATION FORM

STATEMENT OF DISCLOSURE AND APPLICANT AGREEMENT AS TO FEES

The fees which must be submitted to the Coastal Resources Management Council are based upon representations made to the Coastal Resources Management Council by the applicant. If after submission of this fee the Coastal Resources Management Council determines that an error has been made either in the applicant's submission or in determining the fee to be paid, the applicant understands that additional fees may be assessed by the Coastal Resources Management Council. These fees must be paid prior to the issuance of any assent by the Coastal Resources Management Council.

The applicant understands the above conditions and agrees to comply with them.

Signature 7/16/04
Date

George F. Gehrig, President, Weaver's Cove Energy, One New Street, Fall River, MA 02720
Print Name and Mailing Address

NOTICE TO APPLICANTS

The Coastal Resources Management Council regulations require that the following must accompany every application otherwise these applicants will be deemed incomplete and returned.

1. **Four copies** of completed application form including plans, are required. If the project requires a type "B" or involves work in the waterway, plans must be 8 1/2" x 11". If the project is type "P" or Prohibited, a Special Exception form will be required, staff will provide you with the necessary forms.

2. **Application fee** - see attached CRMC Fee Schedule

3. **Proof of Ownership**. The CRMC requires a letter from the local tax assessor stating ownership of the property.
N/A

4. A copy of the **local building permit** or a **letter from the local building official** stating that a building permit will be issued upon receipt of a CRMC permit, with the exception of recreational boating facilities.
N/A

5. Supply **photos of coastal feature construction site**.
N/A

In addition, where these additional items are applicable, they are also required:

a. Affirmation that the proposed structure will be serviced by municipal sewers. (For large projects, local community approval and construction details of the tie-in are required).
b. An approved Individual Sewage Disposal System (ISDS) permit from DEM/ISDS, 291 Promenade Street, Providence, RI, 02908; phone (401) 222-2306.
c. An approved "Change of Use" permit from DEM/ISDS is required in un-sewered areas when an increase in the number of bedrooms, an increase in "flow units", or a change from season to year-round use is proposed.

Your application receives a thorough review by our staff biologists and engineers during which they may require additional information to complete their review. If this becomes necessary you will receive a separate information request form.

You are urged during this process to be as complete as you can in fulfilling all informational requirements. In addition, you are also urged to adhere as closely as you can to all the Coastal Resources Program requirements. Failure to do so could cause delays in processing your application.

We thank you for your cooperation in this matter and look forward to working with you in protecting our coastal environment.

# CRMC'S FEE SCHEDULE

| Project Description | Description/Comments | Fee |
|---|---|---|
| Residential Boating Facility | New Facility | $500.00 |
| New Structural Shoreline Protection Facility | First 100 linear feet<br>Each additional linear foot | $750.00<br>$10.00/ft |
| Residential Development Project (condominiums, subdivisions, paper subdivisions, etc.) | First 6 units/lots<br>Each additional unit/lot<br>Infrastructure (roads, drainage, etc.) | $3,500.00<br>$400.00<br>(.005 X EPC) |
| Review of units/lots within a Council approved Subdivision | Submitted in accordance with all Council conditions/stipulations | 1/2 of the All Others fee |
| Buffer Zone Alterations and Management Plans | For areas less than or equal to 1 acre<br>For areas between 1 and 5 acres<br>For areas greater than 5 acres | $100.00<br>$250.00<br>$500.00 |
| Onsite Sewage Disposal Systems | New Systems | All Others fee |
| | | |
| All others (include Section 320 reviews) | Based on Estimated Project Cost:<br>EPC is less than or equal to $1,000<br>EPC Between $1,000.01 - $2,500<br>$2,500.01 - $5,000<br>$5,000.01 - $10,000<br>$10,000.01 - $25,000<br>$25,000.01 - $50,000<br>$50,000.01 - $100,000<br>$100,000.01 - $150,000<br>$150,000.01 - $200,000<br>$200,000.01 - $250,000<br>$250,000.01 - $300,000<br>$300,000.01 - $350,000<br>$350,000.01 - $400,000<br>$400,000.01 - $450,000<br>$450,000.01 - $500,000<br>$500,000.01 - $20,000,000<br><br>EPC greater than $20,000,000 | <br>$50.00<br>$100.00<br>$150.00<br>$200.00<br>$250.00<br>$500.00<br>$750.00<br>$1,000.00<br>$1,250.00<br>$1,500.00<br>$1,750.00<br>$2,000.00<br>$2,250.00<br>$2,500.00<br>$2,750.00<br>($2,750.00 + .005 X EPC beyond $500,000.00)<br>($100,250.00 + .0025 X EPC beyond $20,000,000) |

*EPC = Estimated Project Cost. The EPC shall include all costs associated with site preparation (e.g., earthwork, landscaping, etc.) sewage treatment (e.g., cost of ISDS, sewer tie-ins, etc.) and construct costs (e.g., materials, labor, and installation of all items necessary to obtain a certification of occupancy).*

| Preliminary Determinations | Fee |
|---|---|
| Individual residential homeowner/potential homeowner | $150.00 |
| All other projects (e.g., subdivisions, commercial, industrial, etc.) | $1,000.00 |
| Jurisdictional determinations | $100.00 |

| Other Fees | Fee |
|---|---|
| Single Family Residence Assent Renewal/Extension | $75.00 |
| All Other Assent Renewal/Extension | $250.00 |
| Modification-Single Family Residence w/no public hearing | $100.00 |
| Modification of under 50% of a recreational boating facility | $250.00 |
| All other Modification Requests | All Other fee or $250.00 whichever is greater |
| Lightering Permits | $250.00 |
| Beach Vehicle Permits | $50.00 |
| Declaratory Rulings | $1,000.00 |
| Petitions for regulation changes | $1,000.00 |
| Contested cases with sub-committee hearings | Applicant pays all costs of hearing process |
| Temporary Dock Application | $100.00 |
| Dock Registration | $20.00 |

**<u>Administrative Fees for Activities which have occurred without a valid CRMC Approval</u>**

1. Administrative Reviews

All such activities will be assessed an application fee based on above plus:

a) Illegally constructed structures and unauthorized activities located in tidal waters and/or on adjacent coastal or shoreline features (See RICRMP Section 200 and Section 210) shall be assessed **$500.00** administrative fee;

b) Illegal activities excluding those classified as maintenance activities under the RICRMP shall be assessed a **$250.00** administrative fee; and,

c) Unauthorized maintenance activities shall be assessed a **$100.00** administrative fee.

2. Applications before the Council
   a) In accordance with Council regulations, ali activities or alterations which have already occurred, or have been constructed or partially constructed without a Council Assent shall be subject to the fee schedule contained in Section 4.3.2. In addition, the Council shall assess an appropriate administrative fee based on a recommendation by the Executive Director. The recommended administrative fee shall take into account the impact on coastal resources, additional demand on Council resources, and hardship on an applicant (see RICRMP Section 160).

**Hardships**

Where an applicant can demonstrate that the fee schedule described herein presents an undue hardship, the Council may adjust the application fee, administrative fee, and/or contested case fees.

* *NOTE: All fees are Summative. In addition, all fees are filing fees and non-refundable.*

***NOTE: Applicants should consult Section 4.3 of the CRMC's Management Procedures for a more detailed description of the CRMC's fee schedule.*

# Attachment A

## Federal Consistency Statement

# FEDERAL CONSISTENCY STATEMENT

## 1.0 Project Overview

### *1.1 Project Scope and Jurisdiction*

Weaver's Cove Energy, LLC ("Weaver's Cove") is submitting this application for the dredging of the Mount Hope Bay – Fall River Harbor Federal Navigation Channel ("the Project") to the Rhode Island Coastal Resources Management Council ("RICRMC") for Coastal Zone Management Consistency Concurrence under the Federal Coastal Zone Management Act ("CZMA") (16 U.S.C. 145 et seq.) and the regulations thereunder at 15 CFR 930 Subpart C, and Title 46 Chapter 23 General Laws of Rhode Island as amended, and the Rhode Island Coastal Resources Management Program as amended ("RICRMP").

Weaver's Cove is proposing to develop a liquefied natural gas terminal ("LNG Terminal") on an approximately 73-acre brownfield site located on the Taunton River in the City of Fall River, Massachusetts (see Figure 1-1 and 1-2). LNG will be delivered to the LNG Terminal by LNG ships necessitating dredging of the existing Mount Hope Bay – Fall River Harbor Federal navigation channel ("Federal channel"). All construction activity and most of the dredging will occur in Massachusetts. This CZM Consistency Statement addresses the portion of maintenance and improvement dredging of the Federal channel that is proposed within Rhode Island waters.

The facilities associated with the Weaver's Cove LNG Terminal are subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") pursuant to Section 3 of the Natural Gas Act, and are the subject of an application for necessary authorizations submitted to the FERC on December 19, 2003 (referred to here as "FERC Application"; Docket Nos. CP04-36-000 and CP04-41-000, et al). The Weaver's Cove project is described in detail in the FERC Application Resource Report 1. In addition, an application was submitted to the U.S. Army Corps of Engineers ("USACE") on March 18, 2004 for the necessary authorizations under Section 404 of the Clean Water Act and Section 10 of the Rivers and Harbors Act for the proposed dredging activities and structures (referred to here as "Section 10/404 application"). A Water Quality Certification application pursuant to Section 401 of the Clean Water Act is being submitted to the Rhode Island Department of Environmental Management concurrent with this CZM Consistency Determination Application. While the Federal requirements for certification are predicated upon the disposal of dredged material, not dredging alone, the State of Rhode Island interpretation and application of these Federal regulations have extended to a consideration of the physical act of dredging itself. Therefore, while Weaver's Cove does not concede that one is required, a 401 Certificate application is being prepared and submitted along with this CRMC application in light of the State's approach to reviewing Section 401 Certifications, and subject to Weaver's Cove rights to raise jurisdictional issues and subject to applicable governing Federal authorizations.




**Figure 1-1**
**Locus Map of Proposed LNG Terminal Site and Approximate Limits of Proposed Dredging**

**Weaver's Cove Energy, LLC**
**Mill River Pipeline, LLC**

Prepared by Epsilon Associates, Inc

G:\Projects\Fall_Riv\79001\401_permit\RI 401\fig1-1_dredge_nautical_11x17.mxd


3
SPECIAL ANCHORAGES
Proposed LNG Terminal Site
Potterville
Swansea
Ocean Grove
South Swansea
Cedar Cove
Brayton Point
Luther Corner
Touisset
Surfaced Ramp
Breads Cove
Fox Hill
Battleship Cove
Cable and Pipeline Area
R TRS (WSAR) 1480 kHz
BRIGHTMAN ST BASCULE BRIDGE HOR CL 98 FT VERT CL 27 FT
FIXED BRIDGE HOR CL 400 FT VERT CL 135 FT
FIXED BRIDGE HOR CL 46 FT VERT CL 6 FT
FIXED BRIDGE HOR CL 41 FT VERT CL 7 FT
OVHD PWR CABS
OVHD PWR CAB AUTH CL 150 FT
OVERHEAD POWER CABLES AUTHORIZED CL 145 FT
STACKS
TOWERS
SPIRE
Tanks
MASSACHUSETTS
RHODE ISLAND




Basemap: 1985 USGS Quadrangles, MassGIS, RI GIS

Figure 1-2
USGS Locus Map

Weaver's Cove Energy, LLC
Mill River Pipeline, LLC

Scale 1:42,000
1 inch = 3,500 feet

0 3,500 7,000 Feet

Prepared by Epsilon Associates, Inc.

G:\Projects\Fall_River\9001\CRMC_permit\fig1-2_dredge_USGS_11x17.mxd


Proposed LNG
Terminal Site
FALL RIVER
SOMERSET
Braga
Bridge
SWANSEA
WARREN
BRISTOL
MASSACHUSETTS
RHODE ISLAND

As described in Resource Report 1, appended to the FERC Application, LNG will be delivered to the LNG Terminal by ships with a capacity of up to 145,000 $m^3$. An LNG ship is expected to arrive on average every five to seven days. To satisfy the navigational requirements of the LNG ships (as determined by simulations and standard calculations), maintenance and improvement dredging of the existing Federal channel is required. The seven-mile long Federal channel originates in the lower reaches of Mount Hope Bay, extends through Rhode Island and Massachusetts waters, and up the Taunton River to the LNG Terminal site (see Sheet 1 in Attachment B). Roughly, 2 miles of the Federal channel is within Rhode Island, the remaining 5 miles is in Massachusetts.

Vessels currently transit this channel to access the Brayton Point and NRG (Montaup) power plants, the Fall River State Pier, and a number of other maritime facilities of regional importance. Weaver's Cove proposes to privately fund dredging of the Federal channel to a depth of -37 ft MLLW. The Federal channel has not been dredged since the 1970s, at which time is was dredged to a depth of -35 ft MLLW, although, as discussed below, the characteristics of the sediments found between -35 ft and -37 ft MLLW indicate that the channel was dredged to a depth closer to -37 ft MLLW.

### *1.2 Rhode Island Portion of the Project*

As outlined on Table 2 in the Dredging Program (Attachment D to the Rhode Island Water Quality Certification application) and documented in the attached stamped calculations (Attachment C to the Rhode Island Water Quality Certification application), the Applicant plans to dredge approximately 140,000 cubic yards (cy) of in-situ sediment from within the Rhode Island portion of the Federal channel.[1] As shown in Table 4 of the Dredging Program, the approximate amount dredged from depths of up to -35 feet MLLW is approximately 40,000 cy. This is considered maintenance dredging. The remaining approximately 100,000 cy is the amount dredged from between -35 and -37 feet MLLW. While the amount dredged from between -35 and -37 ft MLLW is considered to be improvement dredging because it is a deepening of the channel, the results of the Tier II Sampling and Analysis Plan conducted by Weaver's Cove and summarized in Section 5 of the Dredging Report indicates that sediments in this zone are predominantly maintenance silts.

---

[1] The total planning volume from Rhode Island waters is approximately 230,000 cy. This volume is used for upland placement capacity planning purposes and inclusive of an estimated conservative overdredge volume. Overall, the proposed dredging program involves the removal of 2.1 cy of in-situ sediment from within the Federal channel in both Rhode Island and Massachusetts, including the proposed expansion of a Federal turning basin located in Massachusetts (2.5 million cy is the total planning volume inclusive of the overdredge used for upland placement capacity planning purposes).

Using the most recent bathymetric surveys[2], the dredging footprint in Rhode Island covers an area of approximately 33 acres. Most of the footprint within Rhode Island occurs at edges of the Federal channel. The overall limits of dredging activities proposed by Weaver's Cove are depicted on Figure 1-1 and Sheet 1 in Attachment B, with a more detailed depiction of the extent of dredging in Rhode Island shown on Sheets 2 and 3. The actual dredging footprint and depths will be documented by the comparison of before-dredge and after-dredge hydrographic surveys to be provided by the dredging contractor.

Dredging of the Federal channel in Rhode Island will be performed using a bucket size of up to 15 cy and can be completed in approximately 150 dredging days at maximum productions rates and assuming optimum environmental conditions.

## 2.0 Project Purpose

*Purpose of Proposed Weaver's Cove LNG Terminal*

As described in greater detail in its FERC Application, Weaver's Cove proposes to bring a new LNG supply to New England to serve the natural gas and LNG needs of the New England market.

Natural gas is widely used for home heating and cooking, commercial heating and processes, a variety of industrial applications, and, increasingly, for electrical power generation. There are more than 2 million residential natural gas customers in New England alone, and the US Department of Energy Energy Information Agency expects New England gas use to increase from 0.752 trillion British thermal units ("TBtu") in 2000 to approximately 1.248 TBtu in 2025.

The region's access to natural gas has historically been constrained because it is remote from North America's traditional supply basins. On an annual basis, approximately 50% of the natural gas delivered in New England comes from U.S. domestic production, 35% is Canadian, and 15% is imported LNG.

There is a growing consensus, both at the policy level within the United States Government and on the part of industry trade associations, companies, and independent analysts, that imports of LNG from foreign sources will be needed in order to meet the growing imbalance between supply and demand for natural gas in New England and in the United States as a whole.

---

2 USACE provided a bathymetric survey of the Federal channel and turning basin conducted in 1998 and published in 2000. NOAA conducted a bathymetric survey in 2002 covering the area surrounding the proposed Turning Basin located within Massachusetts waters.

At the same time North American gas prices have increased, the costs of developing LNG projects have been falling while LNG availability has been rising. The proposed Weaver's Cove LNG Terminal would allow New England to take advantage of new LNG supply sources to mitigate energy costs without necessitating additional long-haul pipeline capacity with its associated environmental and cost impacts.

A more detailed natural gas market study can be found in the FERC Application at Exhibit Z-II.

*Purpose of Proposed Dredging*

To satisfy the navigational requirements of the LNG ships (as determined by simulations and standard calculations), maintenance and improvement dredging of the existing Federal channel is required. The proposed horizontal and vertical dredging limits are a function of navigational requirements for the specific LNG ships that will be calling at the LNG Terminal. The draft of the design LNG ships is 37.5 feet MLLW. LNG ships will be scheduled to enter the Federal navigation channel on a rising tide and the transit time will result in passage through the new Brightman Street Bridge with berthing taking place at high water slack and the start of the ebb tide.

The navigational requirements for the LNG ships were modeled through simulation exercises conducted at a simulation facility owned by Marine Safety International, Inc. ("MSI", out of Middletown, Rhode Island) using the services of local harbor pilots from Northeast Marine Pilots (out of Newport, Rhode Island). The simulations are being used by the pilots to gain familiarity with and understand the entire passage of an LNG ship from Narragansett Bay to the proposed berth at the LNG Terminal site. The resulting data is being used to refine handling techniques, to determine the number and power of tugs required and to establish limiting operational parameters such as wind speed and direction. A full training program has been prepared to qualify a number of pilots in the handling of LNG ships and in the optimal utilization of modern tractor tugs.

The transit will be aided by several escort tugs, most likely from established tug boat operators in the Narragansett Bay area. Although there are tugboats that currently serve the area, the proposed LNG Terminal will require new, modern, high-powered tractor tugs equipped with fire-fighting capabilities. Present indications are that three tugs will be required. Each tug is powered by twin diesel engines, with an approximate total power of 5,000 shaft horsepower (shp), giving approximately 50 tons of bollard pull. They will be classed as "escort tugs" signifying that they are specifically designed for assisting a vessel in providing control by steering and braking, as necessary.

Utilizing the tidal rise, a channel at MLLW of -37 feet will allow safe navigation of the LNG ships. Weaver's Cove therefore proposes to deepen the Federal navigation channel from a current federally authorized depth of -35 feet to -37 feet MLLW (as noted above in Section 1.2, the bulk of materials to be dredged, both maintenance and improvement, are maintenance silts).

## 3.0 Coastal Zone Management Act Jurisdiction

As discussed above, the Rhode Island RICRMC reviews projects for consistency with its Federally-approved RICRMP[3]. The RICRMP, the Council's Special Area Management Plans and Energy Amendments, and adopted State Guide Plan elements together make up Rhode Island's federally approved coastal program. The provisions of these programmatic documents and regulations, which meet the definition of enforceable policies under the Federal CZMA, constitute the enforceable policies with which Federal activities must be consistent in Rhode Island.

The regulatory authority of the RICRMC is generally defined by the area extending from the territorial sea limit (three miles offshore), to two hundred (200) feet inland from any coastal feature, to watersheds, and to certain activities that occur anywhere within the state. Sections 100-300 of the RICRMP define the coastal features and activities within RICRMC jurisdiction. Section 400 of the RICRMP defines the prerequisites and policies for meeting the Federal consistency requirements, as provided for in section 307 of the CZMA. If a RICRMC permit (known as an "Assent") is also required, the issuance of the Assent by the RICRMC constitutes concurrence with an applicant's certification of consistency with applicable provisions of the RICRMP. Although Weaver's Cove does not believe that an Assent is required in the circumstances of this project, consistent with FERC policy to require applicants to seek all state and local permit approvals that do not prohibit or unreasonably delay the construction of FERC authorized facilities, Weaver's Cove is seeking an Assent from the RICRMC.

## 4.0 Proposed Dredging in Rhode Island Waters

### *4.1 Overview of Proposed Dredging*

Weaver's Cove's Dredging Program, provided as Attachment A to the FERC Environmental Report and Attachment D to the Rhode Island 401 Water Quality Certification application, contains information specific to the proposed dredging and subsequent dredged material management. A summary of its basic elements is provided below.

The Mount Hope Bay – Fall River Harbor Federal navigation channel was originally dredged in 1920; the most recent maintenance dredging was performed in the 1970s. Vessels currently transit this channel to access the Brayton Point and NRG (Montaup) power plants, the Fall River State Pier, and a number of other maritime facilities of regional

---

3 Federal authority is promulgated under the federal Coastal Zone Management Act of 1972, as amended (16 U.S.C. 1451 *et seq.*), and 15 CFR 930 as amended. Implementation of the CZMA is delegated to state agencies, in this case, the Rhode Island Coastal Resources Management Council.

importance. In order to allow access of LNG ships to the proposed LNG Terminal in Fall River, Massachusetts, Weaver's Cove proposes to privately fund dredging of the Federal channel to a depth of -37 feet MLLW.

Weaver's Cove has undertaken a number of key studies in the development of its Dredging Program. One of these studies was a comprehensive sediment characterization effort that indicated that dredging and upland placement on an existing brownfield site (i.e., the LNG Terminal site in Massachusetts) was feasible. This sediment sampling analysis was provided to and approved by representatives of the RI CRMC and the RIDEM. Notable conclusions that are foundational to the dredging program include:

- The sediments to be dredged within Rhode Island are predominantly maintenance silts;
- Constituents in the sediments were found at similar concentrations distributed throughout the project limits with no apparent areas of discrete contamination (i.e., there were no "hot spots" identified);
- Constituents in the sediments appear to be highly adsorbed to the sediment particles and will not be released into the water column during dredging, or in a dredged material placement site effluent above USEPA water quality criteria or above the ambient river water quality; and
- The dredging of in-situ sediment will not require the use of special handling procedures with respect to any contaminants.

The Weaver's Cove Dredging Program was optimized using the results of the ASA Suspended Sediment Modeling report, provided as Attachment B to the FERC Environmental Report and Attachment E to the Rhode Island Water Quality Certification application. The anticipated mechanical dredging means and methods and the anticipated upland reuse means and methods, which includes both stabilization and upland placement in Massachusetts, can be found in Section 7.0 of the Dredging Program and are summarized below.

Hydrographic surveys indicate that in Rhode Island the in-situ sediment within the dredge limits is found in narrow bands along the channel edges in relatively thin cuts when compared to areas to be dredged in Massachusetts. As such, dredge production rates will be relatively low in Rhode Island waters primarily due to the additional time spent positioning as opposed to the actual dredging. Due to the thin nature of the cuts, it is likely that a smaller capacity bucket (up to 15 cy bucket) will be used in Rhode Island than in Massachusetts. Based on the results of ASA's dredge-induced suspended sediment modeling, a maximum 15 cy open bucket can be used year-round in this area. Based on preliminary model simulations, it appears that scow overflow is acceptable year-round at a production rate of roughly 2,000 cy per day. At this rate the necessary dredging in Rhode Island would be accomplished in approximately 150 dredging days (under optimal environmental conditions).

### *4.2 Dredging Limits*

Weaver's Cove proposes to deepen the Federal channel from a current Federally-authorized depth of -35 feet to -37 feet MLLW. Sheet 1 in Attachment B depicts the approximate overall dredging limits. Sheets 2 and 3 depict the portion of the dredging limits within Rhode Island waters, while Sheet 4 presents a cross section of proposed dredging in the Federal channel.

### *4.3 Estimation of In-Situ Sediment Volume to be Dredged*

Using the most recent bathymetry data currently available from the USACE covering the Rhode Island portion of the Federal channel, Weaver's Cove estimated the quantity of in-situ sediment to be dredged from Rhode Island waters (See stamped calculations and Dredging Program, Attachments C and D respectively).

Weaver's Cove's estimation is subdivided into in-situ sediments within the proposed channel dimensions and, separately, a contractor tolerance or overdredge quantity.

Overdredge accounts for, and reflects, a potential quantity of sediment dredged by the contractor to assure that all areas of the channel achieve the navigational depth requirements. Even when using the best available dredging technology, it is not feasible to expect that after the dredging occurs the bottom channel surface would be a perfectly flat surface. In actual practice the bottom profile will be an uneven surface due to the way the dredging equipment operates. The upper limit of this uneven surface must fall below the navigational depth requirement. Therefore some material must be removed below the navigational depth requirement to assure that the entire channel area meets the navigational requirement.

To be conservative, Weaver's Cove has estimated the total volume of in-situ sediment to be dredged based on an assumed flat surface inclusive of the overdredge depth (the navigational requirement plus one foot of overdredge). In summary, for planning purposes the total in-situ volume of dredged material that must be handled for removal is assumed to be the sum of the navigational quantity plus the overdredge quantity (an extra foot). In practice, as the dredging is executed, only a portion of the overdredge volume will actually be removed by the contractor.

The following dredge prism was applied to yield the in-situ sediment quantities:

- Navigation Channel width measured at base of excavation.
- A side slope of 3 horizontal to 1 vertical to estimate the quantity of sediment that slumps into excavation during dredging until slope equilibrium is achieved at the time of dredging.
- Overdredge of 1 ft in excess of the navigational requirement with no side slope.

As indicated in Table 2 of the Dredging Program (Attachment D to the Rhode Island Water Quality Certification Application) and documented by the stamped calculations provided as Attachment C to the Rhode Island Water Quality Certification Application, approximately 140,000 cy of in-situ sediment will be dredged from Rhode Island waters. Allocation of these quantities between maintenance and improvement is discussed further in Section 3.2 of the Dredging Program.

### *4.4 Dredging Methodology*

Dredge production rates are based on dredge cut thickness, physical sediment properties, and seasonal operating restrictions, which in combination must be selected to minimize dredge-induced suspended sediment impacts to sensitive aquatic life. A mechanical dredge will be used and outfitted with an up to a 15 cy open bucket. Dredging operations are anticipated to be a 24-hour per day/seven day per week continuous operation. Under optimal environmental conditions, it is estimated that the required dredging could be completed in approximately 150 dredging days. The anticipated dredge fleet (floating equipment) to perform the mechanical dredging will likely consist of the following for work within Rhode Island (or a similar variation):

- Spud secured barge mounted crane (or long arm excavator) with an up to 15 cy open bucket;
- Scow/hopper barges of varying capacities maneuvered by a tug;
- Material barge to transport fuel, equipment and other raw materials to and from fleet vessels and land. Similar to the scow/hopper barge, this barge will also be maneuvered by a tug;
- Tugboat to position dredge and haul barges to and from dredge locations and dredge material offloading sites;
- Work boat to carry personnel and equipment to and from fleet vessels and land; and
- Survey vessel to perform pre- and post- dredge hydrographic surveys.

The dredged material will be loaded directly into a scow and transported upstream through Rhode Island and Massachusetts waters to the proposed upland LNG Terminal site, as described below.

### *4.5 Transportation of Dredged Material*

Material removed mechanically from the dredged site is placed in scows. A tug will transport the scows to the proposed LNG Terminal site waterfront, in Massachusetts, where the dredged material will be stabilized and used as engineered fill at the proposed LNG Terminal site. If excess free water is present in the scow, it will be decanted at the site by

pumping into either land-side settling basins, floating barges, or directly into the Taunton River (consistent with applicable permits). Scows may be moored a few days prior to decanting to allow more time for settling.

### 4.6 *Dewatering and Disposal Area Capacities*

Site evaluations have indicated that the entire volume of dredged material from Rhode Island waters can be accommodated on the proposed LNG Terminal site located in Fall River, Massachusetts. Weaver's Cove proposes to use this material in site development including the construction of landforms on the LNG Terminal property.

### 4.7 *Handling and Re-Use of Dredged Material as Engineered Fill*

As described in Section 7.0 of the Dredging Program, handling and re-use of dredged material will occur on the proposed LNG Terminal site in Fall River, Massachusetts.

### 4.8 *Schedule*

Dredging operations are influenced by several factors, including sediment characteristics, dredge cut thickness, transport/haul distance, project calendar, seasonal weather conditions, and environmental controls. Each of these factors must be considered in order to select the appropriate equipment and define the operating conditions. Given the smaller bucket size to be utilized in Rhode Island, the rate of dredging will be slower in Rhode Island than in Massachusetts. It is anticipated that dredging in Rhode Island will require approximately 150 operational days at maximum production rates and assuming favorable environmental conditions. The cover letter to this application serves as the Applicant's formal request to dredge in Rhode Island waters outside of the November 1 – December 31 ordinary dredging window established by RIDEM.

Dredging operations in Rhode Island waters are anticipated to be a 24-hour per day continuous operation. The dredging activity is centered underwater and is performed by trained operators using highly-technical computer operated terminals/observation screens. As such, the operator can "see" the dredge site regardless of daylight conditions. Therefore, it is feasible and typical for a dredging operation to run on a 24-hour per day basis, seven days per week.

## 5.0 Consistency with CRMC Policies

The RICRMP lists Policies for specific coastal sites as well as Policies for activities occurring in the Rhode Island Coastal Zone. Under the CZMA activities requiring Federal action must be consistent with these Policies before RICRMC will issue a Federal consistency concurrence.

Policies for specific coastal sites are listed in Section 200 (Water Type) and Section 210 (Shoreline Type) of the RICRMP. The proposed dredging activity will occur in the Federal channel, which is classified in the RICRMP as Type 6 (Industrial Waterfronts and Commercial Navigation Channels). Because the activity is not proximate to a specific shoreline location, effects of the project on shorelines listed in Section 210 are not relevant.

Policies for coastal activities are listed in Section 300 of the RICRMP. Section 300.1 lists requirements for all Category B activities. Section 300.9 lists Policies for all Dredging and Dredged Material Disposal activities.

Section 400 of the RICRMP outlines the Federal consistency process, including responsibilities of Federal agency and non-Federal entities.

### *5.1 Water Type - Industrial Waterfronts and Commercial Navigation Channels*

The Project is located in the Federal channel. Under Section 200 of the RICRMP, this area is classified as Type 6 Waters, which are defined as water areas "extensively altered in order to accommodate commercial and industrial water-dependent and water-enhanced activities." Water Types as designated in the RICRMP are shown in Figure 5-1. Specific areas are listed including the "Tiverton shipping area." The following Policies apply to the dredging Project and the Project's consistency with the policy is described.

*Policy 1 – The Council's goals for Type 6 waters and adjacent lands under Council jurisdiction are to encourage and support modernization and increased commercial activity related to shipping and commercial fisheries.*

The Project clearly meets the listed shipping-related goals for Types 6 waters, as the dredging of the Federal channel will facilitate increased shipping, not only by the Applicant, but by other commercial users as well. In addition, the project will generate commercial activity within the shipping and maritime industries throughout the Narragansett Bay area.

*Policy 2 - Highest priority uses of Type 6 waters and adjacent lands under Council jurisdiction are: (a) berthing, loading and unloading, and servicing of commercial vessels; (b) construction and maintenance of port facilities, navigation channels, and berths; and (c) construction and maintenance of facilities required for the support of commercial shipping and fishing activities. The Council shall prohibit activities that substantially detract from or interfere with these priority activities.*

The Project likewise meets the approved criteria for highest priority uses of Type 6 waters. The Project consists of dredging of the Federal channel, identified as a priority use under (b) above. In addition, the dredging is being completed to support the berthing and unloading of LNG vessels at the proposed LNG Terminal site in Massachusetts.




Scale 1:48,000
1 inch = 4,000 feet

2,000 0 2,000 4,000 Feet

Figure 5-1
CRMC Water Type Designations
Fall River Quadrangle

Basemap: NOAA Nautical Chart, MassGIS

Weaver's Cove Energy, LLC
Mill River Pipeline, LLC

Prepared by Epsilon Associates, Inc

*<u>Policy 3</u> – The Council will encourage and support port development and modernization and increased economic activity in the marine industries by participating wherever possible in the joint long-range planning and development activities with other state and local agencies, including the RI Port Authority, the Department of Environmental Management, and coastal cities and towns.*

Section 200.6 acknowledges that nearly all Rhode Island's boating and shipping facilities require periodic dredging to maintain adequate water depths in channels and turning basins and at berths. The Project provides benefits to the greater maritime industries by privately-funding the maintenance and improvement dredging of the Federal channel that serves Rhode Island and Massachusetts. Normally such dredging costs are a burden to Federal, state and sometimes local taxpayers. The Governor's Narragansett Bay and Watershed Planning Commission issued an "Economic Development Panel Report" on March 3, 2004. The report specifies four "Short term charges" to pursue: coastal revitalization, marine bio-sciences research park, marine trades and marine tourism. The project will be consistent with the directives of this report, as the project will generate activity in the marine industries and the dredging will increase access by other marine industrial users.

The Rhode Island Statewide Planning Program issued its "Economic Development Policies and Plan" in April of 2000. This report outlined three major objectives: employment, facilities and climate. Generally, the project will be consistent with these objectives by improving on existing infrastructure (dredging of the Federal channel) and generating economic activity in marine-related industries throughout the Narragansett Bay area.

*<u>Policy 4</u> - Through its Special Area Management Plan for Providence Harbor, and other planning initiatives, the Council will identify and designate acceptable disposal solutions and sites adequate to meet the need for dredging, and provide the assurances required by industry that channel depths will be maintained, while minimizing environmental effects. The solutions may be more costly than older disposal practices, and may involve innovative technology. The Council will also work in cooperation with the Cities of Providence and East Providence and the Corps of Engineers toward achieving the removal of dilapidated piers and abandoned barges, which presently preclude economic use of large areas within Providence Harbor.*

The Project proposes to utilize the dredged material as engineered site fill on the site of its proposed LNG Terminal, an upland site located in Fall River, Massachusetts.

### *5.2 Activity Type - Dredging and Dredged Materials Disposal*

The Project proposes to conduct maintenance and improvement dredging in the existing Federal channel. Improvement dredging is defined in the RICRMP as a Category B activity (as defined in the RICRMP, activities falling under "Category B" may be subject to additional requirements beyond those to which activities designated as "Category A" are subject). Section 300 of the RICRMP lists policies, prerequisites, prohibitions, and conditions and Category B requirements for specific activities proposed in the Rhode Island Coastal Zone. The proposed Weaver's Cove Dredging Project is subject to Section 300.1, Category B requirements, and Section 300.9, Dredging and Dredged Material Disposal. The following is a listing of the Policies and requirements contained in the RICRMP and a description of the Project's consistency.

#### 5.2.1 Policies

*Policy 1 - The Council shall support necessary maintenance dredging activities in Type 2, 3, 4, 5 and 6 waters, provided environmentally sound disposal locations and procedures are identified.*

The proposed Project includes maintenance dredging within an existing Federal channel in Rhode Island, designated by the RICRMP as Type 6 Waters. The Applicant has employed computer based modeling tools to assess impacts of dredging on the physical environment and changes in the physical environment on living organisms. As a result, the Applicant has integrated operational restrictions into the Dredging Program to avoid or minimize impacts to fisheries. As the Applicant will be placing the dredged material as engineered fill on its upland site in Fall River, Massachusetts, there will be no impact resulting from dredge disposal on the Rhode Island Coastal Zone. The project developer has a contractual right to purchase a Brownfields site in Fall River, Massachusetts on which dredge material will be used as engineered fill, and therefore has control over the dredge material placement site. The permitting process for handling the dredge material at the Fall River site is well under way with the relevant Massachusetts permitting agencies. Details regarding existing and proposed conditions on the Fall River site are subject to the jurisdiction of Massachusetts for review and permitting. Accordingly, no authorization for Massachusetts activities can be sought from the RIDEM/CRMC.

*Policy 2 - Where beneficial re-use options as set forth in RIGL 46-6.1-3 are not practical, the Council favors offshore open-water disposal for large volumes of dredged materials, providing that environmental impacts are minimized.*

As the Applicant will be placing the dredged material outside of Rhode Island as engineered fill on its upland site in Fall River, Massachusetts, this policy does not apply.

*<u>Policy 3</u> - The Council encourages the use of innovative methods of dredged materials disposal, particularly when small volumes of material must be disposed. These options include, but are not limited to, creation of wetlands, shellfish habitat, and beach nourishment in suitable areas.*

As the Applicant will be placing the dredged material as engineered fill on its upland site in Fall River, Massachusetts, this policy does not apply.

*<u>Policy 4</u> - For disposal of dredged material resulting from maintenance dredging operations, a Category A Review may be permitted provided the Executive Director determines that the disposal is conducted consistent with the RIDEM's dredging regulations, and that disposal is at an approved upland disposal facility, or at an approved federal disposal facility. Category A reviews may also be permitted when (1) the upland disposal volume is not greater than 10,000 cubic yards (see § 300.2); (2) the proposal complies with all applicable local zoning ordinances; (3) applicable soil erosion and sediment controls are employed (see § 300.2); and (4) the proposal meets the standards of Section 110.1.*

The Project will be reviewed as a Category B Project, because both maintenance and improvement dredging is proposed. However, as further detailed below, the vast majority of dredging will be maintenance dredging.

The proposed deepening of the existing federally-authorized navigation channel to a depth of -37 ft MLLW includes two feet of improvement dredging. Review of the most recent USACE bathymetry of the Federal channel indicates that the majority of the RI segment of the Federal channel naturally remains deeper than the proposed -37 ft MLLW elevation. The dredging footprint within RI waters is substantially found along the channel edges. While the effort to dredge between the depths of -35 and -37 feet MLLW can be considered improvement dredging, a physical characterization of sediment samples between -35 and -37 feet MLLW from within the proposed RI dredging limits shows the sediments are predominantly fine-grained silts, which are typical of maintenance material. Additional discussion is provided in the Dredging Program at Section 3.2.6.

The Project will be placing the dredged material as engineering fill on its upland site in Fall River, Massachusetts, and as a result does not propose any disposal of dredged materials within the state of Rhode Island.

*<u>Policy 5</u> - For beach replenishment, a Category A review may be permitted for the placement of clean sands provided the Executive Director determines that the placement of the materials shall be for beach replenishment only, and the proposal meets the standards of Section 110.1 and 300.9 as applicable.*

As the Applicant will be placing the dredged material outside of Rhode Island as engineered fill on its upland site in Fall River, Massachusetts, this policy does not apply.

*Policy 6 – The Council utilizes and follows the prescribed processes outlined in the Army Corps regulations and manuals for both upland and in-water dredged material disposal.*

The project proposes the use of dredged material as engineered site fill on an upland site in Fall River, MA. The Applicant has had ongoing discussions with the Army Corps and submitted a Section 10/404 application on March 18, 2004. A copy of this application was provided to the RICRMC. The Project has followed the pertinent Federal regulations per Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act and the associated jointly-published guidelines and manuals prepared by the U.S. Army Corps of Engineers and the U.S. Environmental Protection Agency for the evaluation of dredged material. The Project has applied the tiered evaluation procedures outlined in the Ocean Testing Manual and the Inland Waters Testing Manual (both jointly prepared by the USACE and USEPA) to characterize and evaluate the dredged material, its handling, and placement.

### 5.2.2 Prerequisites

*Prerequisite 1 - RIGL 46-6.1-7 specifies that approvals for dredging and dredged material disposal require Council and DEM approval. Further, the Council, as the lead agency for dredging, shall be the initial point of contact for application submittals. The Council and DEM have developed protocols that set out how proposed dredging activities shall be coordinated for review. A Pre-application consultation request with the Council and DEM (and other agencies as appropriate) is an element of these protocols and is strongly encouraged for all applicants.*

The Applicant has had several pre-application meetings with the representatives of the RICRMC, RIDEM and the USACE, as noted in the cover letter to this application and detailed in FERC Resource Report 1.

*Prerequisite 2 - Except for federal consistency reviews, applicants for dredging or open waters disposal of dredged materials shall be required to obtain a Section 401 (Clean Water Act) Water Quality Certification from RIDEM before the Council can consider granting approval. The application for the Section 401 Water Quality Certification will be forwarded to the RIDEM when all appropriate application forms have been completed.*

The proposed Project will include both maintenance and improvement dredging within an existing Federal navigation channel. The Applicant has prepared this CZM Consistency Determination Application to be filed with the CRMC and a Section 401 Application for Water Quality Certification, although disposal of dredged material is not proposed in Rhode Island.

*Prerequisite 3 - All materials to be dredged for either open water disposal or upland disposal must be classified by RIDEM based upon an approved analysis process prior to the Council acting on an application for either dredging or dredged materials disposal.*

Prior to collecting any sediment samples, the applicant received endorsement of its Sediment Analysis Plan methodology from RICRMC and RIDEM through interagency coordination facilitated by the USACE. Comments from a number of agencies were reflected in the USACE's Tier II SAP issued to the Applicant in January 2003. Physical and chemical analyses were performed on sediment samples collected from several locations within the Rhode Island portion of the Federal channel. The results of this sampling event are summarized in the Dredging Program, Section 5.0.

*Prerequisite 4 - Any application for open-water disposal of dredged material shall obtain a suitability determination from the Army Corps of Engineers.*

Upland disposal at the LNG Terminal site in Fall River, MA is currently the preferred alternative. The Applicant filed its Section 10/404 application with the USACE on March 18, 2004 for its proposed dredging activities, and a copy was sent to the RICRMC.

*Prerequisite 5 - All applicable requirements of the Freshwater Wetlands Act have or will have been met.*

The Project will not affect any areas subject to the Freshwater Wetlands Act. This prerequisite does not apply.

*Prerequisite 6 - Upland disposal of dredged materials must comply with all applicable local zoning ordinances.*

The Project will not include disposal of dredged materials in the State of Rhode Island, and therefore this prerequisite does not apply.

*Prerequisite 7 – When disposal is proposed for approved upland facilities, the applicant shall provide a letter of acceptance from that facility unless the disposal is approved for the 'Central Landfill'.*

The Applicant is in the process of obtaining the necessary permits and approvals for the use of the dredged materials as engineered site fill on its upland site located in Massachusetts. The Applicant will own and operate the site during its construction.

*Prerequisite 8 – For dredge volumes greater than 100,000 cubic yards, a pre-application meeting is required.*

The Applicant has had several meetings with representatives of RICRMC and RIDEM prior to the submittal of this application, as noted in the cover letter to this application and detailed in FERC Resource Report 1.

### 5.2.3 Prohibitions

*Prohibition 1 - The disposal of dredged materials on or adjacent to coastal wetlands in Type 1 and 2 waters is prohibited unless associated with a Council-approved program of wetland building or rehabilitation. The disposal of dredged materials is also prohibited on coastal wetlands designated for preservation in Type 3, 4, 5, and 6 waters.*

The Project will not result in the disposal of dredged materials on coastal wetlands designated for preservation in the State of Rhode Island. This prohibition does not apply.

*Prohibition 2 - No dredging for navigational purposes is permitted in Type 1 waters, and only maintenance dredging may be permitted in Type 2 waters.*

The Project will not conduct dredging in Type 1 or Type 2 waters; dredging is only proposed within Type 6 waters.

### 5.2.4 Additional Category B Requirements

*Requirement 1 - Applicants for all dredging projects shall provide accurate soundings in the area of the proposed dredging operation.*

Accurate soundings are provided in the Dredging Program report. Additionally, the dredging contractor will be required to collect before-dredge and after-dredge surveys, the comparison of which will document the actual dredging footprint and depth of dredging performed.

*Requirement 2 - Applicants shall describe any temporary or permanent disturbance to a coastal feature which is required or anticipated in order to gain access for heavy equipment to the dredging or disposal site.*

All dredging equipment will access Rhode Island waters via barge; therefore, the Project will not result in any temporary or permanent disturbance to a coastal feature in the State of Rhode Island. This requirement does not apply.

*Requirement 3 - When fine-grained sediments are to be removed, the applicant shall employ proper turbidity controls unless the applicant demonstrates that such transport will not be significant or will be controlled by other measures.*

On behalf of the Applicant, ASA has assessed potential impacts of dredging within Rhode Island waters on the physical environment and changes in the physical environment on living organisms through the use of computer based modeling tools. The modeling tools employed by ASA include the following:

1. BFHYDRO – a three dimensional hydrodynamic simulation of the currents in Narragansett Bay, Mount Hope Bay, and the Taunton River built upon site specific data used for numerous study efforts within this aquatic system.
2. SSFATE – developed in conjunction with the USACE, this model simulates the spatial distribution and deposition of suspended sediment plumes.
3. SSDOSE – developed in conjunction with the USACE, this model estimates the exposure effect on aquatic species based on concentration, depositional thickness and exposure duration.

This modeling demonstrates that there will be no significant, permanent adverse impact on aquatic organisms from sediments suspended during the proposed dredging. The maximum predicted sediment concentration in the water column did not exceed the "minimum effects concentration" for any species at any life stage. Additionally, there will be no deposition of suspended sediment exceeding sensitive receptor thresholds.

The model results also indicate that dredging could occur year-round within Rhode Island waters without potential harm to sensitive receptors. Based on preliminary model simulations, it appears that scow overflow is acceptable year-round. Nonetheless, to further reduce any minor potential impacts, the Applicant has committed to a no greater than15 cy open bucket, an operational restriction that will minimize plume size.

Given the predicted lack of impact to aquatic organisms during dredging, combined with a conservatively based bucket size, (i.e., sediment transport will not be significant or will be controlled by other measures), siltation curtains are not necessary.

*Requirement 4 - The applicant shall limit dredging and disposal to specific times of the year in order to minimize odors and/or impacts on fish and shellfish unless the applicant demonstrates that such odors or impacts will not be significant or will be controlled by other measures.*

On behalf of the Applicant, ASA has employed computer based modeling tools to assess impacts of dredging within Rhode Island waters on the physical environment and changes in the physical environment on living organisms. The models used include the SSDOSE model and SSFATE model, developed by ASA in conjunction with the USACE. This

modeling demonstrates that there will be no significant, permanent adverse impact on aquatic organisms from sediments suspended during the proposed dredging. The maximum predicted sediment concentration in the water column did not exceed the "minimum effects concentration" for any species at any life stage. The model results also indicate that dredging could occur year-round within Rhode Island waters without potential harm to sensitive receptors. Nonetheless, a smaller bucket size (15 cy) will be used to further reduce plume size. (See above paragraph for Requirement 3.)

The proposed dredging will be located between one-half mile and one mile from land and will be disposed of at an upland site in Massachusetts. As a result, odors will not be an issue in Rhode Island.

*Requirement 5 - Applicants for improvements dredging projects shall describe, on the basis of competent professional analysis, anticipated siltation rates, sediment sources, and anticipated maintenance dredging needs.*

The proposed deepening of the existing federally-authorized navigation channel to a depth of -37 ft MLLW includes two feet of improvement dredging. Review of the most recent USACE bathymetry of the Federal channel indicates that most of the RI segment of the channel currently has depths greater than the proposed -37 ft MLLW elevation. However, a narrow dredging footprint is found along the channel edges in Rhode Island waters. While the two feet to be removed at depths between -35 and -37 ft MLLW in this narrow run along the channel edges can be considered improvement dredging, the physical results of the sediment samples collected from these areas show that the sediments between -35 and -37 feet are predominantly fine-grained silts, which are typical of the maintenance material located at depths above -35 ft MLLW. Therefore, the Project considers the proposed dredging within Rhode Island waters to be substantially in the nature of maintenance dredging. Refer to the Dredging Program, Section 3.2.6 for additional discussion.

While forecasting the maintenance requirements, schedule, volumes, and physical location of navigational obtrusive sediment accumulations is subject to a host of variables and assumptions, it should be noted that the minor dredging proposed has built up over a period of thirty years since the last maintenance dredging of the channel. Therefore, Weaver's Cove would not expect siltation and sedimentation rates to be very high. However, Weaver's Cove proposes that the navigational channel be subject to regular hydrographic surveys and, based on recommendations from the Pilots, that the maintenance dredging be defined on an as-needed, where needed basis during operations.

*Requirement 6 - When dredged materials are removed from a marine to an upland environment for disposal, the applicant shall demonstrate that any release of pollutants present in the materials shall not cause significant environmental degradation.*

The Project will not dispose of dredged material in the State of Rhode Island. Therefore, this requirement does not apply.

*Requirement 7 - Applicants proposing dredging operations associated with residential boating facilities must demonstrate that the purpose is to restore channels and basins to dimensions that support and maintain existing levels of use, and must submit clear and convincing evidence documenting a diminished use of a facility or navigational fairway by natural shoaling or accretion, not merely a need for additional water depth.*

The Project is not associated with a residential boating facility. Therefore, this requirement does not apply.

### 5.2.5 Standards

*All applications submitted to the Council for dredging and disposal shall demonstrate that they have met all applicable sections of the CRMC/DEM Dredging Application Checklist.*

For ease of review, an annotated checklist has been provided attached to the cover letter of this application.

*Standard 1 - For dredging:*

*(a) Bottoms of dredged areas shall slope downward into the waterway so as to maximize tidal flushing.*

Proposed depths for dredging the Federal Channel will be consistent throughout the channel just as the design depth authorized by Congress is a consistent depth. Existing tidal flushing in the channel is adequate. The proposed increase in depth (2 feet) is a small percentage of the total depth (37 feet) and will have a negligible impact on tidal flushing.

*(b) Bottom slopes at the edges of dredged areas shall have a maximum slope of 50 percent.*

Bottom slopes at the edges of dredged areas will be less than 50 percent. See Attachment B, Sheet 4.

*(c) Dredging shall be planned so as to avoid undermining adjacent shoreline protection facilities and/or coastal features.*

The Project will not be conducted near any shoreline protection facilities and/or coastal features. The requirement of this section will be met.

*(d) Shellfish dredged from waters classified SB or lower shall not be made available for human consumption or bait.*

Shellfish incidentally dredged as part of the project will not be made available for human consumption or bait.

*Standard 2 - For dredged materials disposal in open water:*

The Project currently is not proposing to dispose of dredged material in open water. Therefore, the standards herein do not apply.

*Standard 3 - For dredged materials disposal in the creation of wetlands, aquatic habitat, or island:*

The Project will not dispose of dredged material in the creation of wetlands, aquatic habitat, or island within Rhode Island. Therefore, the standards herein do not apply.

*Standard 4 - Dewatering of dredged material shall occur within a properly designed dewatering facility.*

The Project will not dispose of dredged materials at upland sites in the State of Rhode Island. Therefore, the standards herein do not apply.

*Standard 5 - Disposal for beach nourishment:*

The Project will not dispose of dredged material for beach nourishment. Therefore, the standards herein do not apply.

# Attachment B

Project Plans




PURPOSE: MAINTENANCE & IMPROVEMENT DREDGING OF EXISTING MOUNT HOPE BAY-FALL RIVER HARBOR CHANNEL. CONSTRUCTION OF LNG RECEIVING AND STORAGE TERMINAL.

**MOFFATT & NICHOL INTERNATIONAL**
104 W. 40th ST, 14th FLOOR
NEW YORK, NY 10018

VICINITY AND LOCATION MAP

0 4000' 8000'
1"=4000'

APPLICATION BY:
WEAVER'S COVE ENERGY, LLC

PROPOSED LNG TERMINAL

ADJACENT TO: TAUNTON RIVER & MOUNT HOPE BAY
AT: BRISTOL COUNTY, RHODE ISLAND

SHEET 1 OF 4 DATE: 4/20/04




PURPOSE: MAINTENANCE & IMPROVEMENT DREDGING OF EXISTING MOUNT HOPE BAY-FALL RIVER HARBOR CHANNEL.
CONSTRUCTION OF LNG RECEIVING AND STORAGE TERMINAL.

**MOFFATT & NICHOL INTERNATIONAL**
104 W. 40th ST, 14th FLOOR
NEW YORK, NY 10018

DREDGING PLAN
STA 0+00 TO STA 70+00

0 1000' 2000'
1"=1000'

APPLICATION BY:
WEAVER'S COVE ENERGY, LLC

PROPOSED LNG TERMINAL

ADJACENT TO: TAUNTON RIVER & MOUNT HOPE BAY
AT: BRISTOL COUNTY, RHODE ISLAND

SHEET 2 OF 4 DATE: 4/20/04




| PURPOSE: MAINTENANCE & IMPROVEMENT DREDGING OF EXISTING MOUNT HOPE BAY-FALL RIVER HARBOR CHANNEL. CONSTRUCTION OF LNG RECEIVING AND STORAGE TERMINAL.<br><br>**MOFFATT & NICHOL INTERNATIONAL**<br>104 W. 40th ST. 14th FLOOR<br>NEW YORK, NY 10018 | DREDGING PLAN<br>STA 70+00 TO STA 160+00<br>0 1000' 2000'<br>1"=1000'<br><br>APPLICATION BY:<br>WEAVER'S COVE ENERGY, LLC | PROPOSED LNG TERMINAL<br><br>ADJACENT TO: TAUNTON RIVER & MOUNT HOPE BAY<br>AT: BRISTOL COUNTY, RHODE ISLAND<br><br>SHEET 3 OF 4 DATE: 4/20/04 |
|---|---|---|




SECTION A-A @ STATION 50+00

SCALE: 1"=100' HORIZ
1"=10' VERT




SECTION B-B @ STATION 100+00

SCALE: 1"=100' HORIZ
1"=10' VERT

NOTE: CROSS-SECTIONS VIEW NORTH

| | | |
|---|---|---|
| PURPOSE: MAINTENANCE & IMPROVEMENT DREDGING OF EXISTING MOUNT HOPE BAY-FALL RIVER HARBOR CHANNEL. CONSTRUCTION OF LNG RECEIVING AND STORAGE TERMINAL. | DREDGING CROSS-SECTIONS<br>0 1" 2"<br>AS NOTED | PROPOSED LNG TERMINAL<br>ADJACENT TO: TAUNTON RIVER & MOUNT HOPE BAY<br>AT: BRISTOL COUNTY, RHODE ISLAND |
| **MOFFATT & NICHOL INTERNATIONAL**<br>104 W. 40th ST, 14th FLOOR<br>NEW YORK, NY 10018 | APPLICATION BY:<br>WEAVER'S COVE ENERGY, LLC | SHEET 4 OF 4 DATE: 4/20/04 |

**Application for Rhode Island Department of Environmental Management**

**401 Water Quality Certification**

**Omitted**