IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC, *Plaintiff*, | |
| vs. | Case No. 07-246-S |
| RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*, *Defendants*. | |

**DECLARATION OF LESTER B. SMITH, JR.**

Lester B. Smith, Jr., of Epsilon Associates, Inc. ("Epsilon"), hereby declares:

1. I am a Principal at Epsilon.

2. I have almost 40 years of experience in the field of environmental consulting, including work in government and private sectors. My experience includes waterfront permitting projects, dredging analysis, environmental management plans, gas pipeline permitting, large commercial and government projects involving complex environmental regulatory analysis.

3. I previously directed the scientific & engineering staff at the Massachusetts Coastal Zone Management Office, where I co-authored the Massachusetts Coastal Wetlands Regulations and assisted in the writing of the state's Coastal Zone Management policies.

4. At Epsilon, I have worked on matters pertaining to Weaver's Cove Energy, LLC ("Weaver's Cove").

5. I have reviewed paragraphs 23 and 24 of the Affidavit of Danni Goulet ("Goulet Affidavit"), filed in the captioned case on January 10, 2008.

6. To the best of my knowledge and recollection, I do not recall a telephone conversation fitting the description provided in paragraphs 23 and 24 of the Goulet Affidavit.

7. Specifically, to the best of my knowledge and recollection, I do not recall a telephone conversation in which Mr. Goulet told me that the Rhode Island Coastal Resources Management Council ("CRMC") would not commence its Weaver's Cove consistency review until Weaver's Cove submitted a Water Quality Certificate ("WQC") from the Rhode Island Department of Environmental Management.

8. Furthermore, to the best of my knowledge and recollection, I do not recall a telephone conversation in which Mr. Goulet told me that a WQC was a legal prerequisite to the commencement of the CRMC's Weaver's Cove consistency review or that the absence of a WQC, barred the CRMC as a matter of law from commencing the Weaver's Cove consistency review.

9. To the contrary, I do recall meeting with Mr. Goulet and Mr. Ron Gagnon where they advised that Weaver's Cove could submit a single application to CRMC and they would handle the filing as a joint processing combining CRMC and RI DEM Water Quality Certificate approvals in a single application.

10. A review of my records also indicates that on July 28, 2004 I received a phone call from Mr. Goulet who expressed the view that a stamp of a Rhode Island and the identification of the location of the disposal site were requirements of the RI CRMC program. I do not have any record or recollection that Mr. Goulet indicated that RI DEM Water Quality Certification approval was a prerequisite for RI CRMC approval.

* * *

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 8, 2008.

Lester B. Smith, Jr.