# CZMA

# FEDERAL CONSISTENCY OVERVIEW

SECTION 307 OF THE
COASTAL ZONE MANAGEMENT ACT OF 1972

AUGUST 10, 2007

OFFICE OF OCEAN AND COASTAL RESOURCE MANAGEMENT

CELEBRATING 200 YEARS of Science, Service, & Stewardship
1807 U.S. Coast and Geodetic Survey 2007

UNITED STATES DEPARTMENT OF COMMERCE
National Oceanic and Atmospheric Administration
NATIONAL OCEAN SERVICE
OFFICE OF OCEAN AND COASTAL RESOURCE MANAGEMENT
1305 East-West Hwy. (N/ORM), Silver Spring, Maryland 20910

# FEDERAL CONSISTENCY OVERVIEW*

August 10, 2007

Office of Ocean and Coastal Resource Management (OCRM)
National Ocean Service (NOS)
National Oceanic and Atmospheric Administration (NOAA)

**CONTENTS**

I. Introduction ........ 3
II. Definition ........ 4
- A. Federal Actions ........ 4
- B. Coastal Effects ........ 4
- C. Enforceable Policies ........ 5
- D. Coastal Uses ........ 7
- E. Coastal Resources ........ 7

III. Benefits ........ 8
IV. National Interest Considerations ........ 8
V. Basic Federal Consistency Procedures ........ 10
- A. Federal Agency Activities and Development Projects ........ 10
- B. Federal License or Permit Activities ........ 12
- C. OCS Plans ........ 14
- D. Federal Assistance Activities ........ 15
- E. Other Federal Actions ........ 15
- F. Mediation of Disputes ........ 15
- G. Appeals to the Secretary of Commerce ........ 16
- H. Interstate Consistency ........ 18
- I. Information in State Objection/Conditional Concurrence Letters ... 18

Appendix A - Summary of Federal Consistency Provisions ........ 20
Appendix B - Federal Agency Activities Flow Chart ........ 21
Appendix C - Federal License or Permit Activities Flow Chart ........ 22

---

* For further information contact:
**David Kaiser**, Senior Policy Analyst
OCRM / NOS / NOAA
Univ. of New Hampshire, 246 Gregg Hall
35 Colovos Rd., Durham, NH, 03824-3534.
603-862-2719. Fax: 603-862-3957. david.kaiser@noaa.gov
or
**Kerry Kehoe**, Federal Consistency Specialist
OCRM / NOS / NOAA
1305 East-West Highway, 11th Floor (N/ORM3)
Silver Spring, MD 20910.
301-713-3155, x151. Fax: 301-713-4367. kerry.kehoe@noaa.gov

## I. INTRODUCTION

This document is an overview of the Coastal Zone Management Act (CZMA) federal consistency provision and is the principal educational material used in OCRM's Federal Consistency Workshops. This overview is for general information and educational purposes only; it is not an enforceable document or intended to establish policy and should not be cited to for CZMA compliance purposes. The CZMA and National Oceanic and Atmospheric Administration (NOAA) regulations contain the information needed for CZMA compliance, *see* **CZMA § 307 (16 U.S.C. § 1456)** and NOAA's **federal consistency regulations, 15 C.F.R. part 930**. This Federal Consistency Overview, the statute, the regulations, state and federal contacts and other information are located on OCRM's Federal Consistency web page at:

**http://coastalmanagement.noaa.gov/consistency/welcome.html**

The CZMA was enacted on October 27, 1972, to encourage coastal states, Great Lake states, and U.S. Territories and Commonwealths (collectively referred to as "coastal states" or "states") to be proactive in managing natural resources for their benefit and the benefit of the Nation. The CZMA recognizes a national interest in the resources of the coastal zone and in the importance of balancing the competing uses of those resources. The CZMA is a voluntary program for states. If a state elects to participate it develops and implements a coastal management program (CMP) pursuant to federal requirements. *See* CZMA § 306(d); 15 C.F.R. part 923. State CMPs are comprehensive management plans that describe the uses subject to the management program, the authorities and enforceable policies of the management program, the boundaries of the state's coastal zone, the organization of the management program, and related state coastal management concerns. The state CMPs are developed with the participation of Federal agencies, state and local agencies, industry, other interested groups and the public. Thirty-five coastal states are eligible to participate in the federal coastal management program. Thirty-four of the eligible states have federally approved CMPs. Illinois is currently developing a CMP.

The CZMA federal consistency provision is a cornerstone of the CZMA program and a primary incentive for states' participation. Federal consistency provides states with an important tool to manage coastal uses and resources and to facilitate cooperation and coordination with Federal agencies. Under the CZMA Federal agency activities that have coastal effects are consistent to the maximum extent practicable with federally approved enforceable policies of a state's CMP. In addition, the statute requires non-federal applicants for federal authorizations and funding to be consistent with enforceable policies of state CMPs.

A lead state agency coordinates a state's federally approved CMP and federal consistency reviews. At the federal level, OCRM, within NOAA/NOS, among other duties and services, oversees the application of federal consistency; provides management and legal assistance to coastal states, Federal agencies, Tribes and others; and mediates CZMA related disputes. NOAA's Office of General Counsel for Ocean Services assists OCRM and processes appeals to the Secretary of Commerce.

NOAA's federal consistency regulations were first issued in 1979. The regulations were substantially revised in 2000. *See* 65 Fed. Reg. 77123-77175 (Dec. 8, 2000). The 2000 revisions were largely in response to the 1990 amendments to the CZMA, *see* Pub. L. No. 101-508 and related Conference Report, H.R. Conf. Rep. No. 964, 101st Cong., 2d Sess., 970-972 (Conference Report). The regulations were further revised in 2006 in response to *The National Energy Policy Development Group's Report* (May 2001) (Energy Report) and the *Energy Policy Act of 2005* (Pub. L. No. 109-58) (EPAct). *See* 71 Fed. Reg. 787-831 (Jan. 5, 2006) and 71 Fed. Reg. 75864-75865 (Dec. 19, 2006).

## II. DEFINITION

Federal consistency is the CZMA provision that ***federal actions*** that have reasonably foreseeable ***effects*** on any ***land or water use*** or ***natural resource*** of the coastal zone (also referred to as coastal uses or resources, or coastal effects) should be consistent with the ***enforceable policies*** of a coastal state's federally approved CMP. These terms are described below.

**A. Federal actions:** There are four types of federal actions: Federal agency activities, federal license or permit activities, outer continental shelf (OCS) plans, and federal assistance to state and local governments.

1. ***Federal agency activities*** – activities and development projects performed by a Federal agency, or a contractor for the benefit of a Federal agency. 15 C.F.R. part 930, subpart C.

   E.g., Fisheries Plans by the National Marine Fisheries Service, Naval exercises, the disposal of federal land by the General Services Administration, a U.S. Army Corps of Engineers (Corps) breakwater or beach renourishment project, an OCS oil and gas lease sale by the Minerals Management Service (MMS), improvements to a military base, Naval disposal of radioactive or hazardous waste performed by a private contractor, activities in National Parks such as installation of mooring buoys or road construction;

2. ***Federal license or permit activities*** – activities performed by a non-Federal entity requiring federal permits, licenses or other form of federal authorization. 15 C.F.R. part 930, subpart D.

   E.g., activities requiring Corps 404 permits, Corps permits for use of ocean dump-sites, Nuclear Regulatory Commission licenses for nuclear power plants, licenses from the Federal Energy Regulatory Commission (FERC) for hydroelectric facilities;

3. ***OCS plans*** – MMS approvals for OCS plans, pursuant to the Outer Continental Shelf Lands Act. The CZMA process is similar to federal license or permit activities. 15 C.F.R. part 930, subpart E.

4. ***Federal assistance to state and local governments***. 15 C.F.R. part 930, subpart F.

   E.g., Federal Highway Administration funds to coastal state and local governments, construction grants for wastewater treatment works, hazardous waste management trust fund, Housing and Urban Development grants.

**B. Coastal Effects:**

At the heart of federal consistency is the "effects test." A federal action is subject to CZMA federal consistency requirements if the action will affect a coastal use or resource, in accordance with NOAA's regulations. NOAA's regulations, 15 C.F.R. § 930.11(g), define coastal effects as:

> The term "effect on any coastal use or resource" means any reasonably foreseeable effect on any coastal use or resource resulting from a Federal agency activity or federal license or permit activity (including all types of activities subject to the federal consistency requirement under subparts C, D, E, F and I of this part.) Effects are not just environmental effects, but include effects on coastal uses. Effects include both direct effects which result from the activity and occur at the same time and place as the activity, and indirect (cumulative and secondary) effects

> which result from the activity and are later in time or farther removed in distance, but are still reasonably foreseeable. Indirect effects are effects resulting from the incremental impact of the federal action when added to other past, present, and reasonably foreseeable actions, regardless of what person(s) undertake(s) such actions.

As described in the preamble to the 2000 revisions to NOAA's consistency regulations, the definition of the effects test is from the 1990 amendments to the CZMA. These amendments, in part, replaced the phrase "directly affecting the coastal zone," reflecting Congressional intent to overturn the effect of *Secretary of the Interior v. California*, 464 U.S. 312 (1984). *See* 136 Cong. Rec. H 8076 (Sep. 26, 1990). The 1990 CZMA amendments also clarified that all federal agency activities meeting the "effects" standard are subject to CZMA consistency and that there are no exceptions, exclusions or categorical exemptions from the requirement. Conference Report at 970-71; 136 Cong. Rec. H 8076 (Sep. 26, 1990). The Conference Report further informed NOAA's 2000 regulatory revisions by stating that:

> The question of whether a specific federal agency activity may affect any natural resource, land use, or water use in the coastal zone is determined by the federal agency. The conferees intend this determination to include effects in the coastal zone which the federal agency may reasonably anticipate as a result of its action, including cumulative and secondary effects. Therefore, the term "affecting" is to be construed broadly, including direct effects which are caused by the activity and occur at the same time and place, and indirect effects which may be caused by the activity and are later in time or farther removed in distance, but are still reasonably foreseeable.

**C. Enforceable policies:**

An enforceable policy is a state policy that is legally binding under state law (e.g., through constitutional provisions, laws, regulations, land use plans, ordinances, or judicial or administrative decisions), and by which a state exerts control over private and public coastal uses and resources, and which are incorporated in a state's federally approved CMP. CZMA § 304(6a) and 15 C.F.R. § 930.11(h). OCRM has informed states that enforceable policies are given legal effect by state law and do not apply to federal lands, federal waters, federal agencies or other areas or entities outside a state's jurisdiction, unless authorized by federal law (the CZMA does not confer such authorization).

Early coordination and identification of applicable state CMP enforceable policies is key to ensuring that Federal agencies and applicants address state policies and issues. Early coordination will also help determine what measures, if any, need to be taken so that the activity is consistent with the state policies.

OCRM approves the incorporation of enforceable policies, and changes to enforceable policies, into state CMPs. *See* CZMA §§ 306(d) and 306(e). The program change process serves an important notice and review purpose in the CZMA state-federal partnership. In return for the federal consistency authority granted to states, federal agencies are provided with an opportunity to review and comment on the development of a state's CMP and on subsequent changes to the CMP. This also means that a policy should not become an enforceable policy of a state's CMP by "incorporation by reference." For example, OCRM has approved the incorporation of enforceable policy "A" into a state's CMP. Policy A references another policy "B" that has not been submitted to OCRM for approval. Policy B, even though it is referenced in policy A is *not* an enforceable policy of the state's federally approved CMP, because policy B has not gone through the program change approval process, giving OCRM, Federal agencies and the public an opportunity to comment. The incorporation of policy B into a state's CMP would have to be approved by OCRM to become an enforceable policy of a state's federally approved CMP.
OCRM, using its program change regulations (15 C.F.R. part 923, subpart H) and *Program Change Guidance* (July 1996), evaluates states' proposed enforceable policies as described below.

1. Policies are legally binding under state law and apply only to areas and entities within the state's jurisdiction. CZMA § 304(6a).

Approval Consideration: (1) A wetlands protection policy in a state statute, regulation or in a state's CMP program document is an enforceable policy if the statute or regulation contains a mechanism that imposes the policy on the public and private uses within the state's jurisdiction. This could be a state permit program or a provision in state law that requires all state agencies to apply the policy in their permit and enforcement actions. A policy in a state's CMP program document should also be linked to such a statutory or regulatory enforceable mechanism.

(2) The CZMA does not authorize states to establish regulatory standards for Federal agencies. A state policy that would regulate or otherwise establish standards for Federal agencies or federal lands or waters would not meet the CZMA's definition of "enforceable policy" (i.e., legally binding under state law). CZMA § 304(6a). States apply their federally approved enforceable policies through CZMA federal consistency reviews, Federal agencies are consistent to the maximum extent practicable and non-Federal applicants for federal authorizations are fully consistent with the enforceable policies.

Applicability Consideration: Some states CMPs consistency decisions are made by issuance or denial of state permits (the states' enforceable policies are contained within the standards of the states' permit programs). However, a state should not determine consistency by issuance of a state permit for Federal agency activities under CZMA § 307(c)(1). Under NOAA's regulations. neither the CZMA nor OCRM's approval of a state's enforceable policy or permit program authorize the application of state permit requirements to Federal agencies. The Federal agencies are consistent to the maximum extent practicable with the underlying enforceable policies of the state permit program, but do not have to apply for or obtain the state permit (unless another federal law requires the federal agency to obtain the permit). Non-federal applicants for federal license or permit activities would have to apply for and obtain the applicable state permit for state CZMA concurrence where the proposed activity is located within the state's jurisdiction.

2. Policies are not preempted by Federal law. *See* OCRM's *Program Change Guidance*, section II.D.

Approval Consideration: Federal preemption is the principle, derived from the Supremacy Clause of the Constitution, that a federal law can supersede or supplant any inconsistent state law or regulation. Preemption applies to state law and not other federal law. OCRM's long-standing interpretation of the definition of "enforceable policy" under the CZMA (16 U.S.C. § 1453(6a)) is that if a state policy specifically seeks to regulate an activity where state regulation is preempted by federal law, it is not legally binding under state law and would not be an enforceable policy under the CZMA. For example, North Carolina sought to regulate low level aircraft in flight by adopting policies that imposed minimum altitude and decibel levels, and other overflight restrictions. OCRM denied the state's request to incorporate these policies into the North Carolina CMP because the policies were, on their face, preempted by federal law administered by the Federal Aviation Administration.

Applicability Consideration: Under the federal consistency authority, states apply NOAA-approved enforceable policies to federal actions. If a state's enforceable policies, as specifically described or applied, are not preempted, the state may apply them through CZMA federal consistency to a preempted field. It should be noted that whether state action is preempted is a fact-specific inquiry.

3. Policies should be applied to all relevant public and private entities and would not discriminate against a particular type of activity, or, even if neutrally written, against a particular Federal agency. *Id.*

Approval Consideration: State policies should be based on effects to coastal uses or resources and not on a particular type of activity. This ensures that the policy is applicable to any type of activity that has coastal effects and will not discriminate against a particular user group. For example, a state was concerned with possible impacts from offshore oil and gas development on specific fishing areas and on discharges that might follow ocean currents and eddies into the state's estuarine areas. The state proposed oil and gas specific energy policies. OCRM did not approve the policies because they imposed requirements on one user group, when other types of activities might have the same coastal impacts. The state re-wrote the policies to be based on coastal impacts and information needs to assess such impacts. Now the policies are applicable to all OCS energy projects and other activities having similar effects.

4. Policies are consistent with CZMA federal consistency requirements. OCRM's *Program Change Guidance*, section II.D; *see also id.* at Appendix B.5. (federal consistency procedures).

Approval Consideration: When state policies are proposed to be incorporated into a CMP, a state should ensure that the CMP continues to balance the objectives of the CZMA and continue to give priority consideration to coastal-dependent uses and orderly processes for siting major facilities related to national defense, energy, fisheries development, recreation, ports and transportation. *See* CZMA § 303(2)(D). Policies affecting these "national interests" have implications for federal consistency. For example, a state has a policy that opposes all offshore oil and gas development. OCRM did not approve the incorporation of the policy into the state's federally approved CMP, because OCRM determined the policy would affect the state's obligation to consider the national interest in energy facility siting.

Applicability Consideration: State's should not require a Federal agency to redefine an activity proposed by a Federal agency. For Federal agency activities under CZMA § 307(c)(1), states review activities and development projects that are *proposed* by a Federal agency. 15 C.F.R. § 930.36(a). *See also, e.g.,* 15 C.F.R. §§ 930.35, .39(a), .46(a), .1(c), .11(d); 65 Fed. Reg. 77130, Col. 2-3 (December 8, 2000) (preamble to final 2000 rule). For example, a state proposed a policy that, when dredged material is not suitable for beach renourishment, would require a dredger to obtain suitable material from a location not related to the dredging to renourish the beaches. OCRM did not approve the policy as written because it would redefine, in part, an Army Corps of Engineers dredging project to a beach renourishment project that is not related to the dredging. The policy was re-written to tie beach renourishment and the alternate source of material to mitigate impacts to coastal uses or resources resulting from proposed dredging.

**D. Coastal uses:** Some examples of coastal uses include such activities as: public access, recreation, fishing, historic or cultural preservation, development, energy infrastructure and use, hazards management, marinas, floodplain management, scenic and aesthetic enjoyment, and resource creation or restoration.

**E. Coastal resources:** Coastal resources include biological or physical resources that are found within a state's coastal zone on a regular or cyclical basis. Biological and physical resources include, but are not limited to, air, tidal and nontidal wetlands, ocean waters, estuaries, rivers, streams, lakes, aquifers, submerged aquatic vegetation, land, plants, trees, minerals, fish, shellfish, invertebrates, amphibians, birds, mammals, and reptiles, etc.

## III. BENEFITS

Federal consistency is an important mandatory, but flexible mechanism to foster consultation, cooperation, and coordination between states and Federal agencies. Federal consistency is more than just a procedural dictate; it helps ensure the balanced use and protection of coastal resources through state CMP policies.

To maximize the benefits of federal consistency, Federal agencies should provide routine notification to coastal states of actions affecting the coastal zone, and coastal states should pay attention to proposed federal actions, develop adequate consistency procedures, and notify Federal agencies, other state agencies, and others of a state's assertion of consistency. For example, states could make connections with the Federal agencies, inform them of the federal consistency requirements, possibly develop memoranda of understanding (MOUs), ensure that the CMP obtains notice, and respond when the CMP does receive notice. In summary, Federal agencies and others have an affirmative duty to comply with the federal consistency requirements, but states should take consistent and assertive steps.

Federal consistency provides Federal agencies with an effective mechanism to document coastal effects and to address state coastal management concerns. Moreover, compliance with the consistency requirement complements National Environmental Policy Act (NEPA) compliance. Even though the CZMA effects test is different than NEPA investigations and the CZMA requires Federal agencies to alter projects to be consistent with state CMP policies, NEPA is an effective delivery mechanism for federal consistency. (States do not review NEPA documents for consistency – they review the federal action a NEPA document evaluates, but NEPA documents often provide necessary background information.)

Early attention to federal consistency can provide the Federal agency with state CMP and public support and a smoother and expeditious federal consistency review. Early consultation and cooperation between Federal agencies and state CMPs can help Federal agencies avoid costly last minute changes to projects in order to comply with state CMP policies.

States concur with approximately 93-95% of all federal actions reviewed. Maintaining this percentage means that states and Federal agencies should know their consistency responsibilities and develop cooperative relationships to foster effective coordination and consultation.

## IV. NATIONAL INTEREST CONSIDERATIONS

Federal consistency gives states substantial input into federal actions affecting the coastal zone. There are, however, provisions that balance state objectives with consideration of federal objectives and mandates to ensure that the national interest in CZMA objectives is furthered. These considerations include:

**Consistency must be based on coastal effects.** While the federal consistency effects test covers a wide range of federal actions, federal consistency review is triggered when it is reasonably foreseeable that a federal action will have coastal effects, referred to as the "effects test." Consistency does *not* apply to every action or authorization of a Federal agency, or of a non-federal applicant for federal authorizations. For Federal agency activities, a Federal agency makes this determination of whether its activity will have coastal effects. Under NOAA's regulations, a "function" by a Federal agency refers to a *proposal for action* that has reasonably foreseeable coastal effects, and not to all tasks, ministerial activities, meetings,

discussions, exchanges of views, and interim or preliminary activities incidental or related to a proposed action. For federal license or permit activities and federal assistance activities, state CMPs propose to review activities that will have coastal effects and OCRM makes the determination of effects by approving the ***lists*** of federal authorizations and financial assistance programs that a state wishes to include in its CMP. In order to be on the list, the types of activities covered by the federal authorization or funding program should have reasonably foreseeable coastal effects on a regular basis. Federal agencies and other interested parties have input into OCRM's approval of such lists and additions to the lists. If a state wishes to review an ***unlisted*** federal license or permit activity, it notifies the applicant and the Federal agency and seeks OCRM approval to review the activity. OCRM's decision is based on whether the state has shown that an unlisted activity will have reasonably foreseeable coastal effects and, again, Federal agencies and the applicant have an opportunity to comment to OCRM.

**Federally approved programs and state CMP enforceable policies.** OCRM, with the opportunity for input from Federal agencies, local governments, industry, non-governmental organizations and the public, approves state CMPs and their enforceable policies, including subsequent changes to a state's CMP.

**Consistent to the maximum extent practicable (only applies to Federal agency activities).** NOAA's regulations define "consistent to the maximum extent practicable" to mean a Federal agency activity is fully consistent with the enforceable policies of a state's CMP unless federal legal requirements prohibit full consistency. This ensures that Federal agencies are able to meet their legally authorized mandates, even though the activity may not be consistent with a state's enforceable policy. If a Federal agency has the discretion to meet a state's enforceable policy, then it should be consistent with that policy. However, a Federal agency's administrative record applying its legal mandates may dictate an action that is not fully consistent with a state's policy. Thus, for Federal agency activities under CZMA § 307(c)(1), a Federal agency may proceed with an activity over a state's objection if the Federal agency determines its activity is consistent to the maximum extent practicable with the enforceable policies of the state's CMP.

For example, this means that even if a state objects, the Minerals Management Service (MMS) may proceed with an OCS lease sale when MMS provides the state with the reasons why the Outer Continental Shelf Lands Act (OCSLA) and MMS's administrative record supporting the lease sale decision prohibits MMS from fully complying with the state's enforceable policies.

Under NOAA's regulations, the consistent to the maximum extent practicable standard also allows Federal agencies to deviate from State enforceable policies and CZMA procedures due to "exigent circumstances." An exigent circumstance is an emergency or unexpected situation requiring a Federal agency to take quick or immediate action.

In addition, as part of its consistent to the maximum extent practicable argument, MMS could proceed if it determined that its activity was *fully* consistent with the State's enforceable policies. *See* 15 C.F.R. § 930.43(d). In either case, the Federal agency provides the state CMP agency with a written notice that it is proceeding over the state's objection and explains why the activity is consistent to the maximum extent practicable.

Consistent to the maximum extent practicable and exigent circumstances refers to consistency with a state CMP's substantive requirements as well as the procedural requirements of NOAA's regulations. There may be times that a federal legal requirement or an emergency situation requires a Federal agency to act sooner than the end of the 90-day consistency period. In such cases, the Federal agency should consult with the state CMP as early as possible.

A Federal agency should not use a lack of funds as a basis for being consistent to the maximum extent practicable. Thus, Federal agencies are encouraged to consult early with state CMPs to ensure that the Federal agency has budgeted for meeting state CMP enforceable policies.

**Appeal state objection to Secretary of Commerce (only for Non-Federal applicants).** Non-federal applicants for federal license or permits and state and local government applicants for federal financial assistance may appeal a state's objection to the Secretary of Commerce. Appeals to the Secretary are not available for Federal agency activities. The Secretary overrides a state's objection if the Secretary finds that an activity is consistent with the objectives or purposes of the CZMA or is otherwise necessary in the interest of national security. If the Secretary overrides a state's objection, then the Federal agency may authorize the activity. The Secretarial appeal process is discussed in more detail later in this document. There is also a database of all appeals filed with the Secretary on OCRM's Federal Consistency web page.

**Presidential exemption (only for Federal agency activities).** After any appealable final judgement, decree, or order of any Federal court, the President may exempt from compliance the elements of a Federal agency activity that are found by a Federal court to be inconsistent with a state's CMP, if the President determines that the activity is in the paramount interest of the United States. CZMA § 307(c)(1)(B). This exemption was added to the statute in 1990 and has not yet been used.

**Mediation by the Secretary or OCRM.** Mediation has been used to resolve federal consistency disputes and allowed federal actions to proceed. In the event of a serious disagreement between a Federal agency and a state, either party may request that the Secretary of Commerce mediate the dispute. OCRM is also available to mediate disputes between states, Federal agencies, and other parties.

## V. BASIC FEDERAL CONSISTENCY PROCEDURES

Two important things to keep in mind to facilitate consistency reviews is for the Federal agency, state CMP, and applicant to discuss a proposed activity as early in the process as possible, and that state CMPs and Federal agencies can agree, at any time, to more flexible consistency review procedures (providing public participation requirements are still met).

*See* Appendix A for a chart summary of the consistency requirements, and Appendices B and C for flow charts for Federal agency activities and Federal license or permit activities.

### A. Federal Agency Activities and Development Projects

Federal agencies proposing an activity should follow the requirements of CZMA § 307(c)(1), (2)(16 U.S.C. § 1456(c)(1), (2)) and 15 C.F.R. part 930, subparts A, B and C. For example:

1. Federal "development projects" *inside* the boundaries of a state's coastal zone are deemed to have coastal effects and a Consistency Determination should be submitted to the state CMP.

2. Federal agency determines if a federal activity (in or outside coastal zone) and development projects outside coastal zone will have reasonably foreseeable coastal effects. States are encouraged to list Federal agency activities that are expected to affect coastal uses or resources in their approved CMPs, and to monitor unlisted activities and to notify Federal agencies when an unlisted activity should undergo consistency review.

For Federal agency activities, the listed/unlisted provisions in NOAA's regulations are recommended procedures for facilitating state-federal coordination. Whether or not an activity is listed, Federal agencies provide state CMPs with Consistency Determinations (CDs) for Federal agency activities affecting any coastal use or resource. Because Federal agencies have an affirmative statutory duty to provide states with CDs for activities with reasonably foreseeable coastal effects and because the statute requires state CMP agencies to provide an opportunity for public input into a state's consistency decision, a state should not relieve the Federal agency or itself of consistency obligations by listing or not listing a Federal agency activity. If a state and/or a Federal agency believe that a type of Federal agency activity should not be subject to federal consistency, then they may use the applicable provisions provided in NOAA's regulations: general permits (§930.31(d)); *de minimis* activities (§930.33(a)(3)); environmentally beneficial activities (§930.33(a)(4)); general consistency determinations (§930.36(c)); negative determinations and general negative determinations (§930.35).

3. The Federal agency should contact the state CMP at the earliest possible moment in the planning of the activity to ensure early state-Federal coordination and consultation.

4. If coastal effects are reasonably foreseeable, then the Federal agency submits a Consistency Determination (CD) to a state CMP at least 90 days before activity starts. A CD should include a detailed description of the proposed activity, its expected coastal effects, and an evaluation of how the proposed activity is consistent with applicable enforceable policies in the state's CMP. The Federal agency does not need to submit anything beyond that described in 15 C.F.R. § 930.39 and may submit that information in any manner it chooses. Finally, Federal agencies provide, and states review, CDs only for the Federal agency's proposed action for consistency — Federal agencies should not provide, and states should not review, CDs for NEPA documents, ESA consultations, federal permits the federal agency may need, etc., that are related to the proposed activity. These items may, of course be useful to the Federal agency and state as part of the background information the Federal agency may provide with its CD, but they should not be the subject of a separate CZMA review.

   Once a complete CD has been received by a state CMP, the state should not delay the start of the 90-day CZMA review period by requiring information that is in addition to the information required by §930.39 or that the Federal agency apply for or obtain a state permit. If the state CMP agency believes that the information required by §930.39 has not been submitted, it should immediately notify the Federal agency.

5. If no coastal effects, a Federal agency may provide a Negative Determination. *See* 15 C.F.R. § 930.35.

6. State CMP has 60 days (plus appropriate extensions) to concur with or object to a Federal agency's CD. State CMP agency and Federal agency may agree to alternative time period. Any such agreement should be set forth in writing so that it is clear there is a meeting-of-the-minds between a state and Federal agency. Ideally, the written agreement should be one document that both parties sign. The written agreement should refer to a specific end date and should not be written to require a later event or condition to be satisfied.

7. State CMP should provide for public comment on the state's consistency review. A state should not rely on a Federal agency notice, unless the Federal agency notice specifically says that comments on the ***state CMP's consistency review*** should be sent to the state CMP agency.

8. State concurrence is presumed if the state does not meet time frames.

9. If a state CMP agrees with a CD, then the Federal agency may immediately proceed with the activity. If a state objects, then the state's objection should describe how the proposed activity is inconsistent with specific enforceable policies of the federally approved CMP. In the event of an objection, a state CMP and Federal agency should attempt to resolve any differences during the remainder of the 90-day period. If resolution has not been reached at the end of the 90-day period the Federal agency should consider postponing final federal action until conflicts have been resolved. However, at the end of the 90-day period a Federal agency may, notwithstanding state CMP objection, proceed with the activity if the Federal agency clearly describes, in writing, to the state CMP how the activity is consistent to the maximum extent practicable.

10. If there is a dispute between a Federal agency and state CMP, either party may seek mediation by OCRM or the Secretary of Commerce (the Secretary's mediation is a more formal process).

**B. Federal License or Permit Activities**

A private individual or business, or a state or local government agency, or any other type of *non-federal* entity, applying to the federal government for a required permit or license or any other type of authorization, is subject to the requirements of CZMA § 307(c)(3)(A)(16 U.S.C. § 1456(c)(3)(A)) and 15 C.F.R. part 930, subparts A, B and D. This includes American Indian and Alaska Native entities applying for federal authorizations.[1]

There are essentially four elements for determining that an authorization from a Federal agency is a "federal license or permit" subject to federal consistency review. First, federal law requires that an applicant obtain a federal authorization. Second, the purpose of the federal authorization is to allow a non-federal applicant to conduct a proposed activity. Third, the activity proposed has reasonably foreseeable effects on a state's coastal uses or resources, and fourth, the proposed activity was not previously reviewed for federal consistency by the state CMP agency (unless the authorization is a renewal or major amendment pursuant to §930.51(b)). These four elements are embodied in NOAA's regulations as discussed below:

1. State CMP, with OCRM approval, determines effects:
   a. listed v. unlisted activity; and b. inside v. outside coastal zone.

All federal license or permit activities occurring in the coastal zone are deemed to affect coastal uses or resources if the state CMP has *listed* the particular federal license, permit or authorization in its federally approved CMP. The lists may be updated through OCRM's program change process. Prior to submitting the updated list to OCRM the state should consult with the relevant Federal agency.

For a *listed* activity occurring *in the coastal zone*, the applicant submits a Consistency Certification to the authorizing Federal agency and the affected state CMP(s). In addition to the Certification, the applicant provides the state with the *necessary data and information* required by NOAA's regulations at 15 C.F.R.

---

[1] NOAA's regulations do not specifically include American Indians and Alaska Natives in the definition of applicant, *see* 15 C.F.R. § 930.52. However, the statute has been interpreted by OCRM and federal courts to apply to American Indians and Alaska Natives. *See Narragansett Indian Tribe of Rhode Island v. The Narragansett Electric Comp.*, 878 F. Supp. 349, 362-365 (D. RI 1995), *upheld on other grounds,* 89 F.3d 908 (1st Cir. 1996).

§ 930.58. This information will usually be contained in the application to the Federal agency, but may include other information described by a state CMP, if the information is *specifically included in the state's federally approved CMP document and identified as "necessary data and information."* If a state wants to require information needed to commence the six-month review period in addition to that described by NOAA in §930.58(a), the state should amend its CMP to identify specific "necessary data and information" pursuant to §930.58(a)(2).

For *listed* activities *outside the coastal zone*, an applicant submits a Consistency Certification to the state CMP and the Federal agency if the activity falls within a *geographic location* described in a state's CMP for listed activities outside the coastal zone. For listed activities outside the coastal zone where a state has *not* described a geographic location, a state CMP may follow the unlisted activity procedure described below, if it wants to review the activity.

For unlisted activities, in or outside the coastal zone, a state CMP may notify the applicant, the relevant Federal agency, and OCRM that it intends to review an unlisted activity on a case-by-case basis. The state CMP makes this notification within 30 days of receiving notice of the application to the Federal agency for an activity; otherwise the state waives its consistency rights. The waiver does not apply where the state CMP does not receive notice (notice may be actual or constructive).[2] OCRM may approve the state's consistency review. The applicant and the Federal agency have 15 days from receipt of a state CMP's request to provide comments to OCRM. OCRM makes a decision usually within 30 days of receipt of a state's request. The basis for OCRM's decision is whether the proposed activity will have reasonably foreseeable coastal effects. The Federal agency may not authorize the activity until the consistency process is complete. The unlisted activity procedure is available for active applications.

2. Applicant for any required federal authorization submits a Consistency Certification and necessary data and information to the state CMP. State CMP agency should document when this date occurs. State CMP agency has 30 days to notify the applicant and Federal agency that the submission does not include the necessary data and information. If a state CMP agency does not respond within the 30-day period, the six-month review period begins when the state CMP agency received the applicant's initial CZMA submission, regardless of whether the submission contained all necessary data and information.

---

[2] For example, constructive notice may be provided if it is published in an official federal public notification document or through an official state clearinghouse. For either form of notice, the notices contain sufficient information for a state CMP agency to learn of the application for the activity, determine the activity's geographic location, and determine whether coastal effects are reasonably foreseeable.

A newspaper article containing the information required by 15 C.F.R. § 930.54(a)(2) may provide notice. However, even assuming a newspaper article, or other similar form of notice, describes the activity and its location with sufficient specificity for a state to determine whether coastal effects are reasonably foreseeable, such notice should verify that an application was received by a Federal agency. For example, receipt of an application may be verified if a Federal agency spokesperson was quoted in the article stating that the agency had received the application for the federal authorization. Statements by other sources as to whether a Federal agency received the application could be speculative. If a statement by a Federal official is not in the article, then once the state CMP agency read the article, it could seek to verify whether the Federal agency received an application. The 30-day notification period could begin when a state CMP agency verified that a federal application was filed.

3. The six-month review period can *only* begin if an applicant has filed a formal application with a licensing federal agency *and* has submitted a Consistency Certification to the state CMP agency.

4. State CMP has six months to respond, but notifies applicant if review will go beyond three months.

5. Applicant and state CMP agency may agree to stay the six-month review period. A stay "tolls" the running of the six-month review period for an agreed upon time ending on a specific date, after which the remainder of the six-month review period would continue. Such agreements are set forth in writing so that it is clear there is a meeting-of-the-minds between the state and the applicant. Ideally, the written agreement should be one document that both parties sign. The written agreement for a stay should specify five (5) dates:

    1. Date the state's 6-month review period commenced;
    2. Date the 6-month period was to end;
    3. Date during the 6-month review period that the stay begins;
    4. Date that the stay ends; and
    5. Date the state's decision is due. For example, the 6-month period was to end June 30 and a stay was executed beginning on June 1 and ending on September 1. There are 30 days left in the 6-month review period. Therefore, the state's decision would now be due September 30 (30 days after the ends). Stays should not be written to require a later event or condition to be satisfied to end the stay. If a state objects to an applicant's project and the applicant appeals to the Secretary of Commerce, failure to follow these instructions could result in the Secretary overriding the state's objection because the state's objection was issued after the six-month review period due to an unsupportable stay agreement.

6. The state should provide for public comment (state can require applicant to publish notice or may combine notice with Federal agency, if Federal agency agrees).

7. State concurrence presumed if state does not meet six-month time frame.

8. If state objects, Federal agency does not authorize the activity to commence. If a state issues a conditional concurrence and the applicant does not amend its federal application to include a state's conditions, a state's conditional concurrence automatically becomes an objection. (State conditions of concurrence are linked to the need to be consistent with specific state enforceable policies.)

9. Applicant may appeal a state's objection to the Secretary of Commerce within 30 days of the objection. If the Secretary overrides a state's objection, the Federal agency may authorize the project. If the Secretary does not override a state's objection, the Federal agency does not authorize the project. The Secretary's decision is final federal agency action for purposes of the Administrative Procedure Act. An applicant may also negotiate with a state to remove the state's objection.

**C. OCS Plans**

A private person or business applying to the U.S. Department of the Interior's Minerals Management Service (MMS) for outer continental shelf (OCS) exploration, and development and production activities follows the requirements of CZMA § 307(c)(3)(B)(16 U.S.C. § 1456(c)(3)(B)) and 15 C.F.R. part 930, subparts A, B and E. For example:

1. Any person who submits to MMS an OCS plan for the exploration of, or development and production of, any area leased under the Outer Continental Shelf Lands Act, certifies that any activities described in detail in such OCS plans will be conducted in a manner consistent with the state CMPs. MMS then sends the plan and consistency certification to the applicable state(s).

2. The process and requirements for this section generally mirror those of federal license or permit activities. State should notify applicant if state review will extend beyond three months, otherwise state's concurrence is presumed.

**D. Federal Assistance Activities**

A state agency or local government applying for federal financial assistance follows the requirements of CZMA § 307(d)(16 U.S.C. § 1456(d)) and 15 C.F.R. part 930, subparts A, B and F. For example:

1. States list in their CMPs the federal assistance activities subject to review. The state CMP may also notify an applicant agency and Federal agency that it will review an unlisted activity. OCRM approval is not required for the review of unlisted federal assistance activities.

2. NOAA regulations allow state CMPs to develop flexible procedures for reviewing and concurring with federal assistance activities. State CMP review of the activities is normally conducted through procedures established by states pursuant to Executive Order 12372 -- intergovernmental review of federal programs, or through state clearinghouse procedures.

3. Federal agency does not authorize the use of federal funds until state CMP has concurred.

4. State or local government applicant agency may appeal a state objection to the Secretary of Commerce who may override the state's objection.

**E. Other Federal Actions**

The Federal agency activity category, 15 C.F.R. part 930, subpart C, is a "residual" category. A federal action that will have reasonably foreseeable coastal effects, but which does not fall under 15 C.F.R. part 930, subpart D (federal license or permit), subpart E (OCS plans), or subpart F (federal assistance to state agency or local government), is a Federal agency activity under subpart C. For example, if a Federal agency is providing funds to a private citizen for disaster relief from a hurricane, and the funds will be used for an activity with coastal effects, then the Federal agency follows the requirements for Federal agency activities and provides the state CMP with a Consistency Determination.

**F. Mediation of Disputes**

In the event of a serious disagreement between a state CMP and a Federal agency, either party may request that the Secretary of Commerce mediate the dispute. All parties agree to participate, agreement to participate is non-binding, and either party may withdraw from the mediation at any time. Secretarial mediation is a formal process that includes a public hearing, submission of written briefs, and meetings between the parties. A hearing officer, appointed by the Secretary, will propose a solution. Secretarial mediation is only for states and Federal agencies. Exhaustion of the mediation process is not a prerequisite to judicial review.

The availability of Secretarial mediation or litigation does not preclude the parties from informally mediating a dispute through OCRM or another facilitator. OCRM has successfully mediated disputes and offers its good offices to resolve conflicts between states, federal agencies, tribes and others. Most disputes are addressed through this informal method. Both parties may request OCRM involvement, and participation is non-binding.

**G. Appeals to the Secretary of Commerce**

The CZMA provides an administrative appeal to the Secretary of Commerce (Secretary) from a consistency objection by a coastal state. In the case of a federal license or permit, an OCS plan, or an application for federal financial assistance, an applicant may request that the Secretary override a state's objection if the activity is consistent with the objectives of the CZMA (Ground I), and/or is otherwise necessary in the interest of national security (Ground II). 16 U.S.C. §§ 1456(c)(3)(A),(B), and (d). Secretarial appeals are not available for Federal agency activities. The requirements for appeals are found at 15 C.F.R. part 930, subpart H. Both states and applicants should pay close attention to the consistency review time periods, six-month stay provisions, objection requirements and appeal procedures in the regulations; otherwise, the Secretary or NOAA may override a state's objection on procedural grounds or dismiss an appellant's appeal for failure to follow the appeal procedures.

If the requirements of either Ground I or Ground II are met, the Secretary overrides a state's objection. The Secretary's inquiry into whether the grounds for an override have been met is based upon an administrative record developed for the appeal. While the Secretary will review a state objection for CZMA compliance, e.g., whether the objection is based on enforceable policies or the state issued its objection within the six-month review period, the Secretary does not review the objection for compliance with state laws and policies.

If the Secretary overrides a state's objection the authorizing Federal agency may authorize or fund the activity. A Secretarial override does not obviate the need for an applicant to obtain any state or other federal permits or authorizations that may apply.

The Secretary appeal process is final Federal agency action under the Administrative Procedure Act and is a necessary administrative action prior to litigation. *See* OCRM's Federal Consistency web page at: **http://coastalmanagement.noaa.gov/consistency/welcome.html** for a list of all CZMA appeals filed with the Secretary. In addition, the NOAA Office of General Counsel has a separate website containing Decisions of the Secretary and the administrative records of ongoing appeals: **www.ogc.doc.gov/czma.htm**

Factors influencing the appeal process time include: nature and complexity of the dispute, stays agreed to by the parties, public hearings, and briefing schedules. The Energy Policy Act of 2005 amended the CZMA mandating specific deadlines for the Secretary. As a result, in 2006 NOAA amended 15 C.F.R. part 930, subpart H to allow the Secretary to meet the deadlines.

**Coastal Zone Management Act Federal Consistency Appeal Procedures**
**Required by the Energy Policy Act of 2005 and NOAA Regulations**
(*See* 15 C.F.R. part 930, subpart H for further details)

| Day(s) After Receipt of Notice of Appeal | Action Required (some actions not available for appeals of energy projects) |
|---|---|
| 0 | • Notice of Appeal received |
| 30 | • Publish Federal Register (FR) Notice of Appeal and newspaper notices. Notice *must* be published by day 30.<br>• Public Comment Period and Federal Agency Comment Period opens.<br>• Receipt of Appellant's Brief and Appendix. |
| 60 | • Receipt of State's Brief and Supplemental Appendix.<br>• Public and Federal Agency Comment periods close unless Public Hearing Request granted.<br>• Request for Public Hearing must be received (within 30 days of FR Notice). |
| 80 | • Receipt of Appellant's Reply Brief. |

| 60-Day Stay Granted | | No Stay Granted | |
|---|---|---|---|
| 250 | • Publish Notice closing Record; Record *must* be closed on day 250 | 190 | • Day 190 is end of 160-day decision record period without stay.<br>• Publish Notice closing Record. |
| 310 | • Secretary issues Decision or publishes FR Notice re: No Decision–take additional 15 days. | 250 | • Secretary issues Decision or publishes FR Notice re: No Decision – take additional 15 days. |
| 325 | • Secretary issues Decision | 265 | • Secretary issues Decision |

## H. Interstate Consistency

*Interstate consistency* refers to: a) instances where a federal action occurring exclusively in one state (State "B") will have effects on the uses or resources of another state's coastal zone (State "A"); and b) the ability of State A to review the action. State A may review an action in State B if previously authorized by NOAA. Under NOAA's regulations, states may submit to NOAA a list of those activities occurring in specific areas within State B that the state believes will result in coastal effects. NOAA may approve such activities for interstate consistency review, if it concludes such actions will have reasonably foreseeable effects on State A's coastal uses and resources. *Interstate consistency* does not give State A authority to review the application of the laws or policies of State B. It only allows State A to review the *federal authorization* of an activity. The interstate consistency requirements combine with the requirements under the various types of federal actions. The interstate regulations are found at 15 C.F.R. part 930, subpart I.

OCRM's interstate consistency regulations were established to provide a process for reviewing federal actions in another state that would involve greater coordination and consultation between states and Federal agencies, as well as provide notice to neighboring states and Federal agencies and applicants proposing federal actions in nearby states.

However, State A may, but is not required to, describe geographic areas within State B for the review of *Federal agency activities* under 15 C.F.R. part 930, subpart C in their CMPs. This is because, even if not described, a Federal agency has a statutory responsibility to provide State A with a CZMA review for *Federal agency activities* with coastal effects, regardless of location (including within the boundaries of State B). *See* 15 C.F.R. §§ 930.33(c)(1), (d) and 930.155(a). Over the years, federal agencies have provided consistency determinations to states for *Federal agency activities* occurring wholly within the boundary of another state.

*See* OCRM's Federal Consistency web page for a short history of interstate consistency as well as the status of interstate proposals submitted to and approved by OCRM.

## I. Information in State Objection and Conditional Concurrence Letters

State objection and conditional concurrence letters issued under the CZMA federal consistency provision should include the following information:

1. An opening paragraph that clearly states whether the state "objects" to the federal action or is issuing a "conditional concurrence."

2. A description of ***how*** the activity is inconsistent with specific enforceable polices that are part of the state's federally approved CMP. Conditions of concurrence should also be directly tied to the need to be consistent with a specific enforceable policy.

3. The objection/conditional concurrence should be received by the federal agency or applicant within the statutory/regulatory time frames. For example, an objection/conditional concurrence letter could document the following dates:
    - Date the complete Consistency Certification (CC) or Consistency Determination (CD) and necessary information was received by the state;
    - Date the state's review period commenced (should be same date as receipt of the complete CC or CD unless alternative agreement);

- For federal license or permit activities and OCS plans, the date the state provided the 30-day "completeness" finding under 15 C.F.R. § 930.60(a), if applicable;
- Date the state's original CZMA decision is due and the revised date, if applicable, based on an agreed-to extension (for Federal agency activities) or stay (for federal license or permit activities);
- Date that the state provided a three-month notice to the applicant for a federal license or permit activity or OCS plan describing the status of the state's review; and
- If an objection is based on a lack of information, the date(s) of the state's written requests for the information made during the state's CZMA review period.

4. For federal license or permit activities, OCS oil and gas plans, or financial assistance activities, an objection or conditional concurrence letter advises the applicant, person or applicant agency, of the right to appeal the state's objection to the U.S. Secretary of Commerce (with a copy to NOAA's Office of General Counsel for Ocean Services) within 30 days of receipt of the letter and should provide the addresses for the Secretary and NOAA General Counsel that are described in NOAA's regulations at 15 C.F.R. § 930.125(d).

5. If an objection is based on insufficient information, the objection letter describes the nature of the information needed, the necessity of having that information to determine consistency and the date this information was requested, in writing, during the state's CZMA review period.

6. An objection letter may include alternatives that would be consistent with the state's CMP enforceable policies. Consistent alternatives should be described with as much specificity as possible to allow the applicant, or the Secretary of Commerce, to determine if the alternatives are available and reasonable.

7. A conditional concurrence letter notifies the federal agency or applicant that if the conditions are not agreed to, pursuant to 15 C.F.R. § 930.4, then the conditional concurrence automatically becomes an objection.

8. An objection or conditional concurrence letter is sent to the applicant, the appropriate Federal agency, and the Director of OCRM.

**Appendix A: Summary of CZMA Federal Consistency Provisions**

| | **Federal Agency Activities & Development Projects** | **Federal License or Permit Activities** | **OCS Plans** | **Federal Assistance Activities (State & Local Governments)** |
|---|---|---|---|---|
| CZMA § 307 (16 U.S.C. § 1456) | (c)(1) & (2) | (c)(3)(A) | (c)(3)(B) | (d) |
| 15 C.F.R. part 930 | Subpart C §§ 930.30 – 930.46 | Subpart D §§ 930.50 – 930.66 | Subpart E §§ 930.70 – 930.85 | Subpart F §§ 930.90 – 930.101 |
| Activity Subject to State Review if it . . . | Affects any land or water use or natural resource of state coastal zone, regardless of location of activity | Affects any land or water use or natural resource of state coastal zone, and activity is listed in state's CMP or OCRM approves review of unlisted review | Affects any land or water use or natural resource of state coastal zone | Affects any land or water use or natural resource of state coastal zone, and activity is listed in state's CMP or state reviews unlisted activity |
| Consistency Requirement | Consistent to the maximum extent practicable with state CMP enforceable policies | Consistent with state CMP enforceable policies | Consistent with state CMP enforceable policies | Consistent with state CMP enforceable policies |
| Who Decides Effects? | Federal agency | State CMP and OCRM | State CMP and OCRM | State CMP and OCRM |
| State Review Period | 60 days, plus 15 day extension (or alternative period agreed to by state and federal agency) | 6 months | 3 months – state may extend to 6 months | State clearinghouse schedule |
| Impact of State Objection | Federal agency may proceed only if provide legal basis for being consistent to the maximum extent practicable | Federal agency may not authorize activity to commence | Federal agency may not authorize activity to commence | Federal agency may not authorize activity to commence |
| Administrative Conflict Resolution | Mediation by Secretary of Commerce or OCRM (voluntary, non-binding) | Applicant may appeal to Secretary of Commerce to override state objection | Applicant may appeal to Secretary of Commerce to override state objection | Applicant may appeal to Secretary of Commerce to override state objection |

**Appendix B: Federal Agency Activities Flow Chart**
**(CZMA § 307(c)(1); 15 C.F.R. part 930, subpart C)**



**Appendix C: Federal License or Permit Activities Flow Chart**
**(CZMA § 307(c)(3)(A); 15 C.F.R. part 930, subpart D)**

