IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WEAVER'S COVE ENERGY, LLC, *Plaintiff*, | ) | |
| vs. | ) | Case No. 07-246-S |
| RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*, *Defendants*. | ) | |

**PLAINTIFF WEAVER'S COVE ENERGY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF BRIEF OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SURREPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Weaver's Cove Energy, LLC ("Weaver's Cove"), by and through its attorneys, Bruce Kiely, Baker Botts L.L.P., and Gregory Benik, submits this memorandum of law in support of its Motion to Strike Portions of Brief or, in the Alternative, for Leave to File a Surreply in Support of its Motion for Summary Judgment, filed herewith.

On February 27, 2008, Defendants Coastal Resources Management Council *et al.* ("CRMC") filed its "Reply Memorandum Regarding Summary Judgment" ("CRMC Reply") (Doc. 39). That was the fourth of four briefs to be filed on cross-motions for summary judgment: (1) Weaver's Cove's memorandum of law in support of its motion for summary judgment ("WCE MSJ") (Doc. 16); (2) the CRMC's memorandum of law in support of its own motion for summary judgment and in opposition to Weaver's Cove's motion for summary judgment ("CRMC MSJ") (Doc. 29); (3) Weaver's Cove's reply memorandum of law in support of its motion for summary judgment and in opposition to the CRMC's motion for summary judgment ("WCE Reply") (Doc. 32); and (4) the CRMC Reply in support of the CRMC's motion for summary judgment.

It is well established that a party may not raise issues for the first time in its reply brief; rather, such belatedly-asserted issues are to be deemed waived. *Ouk v. Keisler*, 505 F.3d 63, 66 n.3 (1st Cir. 2007). This rule ensures the fundamental fairness of the process by which a case is briefed: the moving party asserts his

issues in the first brief, the non-moving party responds, and the movant gets a final word. To allow the moving party to first assert issues in the reply brief would be "manifestly unfair" to the non-moving party. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 195 (D.C. Cir. 1992). Thus,

> [i]f the movant raises issues for the first time in his reply to the nonmovant's opposition, the court will either ignore those arguments in resolving the motion or provide the nonmovant an opportunity to respond to those arguments by granting leave to file a sur-reply.

*United States v. MWI Corp.*, 520 F. Supp. 2d 158, 166 (D.D.C 2007).

The CRMC Reply has done precisely what the case law forbids: it raised for the first time at least four issues nowhere referenced in its primary brief, thereby depriving Weaver's Cove of the opportunity to apprise the Court of contrary points of law.[1] Those four newly-raised issues are as follows:

**1. *"Facial" Challenges And The* Salerno *Standard***

The CRMC asserts in its Reply Brief that Weaver's Cove's challenge to Category B Assent requirements under the Dormant Commerce Clause is a "purely facial challenge," CRMC Reply 12, and as such must satisfy the facial-challenges standard set forth in *Salerno*: that is, the facial challenge must demonstrate that the

[1] Nor could the CRMC have included those points in its brief for the purpose of responding to Weaver's Cove's motion for summary judgment and the documents filed in support thereof, because briefing on that motion concluded with the filing of Weaver's Cove's reply brief.

challenged law could not be valid under any "conceivable set of circumstances." *United States v. Salerno*, 481 U.S. 739, 745 (1987), *quoted in* CRMC Reply 12.

The CRMC nowhere adverted to this issue in its first brief; *Salerno* was cited not even once in that brief. The CRMC cannot, therefore, invoke that issue for the first time on reply. Weaver's Cove respectfully requests that this Court either ignore that portion of the CRMC's brief (pp. 12-14) or accept Weaver's Cove's Surreply, which corrects the CRMC's plain errors on that point.[2]

**2. *The Dormant Commerce Clause***

The CRMC argues (for the first time on reply) that its primary brief's *preemption* arguments were intended to respond to the Weaver's Cove's *Dormant Commerce Clause* claims. CRMC Reply 11-12. Such a characterization of the CRMC's primary brief is wholly unreflective of the actual content of that brief. The CRMC's primary brief nowhere contains the words "Dormant Commerce

[2] As Weaver's Cove explains in the Surreply Brief lodged herewith ("Surreply"), the CRMC flatly errs on the merits of the issue: Weaver's Cove's Dormant Commerce Clause challenge was not a "facial" challenge subject to the *Salerno* standard; rather, Weaver's Cove merely challenges the Category B Assent regulations "as applied" to Weaver's Cove. *See* Surreply 4-5; *see also*, *e.g.*, WCE MSJ 26 ("[Category B Assent's] *application* to block the operation of the Weaver's Cove LNG terminal is unconstitutional" (emphasis added)); *id*. at 32 ("CRMC's Category B Assent requirements, *as applied to Weaver's Cove*, violate the Commerce Clause" (emphasis added)); *see also Ross v. Duggan*, 402 F.3d 575, 582 n.3 (6th Cir. 2004) ("Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, 'the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional.'").

Clause"; nor does the brief reference a single one of the Dormant Commerce Clause cases cited by Weaver's Cove; nor does the brief's preemption argument reference a page of Weaver's Cove's Dormant Commerce Clause arguments.[3]

Instead, the entire argument cited in the CRMC Reply as pertaining to the Dormant Commerce Clause discusses only the legal effect of congressionally-enacted laws (such as Section 3 of the Natural Gas Act) on Category B Assent – *i.e.*, questions of *preemption*. *See* CRMC MSJ 45-82. Indeed, that section of the CRMC's primary brief is titled "*Section 3 of the NGA* Does Not Affect State Ownership Of Submerged Lands; State Permission To Dredge Is Still Required." *Id.* at 45 (emphasis added). Moreover, both the introductory paragraphs and closing paragraphs of their argument discuss only preemption. *See id.* ("Naturally, Weaver's Cove is asserting a regulatory pre-emptive effect that flows from its FERC approval"); *id.* at 81 ("To conclude this section, the Federal Government has done nothing to alter the basic fact that Rhode Island owns the site and Weaver's

---

[3] In its Reply (at 11), the CRMC asserts that "Weaver's Cove's original argument . . . itself merged the two prongs (dormant and active Commerce Clause) by providing [a] combing introduction to both prongs[.]" CRMC's claim is not credible. Even the material quoted in that portion of the Reply pertains only to the Dormant Commerce Clause section of the brief. Weaver's Cove outlined its preemption argument in a completely separate, clearly-denoted paragraph: "*Furthermore*, Category B Assent is preempted by Section 3 of the NGA . . . ." WCE MSJ 26 (emphasis added). Weaver's Cove's primary brief clearly delineated the boundaries between its Dormant Commerce Clause argument, *id.* at 27-32, and its preemption argument, *id.* at 32-41.

Cove does not.”). The Dormant Commerce Clause, by contrast, has absolutely nothing to do with the Acts of Congress:

> If a state regulates interstate commerce in a manner inconsistent with that prescribed by Congress, the state regulation is preempted by the federal law, and is therefore constitutionally impermissible. Where Congress has not acted directly, nothing in the Commerce Clause explicitly prohibits the states from regulating interstate commerce. Nevertheless, the Supreme Court has established a doctrine, sometimes denominated the “dormant Commerce Clause,” under which the states are barred from regulating interstate commerce in a manner which significantly interferes with the national economy.

*Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 843 (1st Cir. 1988). Simply put, “preemption” and “the Dormant Commerce Clause” are entirely different bodies of law, arising under entirely different constitutional provisions (*i.e.*, the Supremacy Clause versus the Commerce Clause), having in common only their origin in the U.S. Constitution and their effect of nullifying state laws. The very same could be said for legal claims against states arising under the First and Fifth Amendments,[4] too; as with those Amendments, the standards to be applied for Preemption and the Dormant Commerce Clause are as different as night and day.

In sum, the CRMC Reply newly asserts the novel notion that its entire preemption discussion applies, *sub silentio*, to Weaver’s Cove’s Dormant Commerce Clause arguments. CRMC’s effort fails as this is an argument

---

[4] As incorporated against the states through the Fourteenth Amendment.

nowhere adverted to in the CRMC's first brief; thus, Weaver's Cove respectfully requests that the Court ignore that portion of the CRMC Reply (pp. 11-12), or accept Weaver's Cove's Surreply on the subject.

**3. *"Collateral Attack"***

The CRMC Reply argues, for the first time, that Weaver's Cove's suit is a "collateral attack" on a decision of the National Oceanic and Atmospheric Administration ("NOAA"), and that Weaver's Cove's suit therefore is barred because Weaver's Cove failed to include NOAA as a defendant. *See* CRMC Reply 9-10 (citing, *inter alia*, *Mountain Rhythm Res. v. FERC*, 302 F.3d 958 (9th Cir. 2002)).

That argument was nowhere made in the CRMC's primary brief; instead, the primary brief argued only that the equitable principle of "collateral estop[pel]" (or, as the title of that section of the brief called it, "*res judicata* and related principles") barred Weaver's Cove's suit. CRMC MSJ 43-44.[5]

---

[5] The CRMC's new argument fails for the same reason that its older one failed: this suit does not collaterally attack a NOAA decision, just as it does not attempt to escape the preclusive effect of a NOAA decision, because this suit is in no way inconsistent with a NOAA decision. Neither NOAA, nor the Secretary of Commerce, nor FERC, has ever decided the CZMA issues raised in this case; rather, NOAA took no action on Weaver's Cove's letter, and the Secretary of Commerce and FERC both disclaimed jurisdiction to hear the issue. *See* Surreply 11-12; *see also* WCE Reply 47-48.

Because the CRMC did not argue in its primary brief that Weaver's Cove's suit is a collateral attack on NOAA orders that should have been brought against NOAA itself, Weaver's Cove respectfully requests that this Court ignore that portion of the CRMC's brief (pp. 9-10), or in the alternative consider Weaver's Cove's Surreply.[6]

### 4. *RIDEM's Definition of "Upland Areas"*

The CRMC argues in its Reply that the Rhode Island Department of Environmental Management ("RIDEM") regulation defining "upland areas" for the purposes of dredged material disposal is "completely irrelevant" to the CRMC's review of Weaver's Cove's Coastal Zone Management Act ("CZMA") consistency certification. CRMC Reply 1-3. That issue was nowhere raised in the CRMC's primary brief, and thus cannot be raised on reply.

---

[6] Ironically, *Weaver's Cove* asserted the rule against collateral attacks on agency orders, and the CRMC failed to respond to that issue.

Weaver's Cove cited the FERC order's conclusion as to the preemptive scope of its orders, which explained the preemptive effect of FERC's order on "state or local laws [that would] prohibit or unreasonably delay the construction or operation of [the LNG terminal]," and noted that the CRMC could not collaterally attack that part of the FERC's order in the present case. *See* WCE MSJ 33-36; WCE Reply 62-64. The CRMC did not respond to that point, however; instead, it persisted in its attempts to re-litigate the scope of the preemptive effect of FERC authority, drawing distinctions between "the states' traditional property law systems" and "state police power regulation[s]," never once attempting to explain how such distinctions were consistent with the FERC order's blanket reference to preemption of "[the] application of state or local laws" generally. *See* CRMC MSJ 45-46.

Weaver's Cove invoked the RIDEM regulation in its primary brief, arguing that the regulation's definition of "upland areas" demonstrated that the CRMC was not entitled to information involving out-of-state disposal of dredged material as a prerequisite to CZMA consistency review. WCE MSJ 16-17. (It repeated that argument in its Reply. WCE Reply 9-10.) The CRMC, however, did not argue in its primary brief that the RIDEM regulation was "irrelevant" to the interpretation and application of the CRMC's CZMA regulations; instead, the CRMC simply asserted, without any reference to the RIDEM regulation, that "[a]n approved upland disposal site means wherever located, not just in Rhode Island." *See* CRMC MSJ 31-39.

As Weaver's Cove demonstrates in its Surreply (at 12-14), the CRMC's argument is erroneous as a matter of law: the RIDEM regulation is directly relevant to the issue before this Court. Nevertheless, the CRMC's failure to raise that issue until its Reply brief, depriving Weaver's Cove of an opportunity to respond, is error in and of itself. Weaver's Cove respectfully requests that this Court strike or ignore that portion of the CRMC's Reply (pp. 1-3). In the alternative, Weaver's Cove respectfully requests that this Court accept Weaver's Cove's Surreply, so that Weaver's Cove will have an opportunity to respond to the CRMC's new argument.

* * *

For the foregoing reasons, Weaver's Cove respectfully requests that the Court strike or ignore the issues newly raised on reply by the CRMC, so as to avoid the "manifestly unfair" prospect of allowing the CRMC to raise issues to which Weaver's Cove had no opportunity to respond. *Herbert*, 974 F.2d at 195. In the event the Court does not strike or ignore the issues raised for the first time by CRMC, Weaver's Cove respectfully requests that the Court accept the Surreply lodged herewith, wherein Weaver's Cove responds to the substance of those newly-raised arguments.

Respectfully submitted,

/s/ Gregory L. Benik
Gregory L. Benik (#1515)
Benik & Associates P.C.
931 Jefferson Blvd., Suite 2008
Warwick, RI 02886
(phone) 401-454-0054
(fax) 401-732-5054
gbenik@jreri.com

*Attorney for Weaver's Cove Energy, LLC*

Dated: March 18, 2008

Of Counsel:

Bruce F. Kiely
G. Mark Cook
Adam J. White
Jessica A. Fore
Emil J. Barth
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Phone: (202) 639-7700
Fax: (202) 639-7890

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March, 2008, the foregoing was filed electronically with the Clerk of Court and served upon the following by operation of the Court's electronic filing system:

Brian A. Goldman, goldlaw@cox.net
Michael Rubin, mrubin@riag.ri.gov
Paul J. Roberti, proberti@riag.ri.gov

/s/ Gregory L. Benik