IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WEAVER'S COVE ENERGY, LLC, | ) | |
| *Plaintiff,* | ) | |
| vs. | ) | Case No. 07-246-S |
| RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*, | ) | |
| *Defendants*. | ) | |

**PLAINTIFF WEAVER'S COVE ENERGY, LLC'S SURREPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. *SALERNO* DOES NOT DEFEAT WEAVER'S COVE'S CLAIMS .. 2

A. "As-Applied Challenges" And "Facial Challenges": An Overview ........ 2

B. Because Weaver's Cove's Dormant Commerce Clause Claim Is Not A "Facial Challenge," *Salerno* Is Irrelevant ........ 4

C. Weaver's Cove's Preemption Claim Satisfies *Salerno*, To The Extent That It Applies ........ 5

II. THE CRMC MISCHARACTERIZES WEAVER'S COVE'S DORMANT COMMERCE CLAUSE CLAIM AND CITES NO CASE LAW INDICATING THAT PREEMPTION AND THE DORMANT COMMERCE CLAUSE ARE DEFEATED BY STATE LAWS REGARDING OWNERSHIP OF SUBMERGED LANDS ... 7

A. The CRMC Mischaracterizes Weaver's Cove's Dormant Commerce Clause Claim ........ 7

B. The Other Case Relied Upon By The CRMC Is Inapposite ...... 8

III. THIS CASE INVOLVES NO "COLLATERAL ATTACKS" ON OTHER AGENCIES ........ 11

IV. RIDEM'S DEFINITION OF "UPLAND AREAS" IS DIRECTLY RELEVANT TO THIS CASE ........ 12

CONCLUSION ........ 14

## INTRODUCTION

Plaintiff Weaver's Cove Energy, LLC ("Weaver's Cove"), by and through its attorneys, Bruce Kiely, Baker Botts L.L.P., and Gregory Benik, submits this Surreply in opposition to the cross-motion for summary judgment and memorandum of law submitted in support thereof ("CRMC MSJ Memo.") (Doc. 28) filed by Defendants Coastal Resources Management Council, *et al*. ("CRMC").[1] Weaver's Cove's arguments below only respond specifically to issues newly raised by CRMC in its Reply Memorandum Regarding Summary Judgment ("CRMC Reply").

As Weaver's Cove set forth in its Memorandum of Law in Support of Its Motion for Leave to File a Surreply ("Surreply Motion") (filed herewith), the CRMC Reply includes at least four issues that the CRMC did not raise in its primary brief on its own cross-motion for summary judgment (*i.e.*, the CRMC MSJ Memo.) As Weaver's Cove set forth in its Surreply Motion, because each of those arguments was raised by the CRMC for the first time in its reply brief, each should therefore be struck from the brief, or at least ignored by the Court. Should the Court consider the merits, however, Weaver's Cove respectfully suggests, for the

[1] Furthermore, to the extent that Defendants characterize their Reply Memorandum Regarding Summary Judgment (Doc. 39) as pertaining to Weaver's Cove's Motion for Summary Judgment (Doc. 16) notwithstanding the fact that Defendants were not entitled to a reply brief on Weaver's Cove's Motion for Summary Judgment, then Weaver's Cove also submits this Surreply in support of its own Motion for Summary Judgment.

reasons set forth below, that neither the law nor the facts support the CRMC with respect to any of the four new issues.

## ARGUMENT

## I. *SALERNO* DOES NOT DEFEAT WEAVER'S COVE'S CLAIMS

The CRMC asserts (for the first time on reply) that Weaver's Cove's challenges to Category B Assent requirements under the Dormant Commerce Clause is a "purely facial challenge," CRMC Reply 12, and as such it must satisfy the facial-challenges standard set forth in *Salerno*: *i.e.*, Weaver's Cove purportedly must demonstrate that the challenged law could not be valid under any "conceivable set of circumstances." *United States v. Salerno*, 481 U.S. 739, 745 (1987), *quoted in* CRMC Reply 12. Weaver's Cove's Dormant Commerce Clause claim is not subject to that standard, and its preemption claim satisfies that standard (to the extent that it is even applicable).

### A. "As-Applied Challenges" And "Facial Challenges": An Overview

As set forth below, the CRMC's argument fundamentally miscomprehends the nature of Weaver's Cove's challenges to the Category B Assent requirements, by assuming that Weaver's Cove challenges all are "facial challenges" and not "as-applied challenges." Not all of Weaver's Cove's challenges are facial challenges, and the two types of challenges are fundamentally different, and they are subject to well established and substantially different standards.

As-applied challenges do not attempt to invalidate a statute in all of its applications against all persons; rather, they only challenge the law's application in a specific circumstance. The law is clear that as-applied challenges are not subject to the *Salerno* standard:

> Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional.

*Ross v. Duggan*, 402 F.3d 575, 582 n.3 (6th Cir. 2004). Thus, in an as-applied challenge, the Plaintiff merely needs to show that a state law is unconstitutional in the factual context of the specific case before the court.

By contrast, if a plaintiff challenges a statute not merely with respect to his own situation, but with respect to *all* persons that could conceivably be affected by a statute — *i.e.*, a "facial challenge" — then the burden is substantially higher:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [challenged statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . .

*Salerno*, 481 U.S. at 745.[2]

---

[2] In *Salerno* the Supreme Court specifically noted that the plaintiff in that case did not bring the sort of claim brought by Weaver's Cove: "Nor have respondents claimed that the Act is unconstitutional because of the way it was applied to the particular facts of their case." *Id.* at 745 n.3.

In short, a plaintiff making a facial challenge to a statute must demonstrate that the statute is incapable of lawful application anywhere; a plaintiff making an as-applied challenge, by contrast, must merely show that the statute is unlawful as applied to him.

### B. Because Weaver's Cove's Dormant Commerce Clause Claim Is Not A "Facial Challenge," *Salerno* Is Irrelevant

With respect to Weaver's Cove's Dormant Commerce Clause claim, the CRMC bases its argument on a simple mischaracterization of Weaver's Cove's complaint. Weaver's Cove's Dormant Commerce Clause claim is not a "facial" challenge to Category B Assent — it nowhere argues that Category B Assent requirements are unconstitutional on their face such that they can be lawfully imposed on *no* would-be applicants under *any* circumstances. Instead, Weaver's Cove merely challenges the Category B Assent regulations "as applied" to Weaver's Cove. *See*, *e.g.*, Mem. of Law in Support of Pl. Weaver's Cove's Mot. for Summ. Judg. at 32 ("WCE MSJ") ("CRMC's Category B Assent requirements, *as applied to Weaver's Cove*, violate the Commerce Clause" (emphasis added)); *see also id.* at 26 ("[The Category B Assent laws'] *application* to block the operation of the Weaver's Cove LNG terminal is unconstitutional" (emphasis added)).

Because Weaver's Cove brings only this as-applied Dormant Commerce Clause challenge — it certainly has not disputed that Rhode Island can impose

Category B Assent requirements on other persons in different circumstances — *Salerno* has no application to this challenge.[3]

### C. Weaver's Cove's Preemption Claim Satisfies *Salerno*, To The Extent That It Applies

*Salerno*'s application to a preemption claim depends on the nature of the preemption claim. As Weaver's Cove noted in its primary brief, there are three types of preemption: Express Preemption (*i.e.*, the federal law expressly states that state laws on the subject are preempted); Implied Preemption (*i.e.*, federal law so pervasively occupies the subject matter such that there is no place for state regulation); and Conflict Preemption (*i.e.*, federal and state laws are in conflict with respect to the specific facts and circumstances of the case). *See* WCE MSJ 32-33, 36-38 (citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988)). Weaver's Cove's preemption claim can succeed on any one of those three preemption theories.

**1.** For the first two categories — Express Preemption and Implied Preemption — specific invocation of *Salerno* is unnecessary, because expressly-preempted or field-preempted laws inherently satisfy the test:

[3] Had Weaver's Cove challenged Category B Assent requirements on the basis that they *facially discriminate* against interstate commerce, instead of arguing (as Weaver's Cove did here) that they impose a substantial burden on a particular type of interstate commerce under certain circumstances, then *that* claim would be a facial challenge. *See AES Sparrows Point LNG, LLC v. Smith*, 2007 WL 1826889 at *8 (D. Md. 2007). No such discrimination-based Dormant Commerce Clause claim is asserted by Weaver's Cove in this case. *See infra* pp. 7-8.

> The categorical approach to [federal] preemption precludes the prospect of finding some circumstances in which a statute is preempted and others where it survives. The all-or-nothing stakes of [federal] preemption renders the inquiry under *Salerno* moot, because once preemption is called for, the categorical nature of this conclusion automatically commands that "no set of circumstances exists under which the [statute] would be valid."

*Chamber of Commerce of the U.S. v. Lockyer*, 422 F.3d 973, 993 (9th Cir. 2005), *rev'd on other grounds*, 463 F.3d 1076 (9th Cir. 2006). Another District Court recently explained, in holding a local anti-LNG law to be preempted by the Natural Gas Act, that "most courts do not invoke [*Salerno*] in the context of preemption, because a finding of express or field preemption inherently means that there are no circumstances under which the challenged statute or regulation could be valid." *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 686, 600-01 (D. Md. 2007) (holding local zoning ordinance barring LNG terminals to be preempted by the Natural Gas Act; quoting *Chamber of Commerce, supra*).[4]

**2.** With respect to Conflict Preemption, Weaver's Cove has made no facial preemption claim; instead, it merely claims that Category B Assent requirements are preempted *as applied* to Weaver's Cove. Weaver's Cove's Amended Complaint makes this point clear:

[4] Even these express- and field-preemption challenges are limited in scope: they challenge Category B Assent requirements as preempted only to the extent that they purport to regulate LNG terminal construction and operations.

> Defendants' *threatened application* and assertion of subject matter jurisdiction over the Project under Rhode Island law *with respect to the requirement that Plaintiff apply for and obtain a Category B Assent* is in direct conflict with and is preempted by the [Natural Gas Act] and the FERC regulations.

Am. Compl. ¶ 103 (Doc. 8) (emphasis added). Thus, just as the CRMC errs in suggesting that Weaver's Cove's Dormant Commerce Clause claims are "facial claims" subject to *Salerno*, so too it errs with respect to Weaver's Cove's conflict-preemption arguments — they are as-applied challenges to Category B Assent requirements, not facial challenges. *Salerno* has no application to this argument.

## II. THE CRMC MISCHARACTERIZES WEAVER'S COVE'S DORMANT COMMERCE CLAUSE CLAIM AND CITES NO CASE LAW INDICATING THAT PREEMPTION AND THE DORMANT COMMERCE CLAUSE ARE DEFEATED BY STATE LAWS REGARDING OWNERSHIP OF SUBMERGED LANDS

### A. The CRMC Mischaracterizes Weaver's Cove's Dormant Commerce Clause Claim

On reply, the CRMC argues (for the first time) that Weaver's Cove's Dormant Commerce Clause claim must fail because "[t]he CRMC Act is facially neutral" and that "[i]t is incumbent on Weaver's Cove to identify an outcome that is discriminatory (at least in practical effect)." CRMC Reply 13. The CRMC's new argument is based on a fundamental misdescription of Weaver's Cove's claim: Weaver's Cove's Dormant Commerce Clause claim challenges the Rhode Island law's *burden* on interstate commerce, not its discrimination against interstate commerce.

The Supreme Court has explained succinctly the two different types of Dormant Commerce Clause claims: "[W]e have found unconstitutional state regulations that unjustifiably discriminate on their face against out-of-state entities, . . . *or* that impose burdens on interstate trade that are clearly excessive in relation to the putative local benefits . . . ." *Am. Trucking Ass'n v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005) (quotation marks & citations omitted, emphasis added) (quoted in WCE MSJ 27). Weaver's Cove brings only the second type of claim: that the challenged law unconstitutionally burdens interstate commerce. *See* WCE MSJ 27-28. There is no "unlawful discrimination" claim involved in this case.

**B. The Other Case Relied Upon By The CRMC Is Inapposite**

The CRMC relies extensively on a case that is, by its own terms, inapplicable to the present matter (and, for that matter, never has been followed by the First Circuit or Supreme Court): *United States v. 50 Foot Right of Way*, 337 F.2d 956 (3d Cir. 1964). There, the Third Circuit held that a riparian landowner was entitled to compensation from the United States in a condemnation proceeding brought by the United States, for a pipeline laid across the landowner's property. *See id* at 958 (describing pipeline and condemnation); *id.* at 961 (ruling in favor of landowner). The CRMC apparently cites that case for the proposition that a

compensable eminent-domain taking always occurs when the United States approves "the excavation of submerged lands." CRMC Reply 14.

*50 Foot Right of Way* stands for no such rule of law. In that case, there was no question that an eminent domain taking had occurred, *because the United States had commenced a condemnation proceeding*. 961 F.2d at 957. And in that case the alleged taking occurred not because of the dredging (*i.e.*, the proposed action in this case), but because a landowner's property was encumbered by a pipeline that occupied (and therefore excluded the owner from) physical space on his property. *Id.* Indeed, the pipeline specifically interfered with the landowner's "access to the navigable portion of the Bay from its banks." *Id.* at 959.

The most important difference, however, is that in that case the United States "did not even aver that the right of way taken by the United States is in aid of commerce upon a navigable purpose . . . ." *Id.* That was the sole reason why the landowner was entitled to compensation: If the United States had shown that the right-of-way for the pipeline "was taken in aid of navigation . . . [then it] would not be required to pay for such a taking." *Id.* at 960. In this case, by contrast, Weaver's Cove's dredging has been approved by FERC and would further be approved by the U.S. Army Corps of Engineers as promoting navigation.

In short: *50 Foot Right of Way* holds only that pipelines laid not in aid of navigation can give rise to a compensable taking when the United States

commences a condemnation proceeding. The case simply bears no resemblance to a preemption and Dormant Commerce Clause challenge to a state law prohibiting dredging in aid of navigation in a case not involving a condemnation petition. Furthermore, it expressly does not apply to cases where the proposed activity is not shown to impede navigation or access to the water.

CRMC's reliance on a factually-incompatible, decades-old Third Circuit case never endorsed by the First Circuit or Supreme Court should therefore be rejected. Instead, Weaver's Cove respectfully recommends that the proper rules of law are those identified by FERC (*i.e.*, the agency with jurisdiction over the siting, construction and operation of LNG terminals, and which is tasked with administering the Natural Gas Act), *see* WCE Reply 61-88,[5] and by the Supreme

[5] The CRMC argues (for the first time) on reply that Weaver's Cove's preemption claims cannot be based on the express preemption clause added to the Natural Gas Act by the Energy Policy Act of 2005 ("EPAct") because "Weaver's Cove incorrectly assumes the retroactivity of EPAct." CRMC Reply 17 (capitalization modified). This argument is overstated, because Weaver's Cove's field preemption and conflict preemption arguments were premised not on the EPAct amendment alone but, rather, the Natural Gas Act as interpreted over the years by FERC and as applied in FERC's orders. *See* WCE MSJ 32-41; WCE Reply 61-74. Moreover, there is no "retroactivity" issue with respect to Weaver's Cove's express-preemption argument, which was premised on the NGA as it stood at the time of the filing of this lawsuit (*i.e.*, post-EPAct), and did not turn on the content of FERC's order. Most important, however, is the fact that FERC specifically reaffirmed its original approval *after* EPAct was enacted. *See* JA Tab 39 ¶¶ 139-45 (FERC Order on Reh'g) (reaffirming the Initial Order's description of the preemptive effect of FERC approval). Thus, FERC re-approved the Weaver's Cove terminal after EPAct was enacted; there are no "retroactivity" issues in this case.

Court in a decision specifically holding that states cannot leverage state property in a manner that unconstitutionally burdens interstate commerce, *see id.* at 52-57 (applying, *inter alia*, *West, Att'y Gen. of the State of Okla. v. Kansas Nat. Gas Co.*, 221 U.S. 229 (1911)).[6]

## III. THIS CASE INVOLVES NO "COLLATERAL ATTACKS" ON OTHER AGENCIES

The CRMC now argues on reply that the present suit is an improper "collateral attack" on a decision of the National Oceanic and Atmospheric Administration ("NOAA"). It raises this argument notwithstanding the fact that NOAA has not actually taken any action with respect to Weaver's Cove's CZMA claims. *See* WCE MSJ 12.

In fact, no federal agency has taken action on the merits of the claim by Weaver's Cove that the CRMC's failure to act on Weaver's Cove's CZMA consistency certification constitutes the CRMC's conclusively-presumed concurrence with that certification. The Secretary of Commerce twice disclaimed jurisdiction to make such a determination, as FERC did once. *See id.* Weaver's Cove does not in this case challenge those agencies' definitions of their respective

[6] The CRMC makes no effort to distinguish or otherwise dispute the holding of *West*, or of the other Dormant Commerce Clause cases cited in Weaver's Cove's briefs, thereby conceding the applicability of those rules of law. The CRMC's entire defense is premised on the state-regulation-of-state-owned-property theory that, as demonstrated in Weaver's Cove's briefs, simply does not support Rhode Island's claims of unfettered authority to block interstate commerce or veto FERC orders.

jurisdiction; Weaver's Cove does not collaterally attack those orders – Weaver's Cove's lawsuit is *consistent* with those orders.

## IV. RIDEM'S DEFINITION OF "UPLAND AREAS" IS DIRECTLY RELEVANT TO THIS CASE

Weaver's Cove twice argued that the details of the proposed disposal of dredged material offshore are not "necessary data and information" for the purposes of the CRMC's CZMA review, because (1) the CRMC's CZMA regulations only require the submission of dredged-material-disposal information for disposal in "approved upland facilities," and (2) the Rhode Island Department of Environmental Management's ("RIDEM's") dredging regulations define "upland areas" as only those areas "of that state" that are not in the coastal zone. *See* WCE MSJ 16-17 and WCE Reply 9-12. The CRMC argues for the first time on reply that that reasoning fails because RIDEM's definition of "upland areas" is "completely irrelevant," CRMC Reply 1, and that RIDEM's "regulation relates to a completely separate program with completely separate goals," *id.* at 2. The CRMC cites no law for the CRMC's legal proposition, and in fact Rhode Island law specifically contradicts the CRMC's theory.

The CRMC's regulations require information regarding dredging disposal only "[w]hen disposal is proposed for *approved* upland facilities." CRMP § 300.9C.7 (emphasis added), *cited in* CRMC MSJ 35. Under Rhode Island law, upland disposal facilities are approved not by the CRMC, but by the *RIDEM*

*Director*. R.I. GEN. L. § 46-6.1-5(b). The CRMC then incorporates the RIDEM Director's list of approved upland disposal sites into the CRMC's "comprehensive plan for dredging that takes place in the coastal zone." *See id.* § 46-6.1-5.[7]

Thus, RIDEM's definition of upland areas, as set forth in Section 4.20 of RIDEM's Rules and Regulations for Dredging and the Management of Dredging Material, controls the present dispute. *See* WCE Reply 10-11.[8] The CRMC nowhere points to authority for the novel proposition that the proposed *Massachusetts* and *offshore* disposal sites are "approved upland facilities" under the operative Rhode Island regulations such that disposal information pertaining to

[7] By contrast, the CRMC is left to create its own list of coastal zone areas approved for the disposal of dredged material. *See id.* §§ 46-6.1-5(a) & (a)(1).

[8] In further contradiction of the CRMC's description of Rhode Island law, RIDEM interprets its definition of "upland areas" as pertains to the legal controversy before this Court, by stating that its dredging regulations were promulgated under *the same statutory scheme* that codifies the CRMC's authority to undertake Rhode Island's regulation of dredging. *See* R.I. Dep't of Envtl. Mgmt., Rules and Regulations for Dredging and the Management of Dredged Material § 2 (citing as "Authority" for the RIDEM rules "the Marine Waterways and Boating Facilities Act of 2001, R.I. General Laws Chapter 46-6.1"); *id.* at cover page ("These rules and regulations are promulgated pursuant to . . . the federal Coastal Zone Management Act 16 U.S.C. § 1454 et seq."); *id.* § 3 ("These rules and regulations apply to all aspects of dredging proposed in marine waters of the State of Rhode Island . . . [and] shall be implemented in accordance with a written protocol, adopted jointly by the Department and the [CRMC] for purposes of further coordinating and streamlining the interagency review of applications."), *available at* http://www.dem.ri.gov/pubs/regs/regs/water/dred0203.pdf. RIDEM's own regulations thus further dispute the CRMC's suggestion that RIDEM's regulation is "completely irrelevant . . . relat[ing] to a completely separate program with completely separate goals." CRMC Reply at 1-2 (capitalization modified).

these facilities is a prerequisite to CRMC review. In short, the CRMC has no legal basis to demand such information as being "necessary" for its CZMA consistency review. *See id.* at 9-12.[9]

## CONCLUSION

For the reasons set forth in this Surreply and in the papers previously filed by Weaver's Cove on the cross-motions for summary judgment, therefore, Weaver's Cove respectfully prays this Court (1) to declare the CRMC's concurrence with Weaver's Cove's consistency certification to be conclusively presumed as a matter of law, (2) to declare that the CRMC's threatened imposition of a "veto" of the proposed dredging pursuant to the Public Trust Doctrine, through application of Category B Assent requirements on Weaver's Cove, violates the Dormant Commerce Clause of the U.S. Constitution and/or is preempted by Section 3 of the Natural Gas Act, and (3) to enjoin Defendants from taking any actions inconsistent with such declarations.

[9] As described in Weaver's Cove's Reply Brief (at 27-29), the CRMC's definition of "upland facilities" is contrary not only to Rhode Island law, but also to federal law, which prevents Rhode Island from asserting *ad hoc* jurisdiction to approve coastal activities outside of the state of Rhode Island without case-specific federal approval.

Respectfully submitted,

/s/ Gregory L. Benik
Gregory L. Benik (#1515)
Benik & Associates P.C.
931 Jefferson Blvd., Suite 2008
Warwick, RI 02886
(phone) 401-454-0054
(fax) 401-732-5054
gbenik@jreri.com

*Attorney for Weaver's Cove Energy, LLC*

Dated: March 18, 2008

Of Counsel:

Bruce F. Kiely
G. Mark Cook
Adam J. White
Jessica A. Fore
Emil J. Barth
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Phone: (202) 639-7700
Fax: (202) 639-7890

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March, 2008, the foregoing was filed electronically with the Clerk of Court and served upon the following by operation of the Court's electronic filing system:

Brian A. Goldman, goldlaw@cox.net
Michael Rubin, mrubin@riag.ri.gov
Paul J. Roberti, proberti@riag.ri.gov

/s/ Gregory L. Benik